UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JASON LEOPOLD, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 17-1524 (APM) |
| DEPARTMENT OF TREASURY, et al., | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

FITHAWI BERHANE
Assistant United States Attorney

*Counsel for the United States of America*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 1

STANDARDS OF REVIEW .................................................................................................. 2

      A.      Motion for Summary Judgment Under Rule 56 ....................................................... 2

      B.      Summary Judgment in the FOIA Context Generally ............................................... 2

ARGUMENT ............................................................................................................................ 4

      A.      Exemption 5 ................................................................................................................ 4

      B.      Defendants Released All Reasonably Segregable Information ............................. 9

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Agrama v. IRS*,
  282 F. Supp. 3d 264 (D.D.C. 2017) ............................................................................................ 9
*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................................................................. 2
*Boyd v. Crim. Div. of U.S. Dep't of Just.*,
  475 F.3d 381 (D.C. Cir. 2007) ................................................................................................ 10
*Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*,
  746 F.3d 1082 (D.C. Cir. 2014) ................................................................................................ 3
*Jud. Watch v. Dep't of Def.*,
  No. 19-1384 (DLF), 2021 WL 270503 (D.D.C. Jan. 27, 2021) ............................................ 3, 4
*Loving v. Dep't of Def.*,
  550 F.3d 32 (D.C. Cir. 2008) .................................................................................................... 4
*Machado Amadis v. Dep't of State*,
  971 F.3d 364 (D.C. Cir. 2020) .......................................................................................... 2, 3, 4
*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*,
  566 F.2d 242 (D.C. Cir. 1977) .................................................................................................. 9
*Nat'l Ass'n of Criminal Def. Lawyers v. U.S. Dep't of Justice*,
  844 F.3d 246 (D.C. Cir. 2016) .................................................................................................. 5
*Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs*,
  No. 21-0244 (DLF), 2022 WL 990744 (D.D.C. Mar. 31, 2022) .............................................. 6
*Pub. Employees for Envtl. Responsibility v. EPA*,
  211 F. Supp. 3d 227 (D.D.C. 2016) ...................................................................................... 4, 5
*Summers v. Dep't of Just.*,
  140 F.3d 1077 (D.C. Cir. 1998) .............................................................................................. 10
*Ullah v. CIA*,
  435 F. Supp. 3d 177 (D.D.C. 2020) .......................................................................................... 2

**Statutes**

5 U.S.C. § 552(a)(8)(A)(i)(I) ......................................................................................................... 2
5 U.S.C. § 552(b) ................................................................................................................... 2, 3, 9
5 U.S.C. § 552(b)(5) ...................................................................................................................... 4

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................................................... 2

## INTRODUCTION

This case arises from Freedom of Information Act ("FOIA") requests that Plaintiffs Jason Leopold and Buzzfeed Inc. made to Defendants Department of Treasury ("Treasury"), Office of the Director of National Intelligence, and U.S. Office of Special Counsel ("Special Counsel").

Plaintiffs submitted three FOIA requests to Treasury seeking: (i) draft and final copies of the Office of Attorney General guidelines for the Office of Intelligence and Analysis ("AG Guidelines"); (ii) certain emails regarding Treasury's Office of Terrorist Financing and Financial Crimes ("Financial Crimes Office" or "TFFC") and Russia; and (iii) emails relating to the realignment of Treasury's Office of Terrorism and Financial Intelligence ("Financial Intelligence Office" or "TFI").[1] Additionally, the Special Counsel referred 804 pages of records to Treasury for processing. Treasury completed the processing and release of all records responsive to Plaintiff's three FOIA requests directed to Treasury and the additional set of records referred to Treasury by the Special Counsel for processing.

Defendants now move for summary judgment with respect to Treasury's Exemption 5 withholdings.[2] As discussed below, Treasury properly invoked exemptions for their withholdings,

---

[1] Plaintiffs alleged they submitted two additional requests to Treasury seeking whistleblower complaints and concerns formally filed by personnel of Treasury's Financial Crimes Enforcement Network, Compl. ¶ 12, and a copy of the most recent Office of Terrorism and Financial Intelligence audit, *id.* ¶ 14. Treasury did not receive these requests. *See* Answer ¶¶ 12-14. On September 15, 2017, Plaintiffs agreed in writing that Treasury could exclude these two requests.

[2] Plaintiffs have clarified that they are not challenging the adequacy of Defendants' searches, and that they are only challenging the FOIA Exemption 5 withholdings that were asserted to the records responsive to their FOIA requests. ECF No. 73. Moreover, Treasury is the sole Defendant that has withheld records pursuant to an independent assertion of FOIA Exemption 5, and so is the only Defendant that has produced a Declaration for the purposes of this Motion for Summary Judgment.

properly assessed segregability, and released all non-exempt responsive records. Accordingly, the Court should grant judgment in Defendants' favor.

## STATEMENT OF FACTS

Pursuant to this Court's Minute Order of January 31, 2023, the parties to this litigation have been excused from Local Civil Rule 7(h)'s statement-of-facts requirement. Defendants rely upon the facts asserted in the Declaration of Ryan Law ("Treasury Declaration"), the Deputy Assistant Secretary for the Office of Privacy, Transparency, and Records at the United States Department of the Treasury, and the exhibits attached thereto.

## STANDARDS OF REVIEW

### A. Motion for Summary Judgment Under Rule 56

Under Federal Rule of Civil Procedure ("Rule") 56, a court will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it "might affect the outcome of the suit under the governing law." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### B. Summary Judgment in the FOIA Context Generally

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Ullah v. CIA*, 435 F. Supp. 3d 177, 181 (D.D.C. 2020) (internal quotation marks omitted). "[T]he agency bears the ultimate burden of proof to demonstrate . . . that it properly withheld any records." *Id.*

"To withhold a responsive record, an agency must show both that the record falls within a FOIA exemption, 5 U.S.C. § 552(b), and that the agency 'reasonably foresees that disclosure

2

would harm an interest protected by [the] exemption,' *id.* § 552(a)(8)(A)(i)(I)." *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020). "The agency may carry [the burden of establishing that a claimed exemption applies] by submitting affidavits that 'describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014). "Agency affidavits sometimes take the form of a '*Vaughn* index,' but there is 'no fixed rule' establishing what such an affidavit must look like[.]" *Id.* (citation omitted).

Finally, "FOIA provides that '[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt.'" *Machado Amadis*, 971 F.3d at 371 (quoting 5 U.S.C. § 552(b)). "[The D.C. Circuit has] held that district courts cannot approve withholding exempt documents 'without making an express finding on segregability.'" *Id.* "An agency may satisfy [its segregability] obligation by '(1) providing a *Vaughn* index that adequately describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material.'" *Jud. Watch v. Dep't of Def.*, No. 19-1384 (DLF), 2021 WL 270503, at *6 (D.D.C. Jan. 27, 2021). "The segregability requirement does not apply to non-exempt material that is 'inextricably intertwined' with exempt material, and agencies are entitled to a presumption that they disclosed all reasonably segregable material[.]" *Id.* (citation omitted).

**ARGUMENT**

As discussed below, the Court should grant judgment in Defendants' favor because Treasury has properly invoked FOIA Exemption 5, properly assessed foreseeable harm and segregability, and released all non-exempt responsive records.

**A.      Exemption 5**

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "Exemption 5 'incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant'—including the presidential communications privilege, the attorney-client privilege, the work product privilege, and the deliberative process privilege—and excludes these privileged documents from FOIA's reach." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008).

"To fall within the [deliberative process] privilege, a document must be predecisional and deliberative." *Machado Amadis*, 971 F.3d at 370. "Documents are predecisional if they are generated before the adoption of an agency policy, and deliberative if they reflect the give-and-take of the consultative process." *Id.* (internal quotation marks omitted). The deliberative process privilege "protects debate and candid consideration of alternatives within an agency, thus improving agency decisionmaking." *Id.* (internal quotation marks omitted). "The deliberative process privilege incorporated into FOIA Exemption 5 allows agencies to withhold 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Jud. Watch*, 2021 WL 270503 at *2.

"The attorney-client privilege protects confidential communications from client to attorney, and from attorney to client." *Pub. Emps. for Env't Resp. v. EPA*, 211 F. Supp. 3d 227, 230 (D.D.C. 2016). "Without protections for attorney-client communications, agency officials might not share information with their counsel in the first place and would consequently be deprived of sound legal advice." *Id.* "The [attorney-client] privilege applies only to '[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance,' and to an attorney's 'communication [to the client] based on confidential information provided by the client[.]'" *Id.* At 231 (citation omitted). "In this context, the 'client' is the agency and its officials." *Id.* "And those officials may be either 'high-level agency personnel' or 'lower-echelon employees.'" *Id.*

"Courts have long recognized that materials prepared by one's attorney in anticipation of litigation are generally privileged from discovery by one's adversary." *Nat'l Ass'n of Criminal Def. Lawyers v. Dep't of Just.*, 844 F.3d 246, 250 (D.C. Cir. 2016). "The attorney work-product privilege applies in both civil and criminal cases." *Id.* "The privilege aims primarily to protect the integrity of the adversary trial process itself," by "provid[ing] a working attorney with a zone of privacy within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Id.* at 251 (internal quotation marks omitted). The D.C. Circuit has "long required a case-specific determination that a particular document in fact was prepared in anticipation of litigation before applying the privilege to government records." *Id.* In ascertaining whether a document was prepared in anticipation of litigation, the Court of Appeals has "applied a because of test, asking whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.* (internal quotation marks omitted). "For that standard to be met, the attorney who created the document must have had a subjective belief that litigation was a real

5

possibility, and that subjective belief must have been objectively reasonable." *Id.* (internal quotation marks omitted).

"Under th[e] [consultant corollary] doctrine, records exchanged between an agency and outside consultants qualify as intra-agency for purposes of Exemption 5 if: (1) the agency solicited the records from the non-agency party or there exists some indicia of a consultant relationship between the outsider and the agency and (2) the records were created for the purpose of aiding the agency's deliberative process." *Nat'l Wildlife Fed'n v. Army Corps of Eng'rs*, No. 21-0244 (DLF), 2022 WL 990744, at *5 (D.D.C. Mar. 31, 2022) (internal quotation marks omitted). "As the Supreme Court has explained, the exemption extends to communications between Government agencies and outside consultants hired by them." *Id.* (internal quotation marks omitted). "But, an outside party is not acting as a consultant for the purposes of Exemption 5 when it represent[s] an interest of its own, or the interest of any other client[.]" *Id.* (internal quotation marks omitted).

Accordingly, Treasury withheld certain information, including information protected by: (1) the deliberative process privilege, *see* Treasury Decl. ¶¶ 18-23; (2), the attorney-client privilege, *see* Treasury Decl. ¶¶ 24-28; (3) the attorney work product privilege, *see* Treasury Decl. ¶¶ 29-30; and (4) the consultant corollary doctrine, *see* Treasury Decl. ¶¶ 31-33.

With respect to the deliberative process privilege, Treasury withheld materials reflecting pre-decisional and deliberative internal discussions. These materials include, for example: six unfinalized drafts of the AG Guidelines, *Id.* ¶ 20; portions of records reflecting efforts by Treasury to develop, design, and evaluate a proposed framework, methodology, and protocols for reciprocal sharing of certain law-enforcement information with the Federal Financial Monitoring Service of the Russian Federation ("Rosfinmonitoring"), *Id.* ¶ 21; and portions of records concerning substantive details and intra- and inter-agency discussions about a proposed Financial Intelligence

6

Office organizational realignment under consideration at the time, *Id.* ¶ 22. In addition, and with respect to the Special Counsel records processed by Treasury, Treasury withheld portions of records which, among other things, contained information pertaining to the development of policy and congressional protocols regarding Financial Intelligence Office realignment proposals, *Id.* ¶ 23; preliminary findings and interview questions concerning employee complaints to the Treasury's Office of Inspector General, *Id.*; and preliminary discussions within the Treasury's Financial Crimes Enforcement Network concerning a security incident, *Id.*.

Disclosure of the materials withheld pursuant to the deliberative process privilege would have a deleterious impact on a range of interests by impeding internal agency discussions on the conduct of intelligence activities, by impairing the integrity of the agency decision making process, and by confusing the public by the release of information that does not reflect final agency determinations. *Id*. ¶ 35 - 37. Additional information about Treasury's withholdings based upon the deliberative process privilege and the foreseeable harm that would result from disclosure is detailed in the *Vaughn* indices accompanying Treasury's Declaration. *See* AG Guidelines *Vaughn* Index at 1-27; TFFC/Russia *Vaughn* Index at 2-11, 16-21, 23-27, 31-36, 39-51; TFI Realignment *Vaughn* Index at 2-15, 16-80, 82-110, 113-25, 127-179, 181-209, 211-217; OSC Referred Records *Vaughn* Index at 1-7.

With respect to the attorney-client privilege, Treasury withheld portions of documents and communications reflecting confidential information between Treasury attorneys and clients related to legal matters for which the client sought professional legal assistance and services. Treasury Decl. ¶¶ 24. For example, Treasury withheld "serial draft versions of the draft guidelines identifying specific matters for which legal advice was sought, including the proposed guidelines framework, governing principles, limitations, and procedures concerning the handling of

7

information." *Id.* ¶ 26. Moreover, Treasury withheld a portion of the title of an e-mail and substantive discussions concerning a specific investigative matter that was addressed in a confidential, attorney-client communication between Treasury's Office of the General Counsel and a client. *Id.* ¶ 27. Treasury also withheld as privileged attorney-client communications the title and substance of a nonfinal draft legal memoranda identifying specific matters for which legal advice was sought. *Id.* ¶ 28. Disclosure of these materials would impair the ability of Treasury employees to inform fully their attorneys when requesting legal advice, compromising the quality of legal advice rendered and advocacy provided by the agency. *Id.* ¶ 19. Additional information about Treasury's withholdings based upon the attorney-client privilege and the foreseeable harm that would result from disclosure is detailed in the *Vaughn* indices accompanying Treasury's Declaration. *See* AG Guidelines *Vaughn* Index at 1-27; TFFC/Russia *Vaughn* Index at 16-19, 34-36, 39-40; TFI Realignment *Vaughn* Index at 27-29, 37-42, 50-52, 67-68, 71-75, 89-92, 95, 98-99, 108, 113-18, 122, 129-31, 135, 137-42, 158-60, 164-68, 183-84, 207, 214-15.

With respect to the attorney work-product privilege, Treasury withheld portions of documents and communications prepared by attorneys in reasonable anticipation of litigation. Treasury Decl. ¶ 29. Disclosure of such material would expose Treasury attorneys' preparation materials to scrutiny and would foreseeably harm the agency's adversarial trial process. *Id.* ¶ 42. Additional information about Treasury's withholdings based upon the attorney work-product privilege and the foreseeable harm that would result from disclosure is detailed in the *Vaughn* indices accompanying Treasury's Declaration. TFI Realignment *Vaughn* Index at 39-42, 50-51, 72-74, 89-90, 129, 141-42.

Finally, with respect to the consultant corollary doctrine, Treasury withheld documents and communications reflecting a consultative relationship between Rosfinmonitoring and Treasury

8

and that were created for the purpose of aiding Treasury's deliberative process concerning a bilateral project investigating terrorist financing. Treasury Decl. ¶ 31. Disclosure of these materials would foreseeably jeopardize the candid considerations necessary for good decision making within the government by: (1) potentially discouraging frank discussions on collaborative investigative matters of, between, or among subordinates and superiors and their collaborating counterparts; (2) creating public confusion by revealing reasons and rationales that were not the grounds for actions ultimately taken; (3) undermining confidence of a foreign partner in Treasury's ability to maintain confidences in confidential collaborative efforts and international cooperation more broadly; and (4) disclosing prematurely proposed policies before they are actually adopted. *Id*. ¶ 43. Additional information about Treasury's withholdings based upon the consultant corollary doctrine and the foreseeable harm that would result from disclosure is detailed in the *Vaughn* indices accompanying Treasury's Declaration. TFFC/Russia *Vaughn* Index at 2-3. 16-19. 21-22, 28-29, 37-40, 45-46, 49-50.

For the reasons discussed herein and set forth in Treasury's Declaration and *Vaughn* indices, the Court should conclude that Treasury appropriately withheld information under Exemption 5.

### B. Treasury Released All Reasonably Segregable Information

While an agency may properly withhold records or parts of records under one or more FOIA exemptions, it "must release 'any reasonably segregable portions' of responsive records that do not contain exempt information.'" *Agrama v. IRS*, 282 F. Supp. 3d 264, 275 (D.D.C. 2017); *see* 5 U.S.C. § 552(b) (requiring "any reasonably segregable portion of a record shall be provided to [the requester] after deletion of the portions which are exempt"). Non-exempt portions of a document "must be disclosed unless they are inextricably intertwined with exempt portions."

*Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Before approving the application of a FOIA exemption, district courts must make specific findings of segregability regarding the documents to be withheld. *Summers v. Dep't of Just.*, 140 F.3d 1077, 1081 (D.C. Cir. 1998). Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material. *Boyd v. Crim. Div.*, 475 F.3d 381, 391 (D.C. Cir. 2007).

Here, Treasury carefully reviewed the responsive records on a line-by-line and page-by-page basis to identify reasonably segregable, non-exempt information. Treasury Decl. ¶ 45. Treasury determined that all information withheld either was exempt from disclosure or was so intertwined with protected material that segregation was not possible without revealing the underlying protected material. *Id*. Treasury produced all the segregable, non-exempt information in the requested records. *Id*.

For the reasons discussed herein and set forth in Treasury's Declaration and *Vaughn* indices, the Court should conclude that Treasury satisfied its obligation to disclose any reasonably segregable information.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for summary judgment. A proposed order accompanies this submission.

Dated: March 31, 2023

        Respectfully submitted,

        MATTHEW M. GRAVES, D.C. Bar #481052
        United States Attorney

        BRIAN P. HUDAK
        Chief, Civil Division

        By: /s/ Fithawi Berhane
        FITHAWI BERHANE
        Assistant United States Attorney

United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-6653
Fithawi.Berhane@usdoj.gov

*Counsel for the United States of America*