**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JASON LEOPOLD, *et al.*, | ) | Civil Action No. 17-1524 (APM) |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| UNITED STATES DEPARTMENT | ) |  |
| OF THE TREASURY, *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

**DECLARATION OF RYAN LAW**

I, Ryan Law, declare the following to be a true and correct statement of facts:

1.      I am the Deputy Assistant Secretary (DAS) for the Office of Privacy, Transparency and Records ("PTR") at the United States Department of the Treasury (Treasury).  I have held this position since June 2016.

2.      As DAS, I manage and oversee PTR, which is responsible, in part, for the processing of Freedom of Information Act ("FOIA") requests applicable to Treasury's Departmental Offices. These duties require that I have knowledge of the procedures and requirements for making FOIA requests, processing records responsive to FOIA requests, and publicly releasing records and information that is not exempt under FOIA.  As part of my official duties, I am responsible for assisting the Department of Justice in defending litigation filed under the FOIA against Treasury.

3.      This declaration is based on my personal knowledge, my review of Treasury records and information, as well as information provided to me by other Treasury employees in the course of my official duties.

4.      This declaration explains Treasury's processing of three FOIA requests submitted by the Plaintiffs to Treasury and a set of records referred to Treasury by the Office of Special Counsel (OSC).  It explains the circumstances in which the parties agreed to exclude from this litigation two additional FOIA requests allegedly submitted by Plaintiffs to Treasury but never received. This declaration also explains the FOIA exemption rationale justifying the redactions made to records produced in response to the three FOIA requests and to the OSC referred records.

**FOIA Requests and Production of Responsive Records**

5.      *Attorney General Guidelines Request*.   On May 23, 2017, Plaintiffs filed a FOIA request via the Treasury on-line portal for draft and final copies of Attorney General guidelines (AG Guidelines) for the Treasury's Office of Intelligence and Analysis for the past three years. (Exhibit A).  Treasury acknowledged receipt of the request by letter dated May 25, 2017. (Exhibit B).   During this litigation the parties agreed to scope the request to the temporal period between January 1, 2016, and December 31, 2017.  Treasury completed processing of all responsive records for the AG Guidelines request on September 13, 2022.  A total of 417 pages constituting six draft versions of the guidelines were withheld in full.  No final versions of the guidelines were produced because Treasury has not finalized any version to date.

6.      *TFFC and Russia request.*  By letter dated June 2, 2017, Treasury acknowledged receipt of a perfected FOIA request from the Plaintiffs (Exhibit C) based on their June 1, 2017, e-mail submission of additional information concerning the temporal scope of their initial, imperfect FOIA request (Exhibit D).  The perfected request sought all emails Adam Szubin and Daniel Glaser exchanged, sent, received, mentioning or referring to Russia and the Office of Terrorist Financing and Financial Crimes (TFFC); and all emails mentioning or referring to TFFC and Russia sent, received by Treasury officials Jennifer Fowler, Sarah Runge, Anna Morris, and

Jamie Kraut, to include emails in which those officials are named in the body/text of any emails that mention or refer to TFFC and Russia.  The request sought records for the time-period from January 1, 2014, through the date the search was conducted.  Treasury completed production of responsive records for the TFFC and Russia request on June 19, 2019.  A total of 2,140 pages were produced in redacted form.

7.      *TFI Realignment request*.  On May 23, 2017, Plaintiffs filed a FOIA request via the Treasury on-line portal for all emails mentioning or referring to the realignment of Treasury's Office of Terrorism and Financial Intelligence (TFI) and specifically requested that the official government email accounts of Daniel Glaser, a former TFFC Assistant Secretary, and Adam Szubin, the TFI Under Secretary, be searched in addition to the emails of all other FinCEN employees and officials in which the TFI realignment is the subject.  (Exhibit E).  The request sought records for the time-period from January 1, 2014, through the date the search was conducted.  Treasury acknowledged receipt of the request by letter dated May 31, 2017.  (Exhibit F).  Treasury completed production of responsive records for the TFI Realignment FOIA request on March 5, 2021.  A total of 7,215 pages were produced in redacted form.

8.      Plaintiff's complaint alleges two additional requests were submitted to Treasury—one regarding whistleblower complaints and concerns filed by FinCEN personnel (see Complaint paragraph 12) and one requesting the most recent Office of Terrorism and Financial Intelligence audit (see Complaint paragraph 14).  Treasury has no record of receiving either of these requests. Informed of this, Plaintiff's counsel emailed Damon Taaffe, the Assistant United States Attorney assigned to this case at the time, on September 15, 2017, advising him those requests may be excluded from this litigation.  (Exhibit G).

9.    *Records Referred by the Office of Special Counsel*.  On August 24, 2018, the Office of

Special Counsel (OSC) referred 804 pages of records to Treasury for processing.  (Exhibit H).

These records were identified by OSC as responsive to a FOIA request Plaintiffs submitted to the

OSC that is at issue in this litigation.  Treasury coordinated processing these records with the

Financial Crimes Enforcement Network (FinCEN), a Treasury bureau, and Treasury's Office of

the Inspector General.  On August 7, 2019, a total of 774 pages of records were produced in

redacted form.[1]  The remaining 30 pages were determined to be nonresponsive or duplicates of

other records produced in the production and eliminated from processing.

**Overview of TFI**

10.    The FOIA requests at issue pertain to matters that occurred within the Office of

Terrorism and Financial Intelligence (TFI) in the Treasury Department.  TFI marshals the

Department's intelligence and enforcement functions to sever the lines of financial support to

international terrorists, weapons of mass destruction proliferators, narcotics traffickers, money

launderers, and other threats to our national security.  Its statutory duties include providing

policy, strategic, and operational direction to the Department on issues relating to

implementation of Bank Secrecy Act (the United States' comprehensive federal anti-money

laundering and countering the financing of terrorism statute), U.S. economic sanctions

programs; combating terrorist financing, financial crimes, including money laundering,

counterfeiting, and other offenses threatening the integrity of the banking and financial systems;

combating illicit financing relating to human trafficking and other enforcement matters; and the

---

[1] These pages were originally released without Bates numbering.  For purposes of preparing a *Vaughn* index in this litigation, they were reprocessed to add Bates numbering.  In that process, it was determined that two records had been publicly released on the Treasury Office of Inspector General's website after their initial production in this case.  Those two records were eliminated from reprocessing due to their public availability, reducing the records to be reprocessed for bates numbering to 738 pages.  On October 11, 2022, Treasury re-released the 738 pages with the following bates numbering applied:  FinCEN_000001 though FinCEN_000738.

receipt, analysis, collation, and dissemination of intelligence and counterintelligence information for national security matters of the Treasury.  TFI oversees its component offices and a bureau, including: TFFC which is responsible for formulating and coordinating the counter terrorist financing and anti-money laundering efforts of the Treasury; the Office of Foreign Asset Control which administers and enforces economic and trade sanctions; the Office of Intelligence and Analysis (OIA) responsible for TFI's intelligence functions, integrating the Treasury into the larger intelligence community, and providing support to both Treasury leadership and the intelligence community; and the Financial Crimes Enforcement Network (FinCEN), a bureau responsible for administering and enforcing the Bank Secrecy Act, facilitating law enforcement investigations conducted by other agencies, and exchanging information with foreign government agencies in furtherance of international efforts to combat financial crime.  TFI and its organizational components are designated as a law enforcement organization of the Department of the Treasury.  31 U.S.C. § 312(d).

## *Vaughn* Indices

11.     *AG Guidelines Vaughn Index*.  A total of 417 pages responsive to the AG Guidelines request were withheld in full.  Treasury prepared a *Vaughn* Index of those 417 pages. (Exhibit I).

12.     *TFFC and Russia Vaughn Index*.  A total of 2,140 pages responsive to the TFFC and Russia request were produced in redacted form.  For purposes of expediting the preparation of a *Vaughn* index, the parties agreed to a 2% sampling of the records produced.  Accordingly, Treasury prepared a *Vaughn* Index of 43 pages of the records produced in redacted form, selected in the following 50-page sequence: 1, 51, 101, 151, etc., covering the Bates numbering range from TFFC_00000001 through TFFC_00002101.  (Exhibit J).  Seven pages were withheld in full and the remaining 36 pages were released in part.

13.    *TFI Realignment Vaughn Index*.  A total of 7,215 pages responsive to the TFI

Realignment request were produced in redacted form.  Following the agreed upon 2% sampling

methodology, Treasury prepared a *Vaughn* Index of 144 pages of the records produced in

redacted form using the same 50-page sequence convention described above covering the Bates

numbering range from TFI_0000001 to TFI_00007201.  (Exhibit K).   Forty-five pages were

withheld in full, and 99 pages were released in part.  In two instances, pages falling in the

sequence were blank pages.  In those instances, Treasury selected the next page following the

blank page.  Specifically, Bates pages TFI_00004701 and TFI_00006151 turned out to be blank

pages, so pages TFI_00004702 and TFI_00006152 were added to the Index.

14.    While creating the TFFC and Russia *Vaughn* Index and the TFI Realignment *Vaughn*

Index, Treasury determined there were some inconsistent redactions of portions of information in

32 pages that fell within the numbering sequence for selection into the indices.  Treasury

reprocessed those 32 pages and in a supplemental production on April 5, 2022, released the

portions of information previously withheld in those pages.  Two pages in the TFI Realignment

Index were released in full, so Treasury selected the next page following the released pages for

the TFI Realignment Index.  Specifically, pages TFI_00000901 and TFI_00000951 were

released in full and pages TFI_00000902 and TFI_00000952 were added to the Index.

15.    *OSC Referred Records Vaughn Index*.  A total of 774 pages of records originally were

produced in redacted form.  As explained in footnote 1 above, two records were subsequently

published in full on Treasury's website by the Office of Inspector General.  Those records were

excluded from selection for this *Vaughn* index, thereby reducing the total number of withheld

pages to 738.  Following the agreed upon 2% sampling methodology, Treasury prepared a

*Vaughn* Index of 15 pages of the records produced in redacted form using the same 50-page

sequence convention described above covering the Bates numbering range from

FinCEN_0000001 to FinCEN_0000701 (Exhibit L).  Four pages were withheld in full, and 11

pages were released in part.

### Justification for Withholdings

16.     As discussed in the respective *Vaughn* indices, certain information has been withheld

from responsive records under FOIA Exemption 5 (including deliberative process, attorney-

client, attorney work-product and consultant corollary doctrine information).  Plaintiff does not

challenge Treasury's assertions of FOIA exemptions 6, 7(C), 7(D) and 7(E) asserted in any of

Treasury's productions in this case.

### Exemption 5

17.     Exemption 5 protects inter-agency or intra-agency memorandums or letters that would

not be available by law to a party other than an agency in litigation with the agency, provided

that the deliberative process privilege shall not apply to records created 25 years or more before

the date on which the records were requested.  Exemption 5 protects, inter alia, memoranda,

letters, and email correspondence that are pre-decisional and part of the agency's deliberative

process, reflect confidential attorney-client communications or attorney work-product, or contain

communications between an agency and non-agency consultants that qualify as "intra-agency"

communications under the doctrine known as the "consultant corollary".

### Exemption 5 – Deliberative Process Privilege

18.     Pursuant to the deliberative process privilege of Exemption 5, Treasury withheld portions

of draft documents, communications regarding draft documents, and similar pre-decisional and

deliberative conversations that were internally shared in the open and frank exchange of ideas,

drafts, and postures within and between offices and agencies.

19.     In order for the deliberative process privilege to apply, the representative materials must be both pre-decisional and deliberative.  The attached *Vaughn* indices describe the pre-decisional and deliberative nature of each record or portion thereof that was withheld pursuant to this privilege.

20.     As applied in the AG Guidelines *Vaughn* Index, Exemption 5 (deliberative process privilege) was asserted to withhold in full all 417 pages constituting six draft iterations of the guidelines.  Each of these pages were part of a nonfinal version of the draft guidelines containing notional design elements under consideration, including draft descriptions of proposed organizational objectives, roles, functions and responsibilities; proposed guidelines framework, governing principals, procedures, threshold requirements; evolving definitions of key terminology and selected contextual information deemed relevant to the design and function of the guidelines, and internal commentary and critiques, including proposed redline edits to serial versions of the draft guidelines.  These matters are, in whole and in part, part of an ongoing intra- and inter-agency pre-decisional and deliberative process by senior officials to design a governing framework, procedures, and processes for the conduct of intelligence activities by the Treasury Department.  These nonfinal versions of the draft guidelines weresubjected to review and coordination with the Department of Justice (DOJ) and the Privacy and Civil Liberties Oversight Board (PCLOB), an independent agency within the executive branch of the United States government, as part of the concomitant approval process for issuance of a final set of guidelines approved by the Attorney General.  These nonfinal versions of the draft guidelines were circulated to obtain critique and recommendations on proposed design elements under consideration and contain proposed edits and commentary pertinent to those elements.  They reflect the internal debate among Treasury officials, as well as the give and take of the larger

review process necessary for Attorney General approval and the advice and recommendations of the DOJ and PCLOB.  Feedback provided to Treasury as a result of this review and coordination was incorporated into later iterations of the draft procedures, including iterations falling outside the temporal scope of the request.  Moreover, Treasury's AG Guidelines remain in draft form; no final version of the guidelines has been approved by the Attorney General to date, and the current iteration of the draft guidelines will remain subject to revision until approved.

21.     As applied in the TFFC and Russia *Vaughn* Index, Exemption 5 (deliberative process privilege) is asserted to the portions of records concerning substantive details and intra and inter-agency discussions about a proposed bilateral project with a foreign law enforcement counterpart investigating terrorist financing by a specific terrorist organization, and in particular, between FinCEN and their counterparts in the Federal Financial Monitoring Service of the Russian Federation, Rosfinmonitoring (a federal financial investigation unit (FIU) that collects and analyzes information about financial transactions in order to combat domestic and international money laundering, terrorist financing, and other financial crimes).  The records at issue reflect efforts by Treasury (TFI/TFFC) and FinCEN personnel representing the financial investigative law enforcement interests of the Treasury Department to develop, design and evaluate a proposed framework, methodology, and protocols for reciprocal sharing of certain law enforcement information with Rosfinmonitoring.  Redacted portions of records contain substantive discussion and internal commentary on matters undergoing development and evaluation, nonfinal records in draft form and selected contextual information concerning: (a) a proposed framework, methodology, and protocols of an agreement to share investigative information; (b) internal preliminary assessments and possible courses of action under consideration by senior Treasury (TFI/TFFC) and FinCEN officials; (c) notional agenda items

for a potential bilateral meeting, sensitive contextual information, and possible courses of action in advance of any meeting and draft meeting minutes undergoing internal review and editing within TFI/TFFC; (d) descriptions of a test set of law enforcement investigative requests with Rosfinmonitoring undergoing review by FinCEN and personal commentary and assessments regarding that review; and (e) personal comments, assessments, concerns, views, opinions and characterizations that do not represent official Treasury policy or any final decision concerning any exchange or proposed exchange of investigative information with Rosfinmonitoring, speculation about possible misunderstandings regarding appropriate sharing methodology and protocols for investigative exchanges, scoping proposals for sharing investigative information with Rosfinmonitoring and potential areas for further engagement which were subject to further consideration and discussion among senior Treasury (TFI/TFFC) and FinCEN officials.  This information was part of a pre-decisional and deliberative internal evaluative discussion concerning the merits of a proposed bilateral exchange of certain investigative information with Rosfinmonitoring undergoing project development and review.  Other than a limited test exchange, this proposal was not finalized or implemented, and further development of the overall proposal was not undertaken.

22.     As applied in the TFI Realignment *Vaughn* Index, Exemption 5 (deliberative process privilege) is asserted to portions of records concerning substantive details and intra and inter-agency discussions about a proposed TFI organizational realignment under consideration at the time.  TFI was never realigned.  There was no final decision to realign TFI, and except for minor structural changes within the TFI front office, the other realignment proposals were never finalized or implemented, and further development of the overall proposal was not undertaken.  Redacted information includes substantive details and descriptions of: (a) notional design

elements conceived and developed in the course of examining proposed realignment concepts during ongoing deliberations concerning how TFI might be realigned to improve organizational efficiency and effectiveness, including proposed staffing models, modifications of TFI component functional roles and responsibilities, relocation of certain staff for better organizational and strategic integration, and evaluative measures of employee concerns, support, and professional development to maximize realignment goals and objectives; (b) developmental meeting agenda items and meeting notes concerning notional planning, objectives and proposed near-term, mid-term and long-term timelines under consideration, select data under analysis and consideration to include percentages and types of work performed in TFI mission areas and number of full-time employees proposed in support of a TFI organizational realignment, and other working papers supporting conceptual development and draft documents created to address questions and provide answers (including reviewer comments and edits); (c) contemplated modifications to FinCEN's budget request and descriptions of the potential impact of certain aspects of the proposed TFI realignment; (d) analysis and critique of organizational, operational, functional, performance and programmatic activities specific to TFI strategic mission areas, scope of duty limitations impacting realignment scenarios under consideration; (e) key pillars of the proposed realignment, planning and implementation hallmarks, proposed interim measures to address perceived build-out gaps, and issues of concern for ongoing consideration and development, including logistical issues and technical support; (f) coordination and collaboration methodology proposed for developmental design of a new organizational unit under consideration, including specific Integrated Management Team (IMT) workgroups; (g) presentations reporting initial polling results concerning various logistical scenarios for a portion of FinCEN's workforce under a proposed staffing model under consideration; (h) drafts of a

proposed memorandum of agreement (never finalized) outlining a framework for a staffing proposal, operational roles and responsibilities of the parties and arrangements under consideration, including reviewer edits, commentary and recommendations; (i) drafts of a notional performance appraisal form under consideration illustrating what an appraisal would look like for a specific new position and grade proposed under the realignment, including descriptions of critical elements, standards, weighting and relevance to strategic plan and organizational goals; (j) summary of realignment topics briefed to Hill staffers created to inform TFI leadership about specific congressional briefings to keep them abreast of necessary congressional outreach, nonfinal draft responses to congressional inquiries about the proposed realignment, including reviewer comments, edits, opinions, analysis and recommendations; (k) internal communications with the Office of Management and Budget helping shape various realignment proposals and congressional presentations; and (l) internal communications reflecting substantive debate over matters under review or consideration, including personal impression, characterizations, view, opinions, assessments, critique, recommendations and concerns regarding aspects of the proposed realignment that do not represent official Treasury policy or any final decision.  This information reveals the overall design and development of discrete elements considered in the proposed realignment which were never implemented, and the internal back-and-forth of pre-decisional and deliberative discussions examining, critiquing, modifying and revising efforts to develop the design concepts that were never finalized or implemented.

23.     As applied in the OSC Referred Records *Vaughn* Index, Exemption 5 (deliberative process privilege) is asserted to portions of records concerning substantive details and intra and inter-agency discussions about (a) developing policy and congressional protocols between

Treasury, FinCEN and OMB officials on TFI' realignment proposals; (b) preliminary findings and discussion among Treasury officials concerning an employee complaint to Treasury's Office of Inspector General (OIG), including the select background information evaluated (c) a set of interview questions and answers that were part of preliminary findings of investigations concerning an employee complaint to the Treasury OIG; (d) preliminary findings and discussion among FinCEN officials concerning a security incident; (e) preliminary discussions within FinCEN about a possible detail arrangement between FinCEN and Treasury's Office of Intelligence and Analysis, possible terms of such arrangement, including a draft detailee agreement that was never finalized or otherwise entered into; (f) relevant factors used in making preliminary findings and discussion among FinCEN officials concerning an employee complaint to the Treasury OIG; and (g) the personal comments, characterizations, observations, assessments, views, opinions and recommendations of various author's commentary regarding the matters just described that do not represent official Treasury policy or any final decision.

### Exemption 5 – Attorney-Client Privilege

24.     Pursuant to the attorney-client privilege of Exemption 5, Treasury withheld portions of documents and communications that reflect confidential information supplied from clients to attorneys, as well as advice provided by the attorney to the client based on such information, related to legal matters for which the client sought professional legal assistance and services.

25.     In order for the attorney-client privilege to apply, the representative materials must reflect confidential communications between Treasury attorneys and Treasury clients related to legal matters for which the client sought professional legal assistance and services.  Additionally, Treasury must hold the information confidential and not waive the attorney-client privilege.  The attached *Vaughn* indices for the AG Guidelines, TFFC and Russia and TFI Realignment request

describe in detail the specific circumstances of each record or portion thereof that was withheld pursuant to this privilege.  This privilege was not asserted with respect to any withholdings in the OSC referred records produced.

26.     As applied in the AG Guidelines *Vaughn* Index, Exemption 5 (privileged attorney-client communications) was asserted to withhold serial draft versions of the draft guidelines identifying specific matters for which legal advice is sought, including proposed organizational objectives, roles, functions and responsibilities; a guiding framework, governing principals, procedures, threshold requirements, definitions of key terminology and selected contextual information deemed relevant to the request for legal advice; legal analysis, questions, commentary and opinions concerning the guidelines as a whole, as well as discrete elements of the guidelines undergoing legal review and refinement.  All versions of the draft guidelines were initially written by or later edited by Office of the General Counsel attorneys in consultation with their OIA clients.

27.     As applied in the TFFC and Russia *Vaughn* Index, Exemption 5 (privileged attorney-client communications) is asserted to the title of an email and substantive discussions therein identifying a specific investigative matter that was part of a confidential attorney-client communication between an attorney within Treasury's Office of the General Counsel and a TFI/TFFC "client" seeking legal advice about the matter.  The attorney-client privilege is also asserted to substantive discussions that are part of a series of communications with FinCEN's Office of Chief Counsel identifying the subject and details of matters for which legal advice was sought and under legal review and advisement.

28.     As applied in the TFI Realignment *Vaughn* Index, Exemption 5 (privileged attorney-client communications) is asserted the email communications discussing the substance and

details of questions raised by FinCEN officials and staff about a particular staffing proposal, proposed method for filling new positions and a parallel workstream item under development for which legal advice is sought from FinCEN's Office of Chief Counsel, including specific information concerning the underlying legal authority and applicable legal standards governing the proposal, and legal analysis, interpretations of legal authorities, opinions and recommendations for which legal advice is sought.  The attorney-client privilege is also asserted to the title and substance of a nonfinal drafts of legal memoranda identifying the specific matter for which legal advice was sought and presenting draft legal analysis and opinions concerning proposed element of the realignment for which legal advice is sought.

### Exemption 5 – Attorney Work-Product Privilege

29.     Exemption 5 also protects memoranda and correspondence that are attorney work-product prepared in contemplation of litigation.  Pursuant to attorney work-product privilege of Exemption 5, Treasury withheld portions of documents and communications produced in response to the TFI Realignment request that were prepared by an attorney in reasonable anticipation of litigation.  This privilege was not asserted to any other records produced in response to the other requests at issue.

30.     In order for the attorney work-product privilege to apply, the representative materials must be both prepared by or at the direction of an attorney and created in reasonable anticipation of litigation.  The TFI Realignment *Vaughn* Index describes in detail the specific circumstances of each record or portion thereof that was withheld pursuant to this privilege.  Exemption 5 (privileged attorney work-product) is asserted to portions of various iterations of a draft legal memorandum prepared by attorneys in FinCEN's Chief Counsel's office assessing the legal questions raised about staffing proposal, identifying applicable legal authorities, presenting legal

citations, analysis and interpretation of those authorities, applying them to the questions presented, and rendering legal advice and opinions on possible courses of action to guide decision making.  The draft memorandum also reflects levels of legal review by senior legal staff attorneys, including editorial comments and edits of a legal nature.  The legal memorandum was drafted to address issues impacting design and development a staffing proposal for the realignment and serve as a foundational document providing the legal framework and guidance needed for Treasury officials to determine whether and how the proposal might be implemented and drafted in reasonable anticipation of potential litigation to defend any decision taken and/or implemented.

### Exemption 5 – Consultant Corollary Doctrine

31.     Pursuant to the consultant corollary doctrine of Exemption 5, Treasury withheld documents and communications produced in response to the TFFC and Russia request that reflects a consultative relationship between Rosfinmonitoring and Treasury (TFI/TFFC and FinCEN) created for the purpose of aiding Treasury's deliberative process concerning a proposed bilateral project investigating terrorist financing.  Treasury did not assert the consultant corollary doctrine to any other records produced in response to the other requests at issue.

32.     For the consultant corollary to apply, the representative materials qualify as "intra-agency" for purposes of Exemption 5 if, the agency solicited the records from the non-agency party or there exists some indicia of a consultant relationship between the outsider and the agency, and the records were created for the purpose of aiding the agency's deliberative process. The attached TFFC and Russia *Vaughn* Index describes in detail the specific circumstances of each record or portion thereof that was withheld pursuant to this privilege.

33.     As applied in the TFFC and Russia *Vaughn* Index, Exemption 5 (consultant corollary

doctrine) is asserted to withhold information concerning a proposed framework, methodology,

and protocols for an agreement between Treasury (TFI/TFFC and FinCEN) and its foreign

counterpart, Rosfinmonitoring, to share investigative information for a proposed bilateral project

investigating terrorist financing by a particular terrorist organization.  This information was part

of an iterative consultative process between Treasury and Rosfinmonitoring to further develop

the necessary contours and methods for development of the proposed project in which Treasury

in part, sought advice and information from Rosfinmonitoring to jointly combat terrorist

financing by a particular terrorist organization, in furtherance of Treasury's and

Rosfinmonitoring's respective missions to counter terrorist financing.  Treasury also withheld

draft meeting minutes and correspondence revealing efforts to design, test and assess the

investigative value of certain investigative exchanges for the proposed bilateral project, including

the subject and nature of specific investigative exchanges, the name of a specific investigative

matter, targets, investigative status.  Other than a limited test exchange, this bilateral proposal

was not finalized or implemented, and further development of the overall proposal was not

undertaken.

### Foreseeable Harm

34.     The FOIA provides that agencies shall withhold information "only if . . . the agency

reasonably foresees that disclosure would harm an interest protected by an exemption described

in [the statute] . . .." 5 U.S.C. § 552(a)(8)(A)(i).  In assessing whether information should be

withheld pursuant to the deliberative process privilege encompassed by Exemption 5 of the

FOIA, Treasury is mindful that three policy rationales have been recognized by the D.C. Circuit

as underpinning the deliberative process privilege:

"First, [the privilege] protects creative debate and candid consideration of alternatives within an agency, and, thereby, improves the quality of agency policy decisions. Second, it protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon. And third, it protects the integrity of the decisionmaking process itself by confirming that 'officials should be judged by what they decided(,) not for matters they considered before making up their minds.'"[2]

35.   Treasury's draft AG Guidelines are not final and remain part of a process in which proposed design elements under intra and inter agency consideration, critique and revision to design a governing framework, procedures, and process for the conduct of intelligence activities by the Treasury Department.  Release of the nonfinal versions of the draft guidelines would harm all of these interests – by chilling the full and frank internal discussion of agency and Executive Branch personnel, particularly on matters governing the conduct of intelligence activities, by causing public confusion from releasing information that does not reflect final agency determinations, and by impairing the integrity of the decision making process by revealing what Executive Branch officials considered (and are still considering) before making up their minds.

36.   Treasury employees engaging in similar decisionmaking processes in the future would be much more cautious in their discussions with each other and in providing all pertinent information and viewpoints to agency and Executive Branch decisionmakers in an open and timely manner. This caution would hinder the ability of Treasury leadership to develop and obtain frank, unfettered information and advice from subject matter experts and components as they work toward presenting cohesive ideas and proposals.  The quality of the agency

---

[2] Russell v. Dep't of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (quoting Jordan v. U.S. Dep't. of Just., 591 F.2d 753, 772-773 (D.C. Cir. 1978)).

decisionmaking process in response to similar ongoing and future Executive Branch decisionmaking would be damaged if Treasury employees cannot focus solely on providing comprehensive and candid information, but rather must evaluate advice and information through the lens of potential public release. This is especially true in the context of matters of considerable national controversy and concern like the conduct of intelligence activities.

37.     Additionally, release of nonfinal draft AG Guidelines would lead to significant public confusion about whether information considered by Treasury actually reflects the policies and positions of the agency, and whether information provided in the guidelines will actually reflect Treasury's final DOJ approved guidelines. There is substantial likelihood these draft versions will be inaccurately construed by the public as governing rules for Treasury's intelligence activities going forward.

38.     Finally, releasing nonfinal draft AG Guidelines to the public would significantly undermine the integrity of the decisionmaking process by denying Treasury officials to be fairly judged on their final decisions (*i.e.,* the guidelines that are actually DOJ-approved and implemented), and inviting public judgments to be made upon what they may have considered in the process (*i.e.,* proposed text or guidance that was not adopted or implemented). This is especially true in the context of intelligence activities issues which are matters of considerable national controversy and concern.

39.     The same foreseeable harm analysis is equally applicable to the predecisional and deliberative information described in paragraphs 21-23 above concerning the responsive records produced for the TFFC and Russia request, TFI Realignment request and OSC referred records.

40.     Releasing substantive details and internal discussions, analysis, critiques and evaluation of matters that were never finalized or otherwise implemented concerning (a) the development of

a proposed framework, methodology, and protocols for reciprocal sharing of certain law enforcement information with Rosfinmonitoring and (b) notional concepts, design elements, staffing models for a proposed TFI organizational realignment would chill the full and frank internal discussion of agency personnel, particularly on matters governing the conduct of bilateral investigative information sharing efforts and efforts by senior officials to improve organizational efficiency and effectiveness of Treasury offices.  The quality of the agency decision making process would be damaged going forward because employees would be more reticent to engage in frank discussions on investigative matters and efforts to improve organizational effectiveness expecting their views might be publicly released, denying senior leadership that important input necessary for sound decision making.  Similarly, releasing details and internal discussions regarding preliminary findings of FinCEN officials concerning a security incident or a complaint to Treasury's Office of Inspector General would undermine the decision-making process in the review and evaluation of such matters by discouraging frank discussions on matters of policy between or among subordinates and superiors.  Finally, release of the details and descriptions of efforts to explore a proposed bilateral investigative project with Rosfinmonitoring undertaken in confidence as an evaluative exercise preliminary to any decision to go forward with any such project would undermine the confidence of our foreign partners in Treasury's ability to maintain confidences in confidential collaborative efforts and international cooperation more broadly.  In all these matters, releasing information that does not reflect final agency determinations could cause public confusion by revealing the reasons and rationales that were not in fact the grounds for any actions ultimately taken and impair the integrity of the decision-making process by revealing what Treasury officials considered before making up their minds, allowing the public to judge them on factors not relevant to any final decisions.

41.     Regarding the information described in paragraphs 24-28 above concerning attorney-client communications, release of the withheld information would reveal the specific subject and details of matters for which legal advice was sought and under legal consideration and which are encompassed by the attorney-client privilege.  Release of this information would foreseeably undermine the fundamental confidences required for an effective attorney-client relationship, impair the ability of Treasury and FinCEN employees to fully inform their counsel when seeking legal advice if they anticipate public disclosure of matters discussed in confidence for the purpose of obtaining legal advice and counsel, resulting in unsound legal advice and advocacy on behalf of the agency.

42.     Regarding the information described in paragraphs 29-30 above concerning attorney work-product, release of the withheld information would reveal legal analysis and opinions of FinCEN attorneys and senior legal reviewers concerning a proposed element of the realignment. The legal memorandum was to be a foundational document providing the legal framework and guidance needed for Treasury officials to determine whether and how the proposal might be implemented and drafted in reasonable anticipation of potential litigation to defend any decision taken and/or implemented.  This information is attorney work-product, the release of which would expose attorneys' preparation materials to public scrutiny, in advance of any potential litigation harming the adversarial trial process.

43.     Regarding the information described in paragraphs 31-33 above concerning portions of documents and communications reflecting a consultative relationship between Rosfinmonitoring and Treasury, release of the withheld information would reveal matters were part of an iterative consultative process with a foreign partner on a proposed investigative project which if disclosed, would foreseeably jeopardize the ability of Treasury to consult and collaborate with its

foreign counterparts on matters of mutual concern and aligned goals in the future by discouraging frank and open discussions on such collaborative efforts.  Effective collaboration depends on establishing underlying confidence in the other partner.  In the context of Treasury's exploratory efforts to obtain advice and information from Rosfinmonitoring in a proposed effort to jointly combat terrorist financing by a particular terrorist organization, strict confidentiality was essential to maintaining trust and confidence in the prospective partner.  Release of the information withheld would undermine the confidence of our foreign partners in Treasury's ability to maintain confidences in collaborative efforts and international cooperation more broadly and cause public confusion by revealing reasons and rationales that were not in fact the grounds for any actions.

44.     Given the aforementioned considerations, based on my review of the information at issue and my discussions with knowledgeable personnel, I have determined that there are reasonably foreseeable harms as to the disclosure of the predecisional and deliberative information, attorney-client information, attorney-work product information described above, as well as the information withheld under the consultant corollary doctrine described above.

## Segregability

45.     In processing these FOIA requests, Treasury carefully reviewed the responsive records on a line-by-line and page-by-page basis to identify reasonably segregable, non-exempt information to ensure that all such information was released.  Treasury determined that all information withheld either was exempt from disclosure pursuant to a FOIA exemption or was so intertwined with protected material that segregation was not possible without revealing the underlying protected material.  Treasury produced all the segregable, non-exempt information in the requested records, including the factual material that was presented in these records.

46.     I declare under penalty of perjury that the matters set forth in this Declaration are

true and correct.

Executed on March 29, 2023

_____
Ryan Law
Deputy Assistant Secretary
Office of Privacy, Transparency and Records
United States Department of the Treasury

# EXHIBIT A

 **goFOIA Manager** ▸ **Online FOIA Queue**: (no title)

| | |
|---|---|
| Title | |
| Online FOIA ID | 3e68877ed8b943c08fe9bcb6910e11dc |
| First Name | jason |
| Middle Initial | N/A |
| Last Name | leopold |
| Company Organization | Investigative Reporter BuzzFeed News |
| Phone Number | 2132704334 |
| Other Phone Number | 2132704334 |
| Fax Number | 2132704334 |
| Street Address Line1 | 1669 Benedict Canyon |
| Street Address Line2 | N/A |
| City | Beverly Hills |
| State | cA |
| Zip | 90210 |
| Country | United States |
| Email Address | jasonleopold@gmail.com |
| Delivery Method | Electronic Copy |
| Bureau | Departmental Offices (Headquarters) |
| Description | I request disclosure from the Department of the Treasury Office of Intelligence and Analysis the following records: |
| | Draft and final copies of the Office of Attorney General guidelines for the Office of Intelligence and Analysis. This search should cover the past three years. |
| | Reasonably Foreseeable Harm.  The FOIA Improvement Act of 2016 amended the FOIA as follows (5 USC 552(a)(8)): |
| | (A) An agency shall—<br>(i) withhold information under this section only if—<br>(I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or<br>(II) disclosure is prohibited by law; and<br>(ii) (I) consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and<br>(II) take reasonable steps necessary to segregate and release nonexempt information. . . . |
| | Treasury and its components should not fail to meet the requirements of Section 552(a)(8) when processing my request and release responsive records to me in full or at least in part. |
| Fee Category | Media/Press |
| Request Type | FOIA |
| Request Fee Waiver | 1 |
| Request Expedited Processing | 0 |
| Will Pay Up To | 0.00 |
| Enter Electronic Signature Code | 3e68877ed8b943c08fe9bcb6910e11dc |
| Full Name | N/A |
| Created Date | 5/23/2017 12:36:52 PM |
| UserRefCode | 3e68877ed8b943c08fe9bcb6910e11dc |
| Processed Status | 2017-05-275 site created on 5/23/2017 3:33:08 PM |
| Expedited Processing Justification | N/A |
| Expedited Request Date | N/A |
| Fee Waiver Justification | I am the senior investigative reporter for BuzzFeed News and formerly senior investigative reporter and on-air correspondent for VICE News. Additionally, my reporting has been published in The Guardian, The Wall Street Journal, The Financial Times, Salon, CBS Marketwatch, The Los Angeles Times, The Nation, Truthout, Al Jazeera English and Al Jazeera America. |
| | I request a complete waiver of all search and duplication fees. If my request for a waiver is denied, I request that I be considered a member of the news media for fee purposes. |
| Fee Waiver Request Date | 2017-05-23 12:36:51 |

Created at 5/23/2017 12:40 PM by SpAdmin
Last modified at 5/23/2017 3:33 PM by Greek, David

Close

# EXHIBIT B



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C.

May 25, 2017

RE:  2017-05-275

Mr. Jason Leopold
1669 Benedict Canyon
Beverly Hills, CA 90210
jasonleopold@gmail.com

Dear Mr. Leopold:

This letter acknowledges the receipt of your Freedom of Information Act (FOIA) request dated
May 23, 2017, submitted to the Department of the Treasury. You seek:

> Draft and final copies of the Office of Attorney General guidelines for the Office of
> Intelligence and Analysis. This search should cover the past three years.

We are ensuring your request addresses the minimum requirements as defined in 31 C.F.R. Part 1,
Subpart A.  Your request may require further submissions and/or justifications in order to be
processed.  A member of our FOIA team may contact you if needed.

If additional questions arise concerning your request, please contact the FOIA and Transparency
FOIA Requester Service Center via telephone at (202) 622-0930; or you may also email your
inquiry to TreasFOIA@treasury.gov.  When inquiring about your request, please reference
FOIA Request Number 2017-05-275.

Sincerely,

David Greek
Government Information Specialist
FOIA and Transparency

# EXHIBIT C



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C.

June 2, 2017

RE:  2017-05-288 (DO)
       2017-05-347 (FinCEN)

Mr. Jason Leopold
Investigative Reporter
Buzzfeed News
1669 Benedict Canyon
Beverly Hills, CA  90210

Email: jasonleopold@gmail.com

Dear Mr. Leopold:

This letter acknowledges your Freedom of Information Act (FOIA) request submitted to
Department of the Treasury, dated May 23, 2017.  You seek, disclosure from the Department of
the Treasury's Financial Crimes Enforcement Network (FinCEN), Office of Foreign Asset
Control, Office of Intelligence and Analysis, Office of Congressional Affairs, Office of Terrorist
Financing and Financial Crimes, Treasury Executive Office for Asset Forfeiture, the following
records:

1. Any and all emails Adam Szubin and Daniel Glaser exchanged, sent, received, mentioning
   or referring to Russia and the Office of Terrorist Financing and Financial Crimes (TFFC).
   Please be sure to us "TFFC" to locate responsive records.

2. Any and all emails mentioning or referring to TFFC and Russia sent, received by TFI
   official Jennifer Fowler, TFFC official, TFFC official Sarah Runge; Anna Morris; TFFC
   official Jamie Kraut. Any and all emails in which the above named officials are named in
   the body/text of any emails that mention or refer to TFFC and Russia.

In an email dated June 2, 2017, you provided a timeframe for the search, January 1, 2014, through
the date the search for responsive records is conducted.  You further stated that "Russia "is the
subject of the request.

Treasury's Departmental Offices (DO) has initiated a search for responsive records to your
request.  We will make every effort to provide you with a timely response.  Treasury DO uses a
multi-track system consisting of simple, complex, and expedited processing tracks to manage and
process requests on a first-in, first-out basis.  Simple requests are answered more quickly and more
complex requests generally require significant processing time. Your request is queue #573 in the
complex track for processing since consultations with other Treasury organizations or Federal
agencies are required or the search results may return a large volume of records to review and

determine if the records are responsive to your request. Due to these unusual circumstances, the FOIA allows an additional 10 days to process your request. Treasury DO updates it FOIA multi-tracks and queues weekly at https://www.treasury.gov/FOIA/Pages/reports_index2.aspx.

I have determined you are a representative of the news media (media). Media requesters are not charged fees associated with search or review and will obtain the first 100 pages of duplication of hard copy records free. Duplication of hard copy records below $25 are waived. Treasury will make every effort to transmit your final response via email or CD free of charge as well; therefore, your request for a fee waiver is granted.

Your request has also been assigned to the Office of Foreign Assets Control (OFAC). OFAC will contact you directly concerning your request. Your request may require further submissions and/or justifications in order to be processed.

When inquiring about your request within OFAC, please refer to identification number above and contact the OFAC FOIA Requester Service Center at 202-622-2500, option 3.

Your request has also been routed to the Financial Crimes Enforcement Network (FinCEN) as indicated in your FOIA request. Please refer to FOIA request 2017-05-347 when inquiring about your request within FinCEN, who will reply to you directly.

Further inquiries to FinCEN should be addressed to FinCEN at the address below:

> Financial Crimes Enforcement Network
> ATTN: FOIA Request
> P.O. Box 39
> Vienna, VA 22183

You may contact the FOIA Public Liaison, Ryan Law at any time for any questions you may have concerning your request via telephone at (202) 622-8098; or email at FOIAPublicLiaisonDepartmentalOffices@treasury.gov.

You may also wish to contact the Office of Government Information Services (OGIS), the Federal FOIA Ombudsman's office which offers mediation services to help resolve disputes between FOIA requesters and Federal agencies. The contact information for OGIS is:

> Office of Government Information Services
> National Archives and Records Administration
> 8601 Adelphi Road – OGIS
> College Park, MD 20740-6001
> ogis@nara.gov
> ogis.archives.gov
> (202) 741-5770
> (877) 684-6448

If additional questions arise concerning this action within DO, please contact Cawana Pearson via telephone at (202) 622-0930; or via email at TreasFOIA@treasury.gov.  Please reference FOIA request 2017-05-288 when inquiring about this request. Please be mindful that you may receive several final response letters from Departmental Offices in response to your FOIA request.

Sincerely,


Cawana Pearson
FOIA Case Manager, FOIA and Transparency

3

# EXHIBIT D

| From: | Jason Leopold |
|---|---|
| To: | Pearson, Cawana |
| Subject: | Re: 2017-05-288 Imperfect Acknowledgement Letter |
| Date: | Thursday, June 01, 2017 11:15:52 AM |

Great speaking with you Cawana. I would like my request processed as is with RUSSIA as the subject but with the following clarifications:

Any and all emails mentioning or referring to the realignment of the Office of Terrorism and Financial Intelligence (TFI). I specifically request that the official government email accounts of Daniel L. Glaser, a former Assistant Secretary, and Adam Szubin, the Under Secretary of the Treasury for Terrorism and Financial Intelligence (TFI), be searched in addition to the emails of all other FinCEN employees and officials in which the TFI realignment is the subject. To be clear, I am seeking all emails sent and received. **The time frame for this specific part of my request is January 1, 2014 through the date the search for responsive records is conducted.**

Any and all emails Adam Szubin and Daniel Glaser exchanged, sent, received, mentioning or referring to Russia and the Office of Terrorist Financing and Financial Crimes (TFFC). Please be sure to us "TFFC" to locate responsive records. The time frame for this specific part of my request is January 1, 2014 through the date the search for responsive records is conducted.

Any and all emails mentioning or referring to TFFC and Russia sent, received by TFI official Jennifer Fowler, TFFC official, TFFC official Sarah Runge; Anna Morris; TFFC official Jamie Kraut. **The time frame for this specific part of my request is January 1, 2014 through the date the search for responsive records is conducted.**

Any and all emails in which the above named officials are named in the body/text of any emails that mention or refer to TFFC and Russia. **The time frame for this specific part of my request is January 1, 2014 through the date the search for responsive records is conducted.**

On Wed, May 31, 2017 at 1:07 PM, Jason Leopold <jasonleopold@gmail.com> wrote:
Thank you, Cawana. I'm on the west coast. If 8 am pacific time works that would be great or anytime thereafter. My phone number is 213 270 4334.

All best,
Jason

On Wed, May 31, 2017 at 1:05 PM, <Cawana.Pearson@treasury.gov> wrote:

Good afternoon Mr. Leopold,

I will be happy to speak with you regarding your request. Please provide me with a phone to reach you on tomorrow; how early can I call you.  Attached is a copy of your FOIA request; I do not see a timeframe as you've indicated in your email below.

I look forward to speaking with you.


Have  a great evening.


**From:** Jason Leopold [mailto:jasonleopold@gmail.com]
**Sent:** Wednesday, May 31, 2017 2:52 PM
**To:** Pearson, Cawana
**Subject:** Re: 2017-05-288 Imperfect Acknowledgement Letter


Cawanda,

Please call me to discuss this. I clearly described the records I am seeking and am confident my request, as written, would stand up in a court of law. Additionally, my initial request included the timeframe.


Best,
Jason


On Wed, May 31, 2017 at 11:10 AM, Jason Leopold <jasonleopold@gmail.com> wrote:

Cawana,

I just tried calling you on the number listed in your letter and I receive an automated message. I am unclear as to whether you are writing to me specifically about Treasury IG or if this letter is on behalf of all of the components. Please advise.


Best,
Jason


On Wed, May 31, 2017 at 11:01 AM, <Cawana.Pearson@treasury.gov> wrote:

# Good afternoon,


# Attached is Treasury's imperfect letter in response to your

recently submitted FOIA request. Please refer to the information provided in the letter when providing additional information concerning your request.


Thank you,


Cawana


--



**Jason Leopold** | **BuzzFeed News** | Senior Investigative Reporter | (213) 270-4334 |
@JasonLeopold | 6824 Lexington Avenue, Los Angeles, CA 90038

**Send me documents and tips, anonymously and securely**:
contact.buzzfeed.com

My personal PGP


--



**Jason Leopold** | **BuzzFeed News** | Senior Investigative Reporter | (213) 270-4334 |
@JasonLeopold | 6824 Lexington Avenue, Los Angeles, CA 90038

**Send me documents and tips, anonymously and securely**:
contact.buzzfeed.com

[My personal PGP](#)

--



**Jason Leopold** | **BuzzFeed News** | Senior Investigative Reporter | [(213) 270-4334](#) | @JasonLeopold |
6824 Lexington Avenue, Los Angeles, CA 90038
**Send me documents and tips, anonymously and securely**:
[contact.buzzfeed.com](#)
[My personal PGP](#)

--



**Jason Leopold** | **BuzzFeed News** | Senior Investigative Reporter | (213) 270-4334 | @JasonLeopold |
6824 Lexington Avenue, Los Angeles, CA 90038
**Send me documents and tips, anonymously and securely**: [contact.buzzfeed.com](#)
[My personal PGP](#)

# EXHIBIT E

 **goFOIA Manager ▸ Online FOIA Queue**: (no title)

| Title | |
|---|---|
| Online FOIA ID | 67ebe4aec897461299f234da62220780 |
| First Name | jason |
| Middle Initial | N/A |
| Last Name | leopold |
| Company Organization | Investigative Reporter BuzzFeed News |
| Phone Number | 2132704334 |
| Other Phone Number | 2132704334 |
| Fax Number | 2132704334 |
| Street Address Line1 | 1669 Benedict Canyon |
| Street Address Line2 | N/A |
| City | Beverly Hills |
| State | cA |
| Zip | 90210 |
| Country | United States |
| Email Address | jasonleopold@gmail.com |
| Delivery Method | Electronic Copy |
| Bureau | Departmental Offices (Headquarters) |
| Description | I request disclosure from the Department of the Treasury's Financial Crimes Enforcement Network (FinCEN), Office of Foreign Asset Control, Office of Intelligence and Analysis, Office of Congressional Affairs, Office of Terrorist Financing and Financial Crimes, Treasury Executive Office for Asset Forfeiture, the following records:<br><br>1. Any and all documents, which includes but is not limited to emails, memos, congressional correspondence, internal studies, letters, mentioning or referring to the realignment of the Office of Terrorism and Financial Intelligence (TFI).<br>2. I specifically request that during the search for responsive records the official government email accounts of Daniel L. Glaser, a former Assistant Secretary, and Adam Szubin, the Under Secretary of the Treasury for Terrorism and Financial Intelligence (TFI), be searched in addition to the emails of all other FinCEN employees and officials in which the TFI realignment is the subject and discussed in the body of the email. To be clear, I am seeking all records sent and received. The time frame for this specific part of my request is January 1, 2014 through the date the search for responsive records is conducted. |
| Fee Category | Media/Press |
| Request Type | FOIA |
| Request Fee Waiver | 1 |
| Request Expedited Processing | 0 |
| Will Pay Up To | 0.00 |
| Enter Electronic Signature Code | 67ebe4aec897461299f234da62220780 |
| Full Name | N/A |
| Created Date | 5/23/2017 12:23:52 PM |
| UserRefCode | 67ebe4aec897461299f234da62220780 |
| Processed Status | 2017-05-273 site created on 5/23/2017 3:28:35 PM |
| Expedited Processing Justification | N/A |
| Expedited Request Date | N/A |
| Fee Waiver Justification | Reasonably Foreseeable Harm.  The FOIA Improvement Act of 2016 amended the FOIA as follows (5 USC 552(a)(8)):<br><br>(A) An agency shall—<br>(i) withhold information under this section only if—<br>(I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or<br>(II) disclosure is prohibited by law; and<br>(ii) (I) consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and<br>(II) take reasonable steps necessary to segregate and release nonexempt information. . . .<br><br>FEE CATEGORY AND REQUEST FOR A FEE WAIVER<br><br>I am the senior investigative reporter for BuzzFeed News and formerly senior investigative reporter and on-air correspondent for VICE News. Additionally, my reporting has been published in The Guardian, The Wall Street Journal, The Financial Times, Salon, CBS Marketwatch, The Los Angeles Times, The Nation, Truthout, Al Jazeera English and Al Jazeera America.<br><br>I request a complete waiver of all search and duplication fees. If my request for a waiver is denied, I request that I be considered a member of the news media for fee purposes.<br><br>If I am not granted a complete fee waiver, I request to be considered a member of the news media for fee purposes. I am willing to pay all reasonable duplication expenses incurred in processing this FOIA request.<br><br>I will appeal any denial of my request for a waiver administratively and to the courts if necessary. |
| Fee Waiver Request Date | 2017-05-23 12:23:43 |

# EXHIBIT F



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C.

May 31, 2017

RE:  2017-05-273 (DO)
      2017-05-317 (FinCEN)

Mr. Jason Leopold
Investigative Reporter
Buzzfeed News
1669 Benedict Canyon
Beverly Hills, CA  90210

Email: jasonleopold@gmail.com

Dear Mr. Leopold:

This letter acknowledges your Freedom of Information Act (FOIA) request submitted to
Department of the Treasury, dated May 23, 2017.  You seek, "Disclosure from the Department of
the Treasury's Financial Crimes Enforcement Network (FinCEN), Office of Foreign Asset
Control, Office of Intelligence and Analysis, Office of Congressional Affairs, Office of Terrorist
Financing and Financial Crimes, Treasury Executive Office for Asset Forfeiture, the following
records:

  1.  Any and all documents, which includes but is not limited to emails, memos,
      congressional correspondence, internal studies, letters, mentioning or referring to the
      realignment of the Office of Terrorism and Financial Intelligence (TFI).

  2.  I specifically request that during the search for responsive records the official
      government email accounts of Daniel L. Glaser, a former Assistant Secretary, and
      Adam Szubin, the Under Secretary of the Treasury for Terrorism and Financial
      Intelligence (TFI), be searched in addition to the emails of all other FinCEN employees
      and officials in which the TFI realignment is the subject and discussed in the body of
      the email. To be clear, I am seeking all records sent and received. The time frame for
      this specific part of my request is January 1, 2014 through the date the search for
      responsive records is conducted".

Treasury's Departmental Offices (DO) has initiated a search for responsive records to your
request.  We will make every effort to provide you with a timely response.  Treasury DO uses a
multi-track system consisting of simple, complex, and expedited processing tracks to manage and
process requests on a first-in, first-out basis.  Simple requests are answered more quickly and more
complex requests generally require significant processing time. Your request is queue #570 in the
complex track for processing since consultations with other Treasury organizations or Federal
agencies are required or the search results may return a large volume of records to review and

determine if the records are responsive to your request.  Due to these unusual circumstances, the FOIA allows an additional 10 days to process your request.  Treasury DO updates it FOIA multi-tracks and queues weekly at https://www.treasury.gov/FOIA/Pages/reports_index2.aspx.

I have determined you are a representative of the news media (media).  Media requesters are not charged fees associated with search or review and will obtain the first 100 pages of duplication of hard copy records free.  Duplication of hard copy records below $25 are waived.  Treasury will make every effort to transmit your final response via email or CD free of charge as well; therefore, your request for a fee waiver is granted.

Your request has also been assigned to the Office of Foreign Assets Control (OFAC).  OFAC will contact you directly concerning your request.  Your request may require further submissions and/or justifications in order to be processed.

When inquiring about your request within OFAC, please refer to identification number above and contact the OFAC FOIA Requester Service Center at 202-622-2500, option 3.

Your request has also been routed to the Financial Crimes Enforcement Network (FinCEN) as indicated in your FOIA request.  Please refer to FOIA request 2017-05-317 when inquiring about your request within FinCEN, who will reply to you directly.

Further inquiries to FinCEN should be addressed to FinCEN at the address below:

> Financial Crimes Enforcement Network
> ATTN:  FOIA Request
> P.O. Box 39
> Vienna, VA  22183

You may contact the FOIA Public Liaison, Ryan Law at any time for any questions you may have concerning your request via telephone at (202) 622-8098; or email at FOIAPublicLiaisonDepartmentalOffices@treasury.gov.

You may also wish to contact the Office of Government Information Services (OGIS), the Federal FOIA Ombudsman's office which offers mediation services to help resolve disputes between FOIA requesters and Federal agencies.  The contact information for OGIS is:

> Office of Government Information Services
> National Archives and Records Administration
> 8601 Adelphi Road – OGIS
> College Park, MD 20740-6001
> ogis@nara.gov
> ogis.archives.gov
> (202) 741-5770
> (877) 684-6448

If additional questions arise concerning this action within DO, please contact Cawana Pearson via telephone at (202) 622-0930; or via email at TreasFOIA@treasury.gov.  Please reference FOIA request 2017-05-273 when inquiring about this request. Please be mindful that you may receive several final response letters from Departmental Offices in response to your FOIA request.

Sincerely,


Cawana Pearson
FOIA Case Manager, FOIA and Transparency

# EXHIBIT G

| | |
|---|---|
| **From:** | Taaffe, Damon (USADC) |
| **To:** | Townsend, Brian; Perel, Logan; Thiessen, Jacob |
| **Subject:** | FW: Leopold v. Treasury (17-cv-1524) - scope |
| **Date:** | Friday, September 15, 2017 3:44:45 PM |

Brian & Co.,

See plaintiff's response below. Please let me know your thoughts.

**From:** Matt Topic [mailto:matt@loevy.com]

**Sent:** Friday, September 15, 2017 2:37 PM

**To:** Taaffe, Damon (USADC) <DTAAFFE@usa.doj.gov>

**Subject:** Leopold v. Treasury (17-cv-1524) - scope

Hi Damon.

For the requests in paragraph 8, we can limit the scope to (1) Russia and Rosfinmonitoring, and (2) Russia and SARS (suspicious activity reports). We can limit the time period to Aug 2016 – June 2017. We can limit emails to (1) the six people specifically mentioned and are within our more limited scope, and (2) the emails of anyone in FinCEN, OFAC, TFI, TFFC, general counsel, and Inspector General <u>and</u> that contain the names of one of the six specific emails as a search term and that are within the limited scope we've identified. I hope that makes sense, and if not, let me know.

For the requests that you said Treasury did not receive, we aren't sure what happened, but you may exclude them, although we will be making a new request for those shortly.

Please let me know if this is acceptable.

Matt

--

Matthew Topic

**Loevy & Loevy**

311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312-789-4973 (direct)
773-368-8812 (cell)
matt@loevy.com
www.loevy.com/attorneys/matthew-v-topic
@mvtopic
Linked In Profile
*Encrypted communications available.*

The sender of this email is an attorney. The information contained in this communication is confidential, may be attorney-client privileged, may be attorney work product, and is intended only for the use of the addressee. It is the property of the sender. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify me immediately by return e-mail, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT H

| | |
|---|---|
| **From:** | FOIA@treasury.gov |
| **To:** | Gurkin, Danielle |
| **Subject:** | FOIA Auto-Reply |
| **Date:** | Friday, August 24, 2018 12:29:30 PM |

---



The U.S. Department of the Treasury has received the information you submitted to the FOIA@TREASURY.gov  mailbox.

If you are submitting a FOIA request, this courtesy reply does not replace the acknowledgement letter which will include a FOIA case number once your request has been entered into our FOIA Request Tracking System.

If you are seeking the status of a pending FOIA request for which you have a FOIA case number, please call (202) 622-0930 to obtain the status of your request.

Please visit our FOIA Library at http://www.treasury.gov/FOIA/Pages/reading_room.aspx.

Thank you for contacting the U.S. Department of the Treasury.

**From:**      Townsend, Brian
**To:**        Townsend, Brian
**Subject:**   RE: Referral of Records- Leopold-17-1524
**Date:**      Tuesday, March 28, 2023 8:46:00 AM

---

**From:** Gurkin, Danielle
**Sent:** Friday, August 24, 2018 12:38 PM
**To:** Dar, Mahala <MDar@osc.gov>
**Subject:** RE: Referral of Records- FO-17-0071

Done- and I got an email confirming it was delivered. ☺

---

**From:** Dar, Mahala
**Sent:** Friday, August 24, 2018 12:37 PM
**To:** Gurkin, Danielle <dgurkin@osc.gov>
**Subject:** RE: Referral of Records- FO-17-0071

Ok, please send it via Outlook and check the box for delivery receipt.

---

**From:** Gurkin, Danielle
**Sent:** Friday, August 24, 2018 12:20 PM
**To:** Dar, Mahala <MDar@osc.gov>
**Subject:** RE: Referral of Records- FO-17-0071

Hi Mahala,
I am going to have to send this via Outlook because I am not getting a copy of the email when I bcc myself and send it through FX.
I think the problem may be that my email address shows up in a prefilled box as danielleg@osc.gov instead of dgurkin@osc.gov. I try to change it manually but when I go back to look at the email that was sent, in the "From" box it still shows the wrong email address. Maybe that is why it is not being sent out properly.

Danielle

---

**From:** Dar, Mahala
**Sent:** Friday, August 24, 2018 11:29 AM
**To:** Gurkin, Danielle <dgurkin@osc.gov>
**Subject:** RE: Referral of Records- FO-17-0071

Hi Danielle,

Yes, you should have access to that request in FX and please resubmit the referral. When you send it, please bcc yourself and check the delivery receipt box to ensure that it was transmitted via FX. If you do not get a copy of the email or a delivery receipt in your inbox, then please send it via Outlook (with a delivery and read

receipt).

Feel free to let me know if you have any additional questions.

Thank you,
Mahala

---

**From:** Gurkin, Danielle
**Sent:** Friday, August 24, 2018 11:20 AM
**To:** Dar, Mahala <MDar@osc.gov>
**Subject:** FW: Referral of Records- FO-17-0071

Hi Mahala,
As you can see from the correspondence below, unfortunately Treasury cannot locate the referral for the Leopold matter (FO-17-0071) and has asked me to resend it. I don't have the case assigned to me in my queue anymore. I believe the last person assigned to this case was Amy (who did the final review since it is in litigation). How would you like me to handle this? Do you want to reassign me the case so that I can do the referral again?

Thanks,
Danielle

---

**From:** FOIA@treasury.gov <FOIA@treasury.gov>
**Sent:** Friday, August 24, 2018 11:10 AM
**To:** Gurkin, Danielle <dgurkin@osc.gov>; FOIA@treasury.gov
**Subject:** RE: Referral of Records- FO-17-0071

Danielle,

I am unable to locate the referral for FOIA Request number FO-17-0071. Would you please resend this information to FOIA@Treasury.gov or mail to Treasury FOIA Office.

Best Regards,

*Kathy Reid*

FOIA Analyst, FOIA and Transparency
Department of the Treasury

---

**From:** Gurkin, Danielle <dgurkin@osc.gov>
**Sent:** Wednesday, August 22, 2018 1:54 PM
**To:** FOIA <FOIA@treasury.gov>
**Subject:** Referral of Records- FO-17-0071

Hello,

My name is Danielle Gurkin and I am part of the FOIA Team at OSC. A few weeks ago (on July 27, 2018), OSC referred 804 pages to Treasury as part of FOIA Request Number FO-17-0071 (Leopold). I would like to confirm that you received the referred records.

Please respond to me at this email address to confirm that you received the referred records from OSC. If you have any questions, please feel free to email me at this address.

Thank you in advance for your cooperation and attention to this matter.

Sincerely,
Danielle Gurkin
FOIA Team
Office of the Clerk
Office of the Special Counsel
dgurkin@osc.gov

# EXHIBIT I

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| UST_000001 through UST_000031 | Page 31-page draft Treasury Attorney General Guidelines (dated 2/10/16) | (b)(5) AC (b)(5) DP | Redacted in full – Redacted date, title and substance of this nonfinal version of draft guidelines outlining the Treasury Department's proposed procedures for the conduct of intelligence activities, including draft descriptions of the purpose of the guidelines and mission and responsibilities of the Office of Intelligence and Analysis.<br><br>EXEMPTION 5 (privileged attorney-client communications) is asserted to the title and substance of this nonfinal version of the draft guidelines identifying specific matters for which legal advice is sought, including proposed organizational objectives, roles, functions and responsibilities; a notional framework, governing principals, procedures, threshold requirements, and defined terminology; and selected contextual information deemed relevant to the request for legal advice.  This version of the guidelines also reveals nonfinal legal analysis, questions, commentary and opinions concerning the guidelines as a whole, as well as discrete elements of the guidelines under consideration at the moment.  This version of the draft guidelines is part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature of matters encompassed by the privilege and would impair the ability of Treasury employees to fully inform their counsel when |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency.<br><br>EXEMPTION 5 (deliberative process) is asserted to the title and substance of this nonfinal version of the draft guidelines containing notional design elements under consideration, including draft descriptions of proposed organizational objectives, roles, functions and responsibilities; guidelines framework, governing principals, procedures, threshold requirements; and defined terminology and selected contextual information deemed relevant to the design and function of the guidelines. These matters are, in whole and in part, part of an ongoing inter-agency pre-decisional and deliberative process by senior officials to design governing framework, procedures, and process for the conduct of intelligence activities by the Treasury Department. This nonfinal version of the draft guidelines was circulated to obtain critique and recommendations on proposed design under consideration at the time and, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| UST_000032 through UST_000063 | Page 31-page draft Treasury Attorney General Guidelines (dated 3/21/16) | (b)(5) AC (b)(5) DP | SAME  DESCRIPTION<br><br>Redacted in full – Redacted date, title and substance of this nonfinal version of draft guidelines outlining the Treasury Department's proposed procedures for the conduct of intelligence activities, including draft descriptions of the purpose of the guidelines and mission and responsibilities of the Office of Intelligence and Analysis.<br><br>EXEMPTION 5 (privileged attorney-client communications) is asserted to the title and substance of this nonfinal version of the draft guidelines identifying specific matters for which legal advice is sought, including proposed organizational objectives, roles, functions and responsibilities; a notional framework, governing principals, procedures, threshold requirements, and defined terminology; and selected contextual information deemed relevant to the request for legal advice.  This version of the guidelines also reveals nonfinal legal analysis, questions, commentary and opinions concerning the guidelines as a whole, as well as discrete elements of the guidelines under consideration at the moment.  This version of the draft guidelines is part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature of matters encompassed by the privilege |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | and would impair the ability of Treasury employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency.<br><br>EXEMPTION 5 (deliberative process) is asserted to the title and substance of this nonfinal version of the draft guidelines containing notional design elements under consideration, including draft descriptions of proposed organizational objectives, roles, functions and responsibilities; guidelines framework, governing principals, procedures, threshold requirements; and defined terminology and selected contextual information deemed relevant to the design and function of the guidelines. These matters are, in whole and in part, part of an ongoing inter-agency pre-decisional and deliberative process by senior officials to design governing framework, procedures, and process for the conduct of intelligence activities by the Treasury Department. This nonfinal version of the draft guidelines was circulated to obtain critique and recommendations on proposed design under consideration at the time and, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| UST_000063 through UST_000095 | Page 31-page draft Treasury Attorney General Guidelines (dated 3/21/16) | (b)(5) AC (b)(5) DP | SAME DESCRIPTION

Redacted in full – Redacted date, title and substance of this nonfinal version of draft guidelines outlining the Treasury Department's proposed procedures for the conduct of intelligence activities, including draft descriptions of the purpose of the guidelines and mission and responsibilities of the Office of Intelligence and Analysis.

EXEMPTION 5 (privileged attorney-client communications) is asserted to the title and substance of this nonfinal version of the draft guidelines identifying specific matters for which legal advice is sought, including proposed organizational objectives, roles, functions and responsibilities; a notional framework, governing principals, procedures, threshold requirements, and defined terminology; and selected contextual information deemed relevant to the request for legal advice. This version of the guidelines also reveals nonfinal legal analysis, questions, commentary and opinions concerning the guidelines as a whole, as well as discrete elements of the guidelines under consideration at the moment. This version of the draft guidelines is part of a privileged attorney-client communication |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | which, if disclosed, would reveal the subject and nature of matters encompassed by the privilege and would impair the ability of Treasury employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency.<br><br>EXEMPTION 5 (deliberative process) is asserted to the title and substance of this nonfinal version of the draft guidelines containing notional design elements under consideration, including draft descriptions of proposed organizational objectives, roles, functions and responsibilities; guidelines framework, governing principals, procedures, threshold requirements; and defined terminology and selected contextual information deemed relevant to the design and function of the guidelines. These matters are, in whole and in part, part of an ongoing inter-agency pre-decisional and deliberative process by senior officials to design governing framework, procedures, and process for the conduct of intelligence activities by the Treasury Department. This nonfinal version of the draft guidelines was circulated to obtain critique and recommendations on proposed design under consideration at the time and, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| UST_000096 through UST_000127 | Page 32-page draft Treasury Attorney General Guidelines (dated 3/21/16) | (b)(5) AC (b)(5) DP | SAME  DESCRIPTION

Redacted in full – Redacted date, title and substance of this nonfinal version of draft guidelines outlining the Treasury Department's proposed procedures for the conduct of intelligence activities, including draft descriptions of the purpose of the guidelines and mission and responsibilities of the Office of Intelligence and Analysis.

EXEMPTION 5 (privileged attorney-client communications) is asserted to the title and substance of this nonfinal version of the draft guidelines identifying specific matters for which legal advice is sought, including proposed organizational objectives, roles, functions and responsibilities; a notional framework, governing principals, procedures, threshold requirements, and defined terminology; and selected contextual information deemed relevant to the request for legal advice.  This version of the guidelines also reveals nonfinal legal analysis, questions, commentary and opinions concerning the guidelines as a whole, as well as discrete elements of the guidelines under consideration at the |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 58 of 359

AG GUIDELINES Vaughn Index                    Leopold et al v Treasury 17-cv-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | moment.  This version of the draft guidelines is part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature of matters encompassed by the privilege and would impair the ability of Treasury employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency.<br><br>EXEMPTION 5 (deliberative process) is asserted to the title  and substance of this nonfinal version of the draft guidelines containing notional design elements under consideration, including draft descriptions of proposed organizational objectives, roles, functions and responsibilities; guidelines framework, governing principals, procedures, threshold requirements; and defined terminology and selected contextual information deemed relevant to the design and function of the guidelines.  These matters are, in whole and in part, part of an ongoing inter-agency pre-decisional and deliberative process by senior officials to design governing framework, procedures, and process for the conduct of intelligence activities by the Treasury Department. This nonfinal version of the draft guidelines was circulated to obtain critique and recommendations on proposed design under consideration at the time and, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
|  |  |  | making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| UST_000128 through UST_000159 | Page 32-page draft Treasury Attorney General Guidelines (dated 6/16/16) | (b)(5) AC (b)(5) DP | SAME  DESCRIPTION<br><br>Redacted in full – Redacted date, title and substance of this nonfinal version of draft guidelines outlining the Treasury Department's proposed procedures for the conduct of intelligence activities, including draft descriptions of the purpose of the guidelines and mission and responsibilities of the Office of Intelligence and Analysis.<br><br>EXEMPTION 5 (privileged attorney-client communications) is asserted to the title and substance of this nonfinal version of the draft guidelines identifying specific matters for which legal advice is sought, including proposed organizational objectives, roles, functions and responsibilities; a notional framework, governing principals, procedures, threshold requirements, and defined terminology; and selected contextual information deemed relevant to the request for legal advice.  This version of the guidelines also reveals nonfinal legal analysis, questions, commentary and opinions concerning the |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
|       |                              |                        | guidelines as a whole, as well as discrete elements of the guidelines under consideration at the moment.  This version of the draft guidelines is part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature of matters encompassed by the privilege and would impair the ability of Treasury employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency.<br><br>EXEMPTION 5 (deliberative process) is asserted to the title and substance of this nonfinal version of the draft guidelines containing notional design elements under consideration, including draft descriptions of proposed organizational objectives, roles, functions and responsibilities; guidelines framework, governing principals, procedures, threshold requirements; and defined terminology and selected contextual information deemed relevant to the design and function of the guidelines.  These matters are, in whole and in part, part of an ongoing inter-agency pre-decisional and deliberative process by senior officials to design governing framework, procedures, and process for the conduct of intelligence activities by the Treasury Department. This nonfinal version of the draft guidelines was circulated to obtain critique and recommendations on proposed design under consideration at the time |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | and, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| UST_000160 through UST_000191 | Page 32-page draft Treasury Attorney General Guidelines (dated 7/6/16) | (b)(5) AC (b)(5) DP | SAME  DESCRIPTION<br><br>Redacted in full – Redacted date, title and substance of this nonfinal version of draft guidelines outlining the Treasury Department's proposed procedures for the conduct of intelligence activities, including draft descriptions of the purpose of the guidelines and mission and responsibilities of the Office of Intelligence and Analysis.<br><br>EXEMPTION 5 (privileged attorney-client communications) is asserted to the title and substance of this nonfinal version of the draft guidelines identifying specific matters for which legal advice is sought, including proposed organizational objectives, roles, functions and responsibilities; a notional framework, governing principals, procedures, threshold requirements, and defined terminology; and selected contextual information deemed relevant to the request for legal advice.  This version of the guidelines also |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 62 of 359

AG GUIDELINES Vaughn Index                          Leopold et al v Treasury 17-cv-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | reveals nonfinal legal analysis, questions, commentary and opinions concerning the guidelines as a whole, as well as discrete elements of the guidelines under consideration at the moment.  This version of the draft guidelines is part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature of matters encompassed by the privilege and would impair the ability of Treasury employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency.<br><br>EXEMPTION 5 (deliberative process) is asserted to the title  and substance of this nonfinal version of the draft guidelines containing notional design elements under consideration, including draft descriptions of proposed organizational objectives, roles, functions and responsibilities; guidelines framework, governing principals, procedures, threshold requirements; and defined terminology and selected contextual information deemed relevant to the design and function of the guidelines.  These matters are, in whole and in part, part of an ongoing inter-agency pre-decisional and deliberative process by senior officials to design governing framework, procedures, and process for the conduct of intelligence activities by the Treasury Department.  This nonfinal version of the draft guidelines was |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | circulated to obtain critique and recommendations on proposed design under consideration at the time and, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| UST_000192 through UST_000223 | Page 32-page draft Treasury Attorney General Guidelines (dated 7/6/16) | (b)(5) AC (b)(5) DP | SAME  DESCRIPTION<br><br>Redacted in full – Redacted date, title and substance of this nonfinal version of draft guidelines outlining the Treasury Department's proposed procedures for the conduct of intelligence activities, including draft descriptions of the purpose of the guidelines and mission and responsibilities of the Office of Intelligence and Analysis.<br><br>EXEMPTION 5 (privileged attorney-client communications) is asserted to the title and substance of this nonfinal version of the draft guidelines identifying specific matters for which legal advice is sought, including proposed organizational objectives, roles, functions and responsibilities; a notional framework, governing principals, procedures, threshold requirements, and defined terminology; and selected contextual |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 64 of 359

AG GUIDELINES Vaughn Index                    Leopold et al v Treasury 17-cv-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | information deemed relevant to the request for legal advice. This version of the guidelines also reveals nonfinal legal analysis, questions, commentary and opinions concerning the guidelines as a whole, as well as discrete elements of the guidelines under consideration at the moment. This version of the draft guidelines is part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature of matters encompassed by the privilege and would impair the ability of Treasury employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency.<br><br>EXEMPTION 5 (deliberative process) is asserted to the title and substance of this nonfinal version of the draft guidelines containing notional design elements under consideration, including draft descriptions of proposed organizational objectives, roles, functions and responsibilities; guidelines framework, governing principals, procedures, threshold requirements; and defined terminology and selected contextual information deemed relevant to the design and function of the guidelines. These matters are, in whole and in part, part of an ongoing inter-agency pre-decisional and deliberative process by senior officials to design governing framework, procedures, and process for the conduct of |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | intelligence activities by the Treasury Department. This nonfinal version of the draft guidelines was circulated to obtain critique and recommendations on proposed design under consideration at the time and, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| UST_000224 through UST_000255 | Page 32-page draft Treasury Attorney General Guidelines (dated 7/6/16) | (b)(5) AC (b)(5) DP | SAME  DESCRIPTION<br><br>Redacted in full – Redacted date, title and substance of this nonfinal version of draft guidelines outlining the Treasury Department's proposed procedures for the conduct of intelligence activities, including draft descriptions of the purpose of the guidelines and mission and responsibilities of the Office of Intelligence and Analysis.<br><br>EXEMPTION 5 (privileged attorney-client communications) is asserted to the title and substance of this nonfinal version of the draft guidelines identifying specific matters for which legal advice is sought, including proposed organizational objectives, roles, functions and responsibilities; a notional framework, governing |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|-----------------------------|-----------------------|------------------------------------------------------|
|       |                             |                       | principals, procedures, threshold requirements, and defined terminology; and selected contextual information deemed relevant to the request for legal advice.  This version of the guidelines also reveals nonfinal legal analysis, questions, commentary and opinions concerning the guidelines as a whole, as well as discrete elements of the guidelines under consideration at the moment.  This version of the draft guidelines is part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature of matters encompassed by the privilege and would impair the ability of Treasury employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency.<br><br>EXEMPTION 5 (deliberative process) is asserted to the title  and substance of this nonfinal version of the draft guidelines containing notional design elements under consideration, including draft descriptions of proposed organizational objectives, roles, functions and responsibilities; guidelines framework, governing principals, procedures, threshold requirements; and defined terminology and selected contextual information deemed relevant to the design and function of the guidelines.  These matters are, in whole and in part, part of an ongoing inter-agency pre-decisional and deliberative process by senior |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 67 of 359

AG GUIDELINES Vaughn Index                    Leopold et al v Treasury 17-cv-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | officials to design governing framework, procedures, and process for the conduct of intelligence activities by the Treasury Department. This nonfinal version of the draft guidelines was circulated to obtain critique and recommendations on proposed design under consideration at the time and, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| UST_000256 through UST_000287 | Page 32-page draft Treasury Attorney General Guidelines (dated 7/6/16) | (b)(5) AC (b)(5) DP | SAME  DESCRIPTION

Redacted in full – Redacted date, title and substance of this nonfinal version of draft guidelines outlining the Treasury Department's proposed procedures for the conduct of intelligence activities, including draft descriptions of the purpose of the guidelines and mission and responsibilities of the Office of Intelligence and Analysis.

EXEMPTION 5 (privileged attorney-client communications) is asserted to the title and substance of this nonfinal version of the draft guidelines identifying specific matters for which legal advice is sought, including proposed |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 68 of 359

AG GUIDELINES Vaughn Index                    Leopold et al v Treasury 17-cv-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|----------------------------|----------------------|------------------------------------------------------|
|       |                            |                      | organizational objectives, roles, functions and responsibilities; a notional framework, governing principals, procedures, threshold requirements, and defined terminology; and selected contextual information deemed relevant to the request for legal advice.  This version of the guidelines also reveals nonfinal legal analysis, questions, commentary and opinions concerning the guidelines as a whole, as well as discrete elements of the guidelines under consideration at the moment.  This version of the draft guidelines is part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature of matters encompassed by the privilege and would impair the ability of Treasury employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency.

EXEMPTION 5 (deliberative process) is asserted to the title  and substance of this nonfinal version of the draft guidelines containing notional design elements under consideration, including draft descriptions of proposed organizational objectives, roles, functions and responsibilities; guidelines framework, governing principals, procedures, threshold requirements; and defined terminology and selected contextual information deemed relevant to the design and function of the guidelines.  These matters are, in whole and in |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | part, part of an ongoing inter-agency pre-decisional and deliberative process by senior officials to design governing framework, procedures, and process for the conduct of intelligence activities by the Treasury Department. This nonfinal version of the draft guidelines was circulated to obtain critique and recommendations on proposed design under consideration at the time and, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| UST_000288 through UST_000319 | Page 32-page draft Treasury Attorney General Guidelines (dated 7/6/16) | (b)(5) AC (b)(5) DP | SAME  DESCRIPTION<br><br>Redacted in full – Redacted date, title and substance of this nonfinal version of draft guidelines outlining the Treasury Department's proposed procedures for the conduct of intelligence activities, including draft descriptions of the purpose of the guidelines and mission and responsibilities of the Office of Intelligence and Analysis.<br><br>EXEMPTION 5 (privileged attorney-client communications) is asserted to the title and substance of this nonfinal version of the draft |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | guidelines identifying specific matters for which legal advice is sought, including proposed organizational objectives, roles, functions and responsibilities; a notional framework, governing principals, procedures, threshold requirements, and defined terminology; and selected contextual information deemed relevant to the request for legal advice.  This version of the guidelines also reveals nonfinal legal analysis, questions, commentary and opinions concerning the guidelines as a whole, as well as discrete elements of the guidelines under consideration at the moment.  This version of the draft guidelines is part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature of matters encompassed by the privilege and would impair the ability of Treasury employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency.<br><br>EXEMPTION 5 (deliberative process) is asserted to the title  and substance of this nonfinal version of the draft guidelines containing notional design elements under consideration, including draft descriptions of proposed organizational objectives, roles, functions and responsibilities; guidelines framework, governing principals, procedures, threshold requirements; and defined terminology and selected contextual information deemed |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | relevant to the design and function of the guidelines.  These matters are, in whole and in part, part of an ongoing inter-agency pre-decisional and deliberative process by senior officials to design governing framework, procedures, and process for the conduct of intelligence activities by the Treasury Department. This nonfinal version of the draft guidelines was circulated to obtain critique and recommendations on proposed design under consideration at the time and, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| UST_000320 through UST_000351 | Page 32-page draft Treasury Attorney General Guidelines (dated 11/3/16) | (b)(5) AC (b)(5) DP | SAME  DESCRIPTION<br><br>Redacted in full – Redacted date, title and substance of this nonfinal version of draft guidelines outlining the Treasury Department's proposed procedures for the conduct of intelligence activities, including draft descriptions of the purpose of the guidelines and mission and responsibilities of the Office of Intelligence and Analysis. |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 72 of 359

AG GUIDELINES Vaughn Index                    Leopold et al v Treasury 17-cv-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | EXEMPTION 5 (privileged attorney-client communications) is asserted to the title and substance of this nonfinal version of the draft guidelines identifying specific matters for which legal advice is sought, including proposed organizational objectives, roles, functions and responsibilities; a notional framework, governing principals, procedures, threshold requirements, and defined terminology; and selected contextual information deemed relevant to the request for legal advice.  This version of the guidelines also reveals nonfinal legal analysis, questions, commentary and opinions concerning the guidelines as a whole, as well as discrete elements of the guidelines under consideration at the moment.  This version of the draft guidelines is part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature of matters encompassed by the privilege and would impair the ability of Treasury employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency.

EXEMPTION 5 (deliberative process) is asserted to the title  and substance of this nonfinal version of the draft guidelines containing notional design elements under consideration, including draft descriptions of proposed organizational objectives, roles, functions and responsibilities; guidelines |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | framework, governing principals, procedures, threshold requirements; and defined terminology and selected contextual information deemed relevant to the design and function of the guidelines.  These matters are, in whole and in part, part of an ongoing inter-agency pre-decisional and deliberative process by senior officials to design governing framework, procedures, and process for the conduct of intelligence activities by the Treasury Department. This nonfinal version of the draft guidelines was circulated to obtain critique and recommendations on proposed design under consideration at the time and, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| UST_000352 through UST_000383 | Page 32-page draft Treasury Attorney General Guidelines (dated 11/3/16) | (b)(5) AC (b)(5) DP | SAME  DESCRIPTION<br><br>Redacted in full – Redacted date, title and substance of this nonfinal version of draft guidelines outlining the Treasury Department's proposed procedures for the conduct of intelligence activities, including draft descriptions of the purpose of the guidelines and mission and |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | responsibilities of the Office of Intelligence and Analysis.<br><br>EXEMPTION 5 (privileged attorney-client communications) is asserted to the title and substance of this nonfinal version of the draft guidelines identifying specific matters for which legal advice is sought, including proposed organizational objectives, roles, functions and responsibilities; a notional framework, governing principals, procedures, threshold requirements, and defined terminology; and selected contextual information deemed relevant to the request for legal advice.  This version of the guidelines also reveals nonfinal legal analysis, questions, commentary and opinions concerning the guidelines as a whole, as well as discrete elements of the guidelines under consideration at the moment.  This version of the draft guidelines is part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature of matters encompassed by the privilege and would impair the ability of Treasury employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency.<br><br>EXEMPTION 5 (deliberative process) is asserted to the title  and substance of this nonfinal version of the draft guidelines containing notional design |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | elements under consideration, including draft descriptions of proposed organizational objectives, roles, functions and responsibilities; guidelines framework, governing principals, procedures, threshold requirements; and defined terminology and selected contextual information deemed relevant to the design and function of the guidelines.  These matters are, in whole and in part, part of an ongoing inter-agency pre-decisional and deliberative process by senior officials to design governing framework, procedures, and process for the conduct of intelligence activities by the Treasury Department. This nonfinal version of the draft guidelines was circulated to obtain critique and recommendations on proposed design under consideration at the time and, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| UST_000384 through UST_000417 | Page 31-page draft Treasury Attorney General Guidelines (dated 11/24/17) | (b)(5) AC (b)(5) DP | SAME  DESCRIPTION  Redacted in full – Redacted date, title and substance of this nonfinal version of draft guidelines outlining the Treasury Department's proposed procedures for the conduct of |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 76 of 359

AG GUIDELINES Vaughn Index                    Leopold et al v Treasury 17-cv-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
| | | | intelligence activities, including draft descriptions of the purpose of the guidelines and mission and responsibilities of the Office of Intelligence and Analysis.<br><br>EXEMPTION 5 (privileged attorney-client communications) is asserted to the title and substance of this nonfinal version of the draft guidelines identifying specific matters for which legal advice is sought, including proposed organizational objectives, roles, functions and responsibilities; a notional framework, governing principals, procedures, threshold requirements, and defined terminology; and selected contextual information deemed relevant to the request for legal advice.  This version of the guidelines also reveals nonfinal legal analysis, questions, commentary and opinions concerning the guidelines as a whole, as well as discrete elements of the guidelines under consideration at the moment.  This version of the draft guidelines is part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature of matters encompassed by the privilege and would impair the ability of Treasury employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency.<br><br>EXEMPTION 5 (deliberative process) is asserted |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | to the title and substance of this nonfinal version of the draft guidelines containing notional design elements under consideration, including draft descriptions of proposed organizational objectives, roles, functions and responsibilities; guidelines framework, governing principals, procedures, threshold requirements; and defined terminology and selected contextual information deemed relevant to the design and function of the guidelines.  These matters are, in whole and in part, part of an ongoing inter-agency pre-decisional and deliberative process by senior officials to design governing framework, procedures, and process for the conduct of intelligence activities by the Treasury Department. This nonfinal version of the draft guidelines was circulated to obtain critique and recommendations on proposed design under consideration at the time and, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| | | | |
| | | | |

# EXHIBIT J

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| **TTFC_00000001** | One-page email string titled "Re:" between Treasury personnel who are assigned to the Office of Terrorist Financing and Financial Crime (TFFC) responsible for formulating and coordinating the counter terrorist financing and anti-money laundering efforts of the Department of the Treasury. TFFC is a component of the Office of Terrorism and Financial Intelligence (TFI) which marshals the department's intelligence and enforcement functions to sever the lines of financial support to international terrorists, weapons of mass destruction proliferators, narcotics traffickers, money launderers, and other threats to our national security.  TFI also oversees several component offices and bureaus, including the Office of Foreign Assets Control (OFAC), which administers and enforces economic and trade sanctions, and the Financial Crimes Enforcement Network (FinCEN), which is responsible for administering the Bank Secrecy Act ("BSA"), the United States' comprehensive federal anti-money laundering and countering the financing of terrorism statute.  TFI and its organizational components are designated as a law enforcement organization of the | (b)(6) | Redacted in part - Redacted names, email addresses, and direct phone numbers of TFFC personnel. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of TFFC personnel whose duties and responsibilities included targeting terrorist financing investigative efforts with foreign law enforcement counterparts through, among other things, investigative exchanges of information to facilitate detection and disruption of terrorist financing, money laundering and related financial crimes domestic and abroad.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile investigative efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |

TFFC AND RUSSIA VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | Department of the Treasury.  31 USC 312(d). | | |
| TTFC_00000050 **TTFC_00000051** | Page 2 of a 2-page draft Meeting Minutes of a meeting between Treasury (TFI/TFFC) and FinCEN personnel representing the financial investigative law enforcement interests of the Treasury Department and FinCEN and their counterparts in the Federal Financial Monitoring Service of the Russian Federation, Rosfinmonitoring (a federal financial investigation unit (FIU) that collects and analyzes information about financial transactions in order to combat domestic and international money laundering, terrorist financing, and other financial crimes). | (b)(5) DP (b)(5) CCD (b)(7)(E) | Redacted in full – Redacted information in two numbered paragraphs concerning a proposed framework, methodology, and protocols of an agreement to share investigative information in the course of a specific bilateral project investigating terrorist financing by a particular terrorist organization.  While that project is no longer ongoing, cooperative efforts to investigate and combat the terrorist financing threats posed by the subject terrorist organization and similar actors remain constant for prospective investigative and enforcement efforts. EXEMPTION 5 (deliberative process) is asserted to the substantive portions of the draft Meeting Minutes which were undergoing internal review and editing within TFI/TFFC to protect the deliberative process of the U.S. Department of Treasury.  The draft Meeting Minutes are part of an internal process among Treasury personnel to evaluate, comment upon and edit the content of minutes intended to summarize key points of discussion at the meeting and proposed courses of action, which if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on collaborative investigative matters of between or among subordinates and superiors and cause public confusion by revealing reasons and |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | rationales that were not in fact the grounds for the actions ultimately taken. EXEMPTION 5 (consultant corollary doctrine) The same information was also part of an iterative consultative process between Treasury (TFI/TFFC and FinCEN) and its foreign counterpart on an investigative project in which Treasury in part, sought advice and information from Rosfinmonitoring to jointly combat terrorist financing by a particular terrorist organization, in furtherance of Treasury's and Rosfinmonitoring's respective missions to counter terrorist financing. The draft Meeting Minutes are confidential and part of an iterative consultative process with a foreign partner on an investigative project which if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on collaborative investigative matters of between or among subordinates and superiors and their collaborating counterparts and cause public confusion by revealing reasons and rationales that were not in fact the grounds for the actions ultimately taken.  Disclosure could also undermine the confidence of our foreign partner in Treasury's ability to maintain confidences in confidential collaborative efforts and international cooperation more broadly. EXEMPTION 7E (law enforcement investigative techniques and procedures) is asserted to the substantive portions of the Minutes regarding a |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | proposed framework, methodology, and protocols to be followed for sharing investigative information concerning a specific bilateral project investigating terrorist financing through a particular terrorist organization.  Disclosing this information would reveal the specific nature cooperation between TFI/TFFC and FinCEN and Russian FIU Rosfinmonitoring and the closely guarded procedures for sharing terrorist financing information between them, and more broadly with other foreign-government partners.  Disclosing how governments cooperate internationally to combat terrorist financing and financial crime would provide potential wrongdoers clear insights into exactly how law-enforcement authorities operate, share information, and collaborate, thereby permitting criminals to calibrate their efforts to avoid detection or otherwise frustrate law-enforcement actions.   Disclosure of the redacted information could reasonably be expected to interfere with the effective use of this practice and potentially undermine cooperation with investigative partners prospectively, particularly with regard to cooperative efforts to investigate and combat the terrorist financing threats posed by the subject terrorist organization and similar actors remain constant for prospective enforcement efforts. |
| TFFC_00000200 **TFFC_00000201** | Page 2 of a 2-page email titled "Russia" among TFI/TFFC and FinCEN personnel discussing the need for a planning | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the portions of the email message describing issues of concern and the sensitive law enforcement context arising from |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 83 of 359

TFFC AND RUSSIA VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | meeting about proposed investigative efforts with Rosfinmonitoring, the sensitive context of the meeting, and proposed timing and location for the meeting. | | proposed investigative efforts with Rosfinmonitoring.  Redacted name of FinCEN personnel.<br>EXEMPTION 5 (deliberative process) is asserted to the portions of the email message describing the sensitive law enforcement context and issues of concern about proposed investigative efforts with Rosfinmonitoring to protect the deliberative process of the U.S. Department of Treasury.  The discussion is part of a pre-decisional and deliberative internal discussion among TFI personnel attempting to assess and address those potential concerns which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken.<br>EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of FinCEN personnel whose duties and responsibilities include targeting terrorist financing investigative efforts with foreign law enforcement counterparts through, among other things, investigative exchanges of information to facilitate detection and disruption of terrorist financing, money laundering and related financial crimes domestic and abroad, and includes, in this |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 84 of 359

TFFC AND RUSSIA VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
| | | | instance, administrative personnel who assists senior FinCEN leadership. These personnel maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile investigative efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| **TFFC_00000251** TFFC_00000252 TFFC_00000253 | Page 1 of a 2-page email string titled "Russia" among TFI principals Jennifer Fowler, Andrea Gacki and Jamal El-Hindi and other TFI and FinCEN personnel discussing a proposed high-level meeting of the principals and their staffs regarding proposed investigative efforts with Rosfinmonitoring. | (b)(5) (b)(6) (b)(7)(C) | Redacted in part – Redacted the portions of the email messages referencing the specific nature of an unrelated OFAC planning meeting causing a scheduling conflict and personal preferences as to whom should staff the meeting.  Redacted names, email addresses, and direct phone numbers of TFI and FinCEN personnel.  Redacted email addresses of senior TFI and FinCEN officials (Jennifer Fowler, Andrea Gacki and Jamal El-Hindi) and Ms. Gacki's direct phone number. EXEMPTION 5 (deliberative process) is asserted to the portions of the email message referencing the specific nature of an unrelated OFAC planning meeting and personal preferences as to whom should staff the senior level meeting to protect the deliberative process of the U.S. Department of |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
| | | | Treasury.  This information reveals details about possible OFAC actions under consideration unrelated to the "Russia" meeting and personal preferences for the selection of appropriate staffing for the "Russia" meeting.  These matters are pre-decisional and deliberative internal discussion among TFI and FinCEN officials which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors.  EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities and contact information of TFI and FinCEN personnel whose duties and responsibilities include targeting terrorist financing investigative efforts with foreign law enforcement counterparts through, among other things, investigative exchanges of information to facilitate detection and disruption of terrorist financing, money laundering and related financial crimes domestic and abroad.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile investigative efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| **TFFC_000301** TFFC_000302 TFFC_000303 TFFC_000304 TFFC_000305 | Page 1 of a 5-page email string titled "Re: Russia info exchange 1-1-2014 to 10-13-2016" among FinCEN personnel regarding the nature and status of a set of law enforcement investigative requests from Rosfinmonitoring related to a specific bilateral project investigating terrorist financing through a particular terrorist organization. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part - Redacted the substantive portions of the email message describing the nature and status of a set of law enforcement investigative requests with Rosfinmonitoring undergoing review by FinCEN and personal commentary and assessments regarding investigative status.  Redacted names, email addresses, and direct phone numbers of FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to the portions of the email string discussing the substantive nature and status of a set of law enforcement investigative requests from Rosfinmonitoring and comments and assessments of FinCEN personnel regarding those investigations to protect the deliberative process of Treasury/FinCEN.  The discussion is part of an internal review and assessment process within FinCEN concerning ongoing law enforcement investigative exchanges (FIU-to-FIU) among FinCEN personnel which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities and contact information of FinCEN personnel whose duties and responsibilities include targeting terrorist financing investigative efforts with foreign law enforcement counterparts through, among other things, investigative exchanges of information to facilitate detection and disruption of terrorist financing, money laundering and related financial crimes domestic and abroad.  These personnel maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile investigative efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFFC_00000401 | One-page untitled email string among Treasury and FinCEN personnel regarding a letter from Rosfinmonitoring to Daniel Glaser, Assistant Secretary of Treasury's Office of Terrorist Financing and Financial Crime. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part - Redacted substantive portions of email message string that provide additional context behind the Rosfinmonitoring letter, a brief analysis of certain matters within the letter, and proposed course of action related to an anticipated briefing of Assistant Secretary Glaser of the |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | matter.  Redacted names and email addresses of Treasury and FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to portions of email discussion containing personal impressions, assessments, views and opinions regarding the relation of the letter to a specific bilateral project investigating terrorist financing by a particular terrorist organization and a proposed course of action related to an anticipated briefing of Assistant Secretary Glaser of the matter to protect the deliberative process of Treasury.  This information was part of a pre-decisional and deliberative internal discussion among Treasury personnel analyzing the import of the letter and possible next steps preliminary to informing the Assistant Secretary of the communication or any proposed follow up actions which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities and contact information of TFI/TFFC and FinCEN personnel whose duties and responsibilities include targeting terrorist financing investigative efforts with foreign law enforcement counterparts |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | through, among other things, investigative exchanges of information to facilitate detection and disruption of terrorist financing, money laundering and related financial crimes domestic and abroad.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile investigative efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFFC_00000540 TFFC_00000541 TFFC_00000542 TFFC_00000543 TFFC_00000544 TFFC_00000545 TFFC_00000546 TFFC_00000547 TFFC_00000548 TFFC_00000549 TFFC_00000550 **TFFC_00000551** TFFC_00000552 TFFC_00000553 | Page 12 of an 18-page spreadsheet.  The spreadsheet constitutes a confidential disclosure of investigative information from FinCEN to Rosfinmonitoring in response to its FIU investigative request for information submitted as part of a specific bilateral project investigating terrorist financing through a particular terrorist organization.  The page contains detailed financial information concerning transactions identified by FinCEN in response to the request. | (b)(7)(D) (b)(7)(E) | Redacted in full – All information concerning financial transactions identified by FinCEN in response to the FIU investigative request. EXEMPTION 7D (confidential law enforcement information furnished to a foreign agency or authority) is asserted to protect investigative information compiled by FinCEN and confidentially disclosed in response to the confidential FIU investigative request for information known or needed by a law enforcement agency for investigative purposes. This information was provided by FinCEN to Rosfinmonitoring in a formal FIU-to-FIU exchange and based on an explicit understanding |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 90 of 359

TFFC AND RUSSIA VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| TFFC_00000554 TFFC_00000555 TFFC_00000556 TFFC_00000557 | | | of strict confidentiality protection and restricted uses. Disclosure of the spreadsheet revealing content concerning information of investigative interest would violate the strict confidentiality requirements underpinning all such FIU-to-FIU investigative exchanges governed by Egmont Charter and Egmont's principals for investigative exchanges among FIUs. Accordingly, disclosure could reasonably be expected to interfere with the effective use of this prospectively, potentially undermine cooperation with investigative partners prospectively, and risk circumvention of the law. EXEMPTION 7E (law enforcement investigative techniques and procedures) is asserted to protect all fields of the spreadsheet containing detailed financial and transactional information regarding discrete persons of interest and related entities compiled for law enforcement purposes and records documenting and reflecting the results of searches of nonpublic law enforcement and other databases used for official purposes by FinCEN, domestic law enforcement authorities, and foreign government agencies. Release of these records would reveal investigative methodology in the investigation of terrorist financing and financial crimes and divulge a particular law-enforcement technique for obtaining financial information that would allow a person to alter his behavior in order to avoid detection in the investigation of financial crimes. These records also reveal the nature of the communication and cooperation between FinCEN |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 91 of 359

TFFC AND RUSSIA VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | and a foreign FIU.  The procedures for sharing information among financial-intelligence units, and between FinCEN and its other foreign-government partners, are closely guarded, treated as highly confidential, are not well-known to the public, and cannot be described with greater specificity without yielding sufficient information to enable wrongdoers to potentially evade detection. Disclosing how governments cooperate internationally to combat terrorism and financial crime would provide potential wrongdoers clear insights into exactly how law-enforcement authorities operate, share information, and collaborate, thereby permitting criminals to calibrate their efforts to avoid detection or otherwise frustrate law-enforcement actions. Disclosure of any of this information could reasonably be expected to interfere with the effective use of this practice and potentially undermine cooperation with investigative partners prospectively. |
| TFFC_00000590 TFFC_00000591 TFFC_00000592 TFFC_00000593 TFFC_00000594 TFFC_00000595 TFFC_00000596 TFFC_00000597 TFFC_00000598 TFFC_00000599 | Page 12 page of a formal investigative exchange request form used in confidence by FIUs for investigative assistance regarding specific targets of an investigation under the bilateral project investigating terrorist financing through a particular terrorist organization.  The page contains the names and other personal identifiers of specific individuals of interest and/or being investigated by | (b)(6) (b)(7)(C) (b)(7)(D) (b)(7)(E) | Redacted in full – The FIU investigative request form and names and identifiers of individual subjects of the request. EXEMPTION 6 and 7C (privacy interests) is asserted to protect personal identifying information of individuals of investigative interest and/or the subjects of a law enforcement investigation conducted by Russian authorities, including Rosfinmonitoring.  These individuals have substantial privacy interests in avoiding |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| TFFC_00000600 **TFFC_00000601** TFFC_00000602 TFFC_00000603 TFFC_00000604 TFFC_00000605 TFFC_00000606 TFFC_00000607 TFFC_00000608 TFFC_00000609 TFFC_00000610 TFFC_00000611 TFFC_00000612 TFFC_00000613 TFFC_00000614 TFFC_00000615 TFFC_00000616 TFFC_00000617 TFFC_00000618 TFFC_00000619 TFFC_00000620 TFFC_00000621 TFFC_00000622 | Russian authorities, including Rosfinmonitoring.  The request form itself is confidential and under the terms of the investigative exchange, restricted for law enforcement uses. | | undue public attention, harassment, embarrassment, and severe financial consequences if their status as persons of investigative interest to law enforcement authorities were publicly disclosed.  This information is being withheld because there is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead would expose the identity and other personal information of the subjects of investigation to unwarranted invasion of their personal privacy. EXEMPTION 7D (confidential law enforcement information compiled by a foreign agency or authority) is asserted to the confidential FIU investigative request form disclosing various types of information known or needed by a law enforcement agency compiling information for investigative purposes.  This form and the information in it were provided by Rosfinmonitoring to FinCEN in a formal FIU-to-FIU exchange and based on an explicit understanding of strict confidentiality protection and restricted uses.  Disclosure of the form or any of its content concerning information of investigative interest would violate the strict confidentiality requirements underpinning all such FIU-to-FIU investigative exchanges governed by Egmont Charter and Egmont's principals for investigative exchanges among FIUs. Accordingly, |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 93 of 359

TFFC AND RUSSIA VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|----------------------|------------------------------------------------------|
|       |                              |                      | disclosure could reasonably be expected to interfere with the effective use of this prospectively, potentially undermine cooperation with investigative partners prospectively, and risk circumvention of the law. EXEMPTION 7E (law enforcement investigative techniques and procedures) is asserted to protect all fields of the confidential investigative request form.  Disclosure of the form or any of its content concerning information of investigative interest known or needed by law enforcement for persons of interest/subject of investigation could reasonably be expected to interfere with the effective use of this practice, potentially undermine cooperation with investigative partners prospectively, and risk circumvention of the law. These records also reveal the nature of the communication and cooperation between FinCEN and a foreign FIU.  The procedures for sharing information among financial-intelligence units, and between FinCEN and its other foreign-government partners, are closely guarded, treated as highly confidential, are not well-known to the public, and cannot be described with greater specificity without yielding sufficient information to enable wrongdoers to potentially evade detection. Disclosing how governments cooperate internationally to combat terrorism and financial crime would provide potential wrongdoers clear insights into exactly how law-enforcement authorities operate, share information, and |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | collaborate, thereby permitting criminals to calibrate their efforts to avoid detection or otherwise frustrate law-enforcement actions. Disclosure of any of this information could reasonably be expected to interfere with the effective use of this practice and potentially undermine cooperation with investigative partners prospectively. |
| **TFFC_00000751** TFFC_00000752 | Page 1 of a 2-page email string among TFI/TFFC personnel concerning a specific bilateral project investigating terrorist financing through a particular terrorist organization. | (b)(5) DP (b)(5) CCD (b)(5) AC (b)(6) (b)(7)(C) | Redacted in part - Redacted title of the email string identifying the name of a specific investigative matter and would also reveal the subject of a privileged attorney-client communication. Redacted substantive portions of the email string that relate opinions, impressions, comments and concerns about matters that are pre-decisional and deliberative in nature and part of a privileged attorney-client communication draft description of the origins, context and status of certain cooperative investigative efforts.  Redacted names and email addresses of TFI/TFFC personnel. EXEMPTION 5 (deliberative process) is asserted to the substantive portions of discussion and commentary concerning the status of collaborative investigative efforts, investigative sharing methodologies and possible courses of action under consideration preliminary to informing the Assistant Secretary of the these matters or any proposed follow up action to protect the deliberative process of Treasury and FinCEN. These matters are part of a pre-decisional and deliberative internal discussion among Treasury |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | and FinCEN personnel analyzing the status of collaborative investigative efforts and methodologies and possible next steps preliminary to informing the Assistant Secretary of these matters or any proposed follow up actions which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 5 (consultant corollary doctrine) is asserted to the title of the email string identifying the name of a specific investigative matter which was the subject of an iterative consultative process between Treasury (TFI/TFFC and FinCEN) and its foreign counterpart on an investigative project in which Treasury in part, sought advice and information from Rosfinmonitoring to jointly combat terrorist financing by a particular terrorist organization, in furtherance of Treasury's and Rosfinmonitoring's respective missions to counter terrorist financing.  Disclosing the title would reveal the subject the consultation and would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on collaborative investigative matters of between or among subordinates and superiors |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | and their collaborating counterparts and undermine the confidence of our foreign partner in Treasury's ability to maintain confidences in confidential collaborative efforts and international cooperation more broadly. EXEMPTION 5 (privileged attorney-client communications) is asserted to a portion of the title of the email and substantive discussions concerning a specific investigative matter that are part of a confidential attorney-client communication between an attorney within Treasury's Office of the General Counsel and a TFI/TFFC "client" for legal advice which, if disclosed, would reveal the specific subject and nature of matters under legal consideration and which are encompassed by the attorney-client privilege and would impair the ability of Treasury employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities and contact information of TFFC personnel whose duties and responsibilities include targeting terrorist financing investigative efforts with foreign law enforcement counterparts through, among other things, investigative exchanges of information to facilitate detection and disruption of terrorist financing, money laundering and related financial crimes domestic and abroad.  These persons maintain a substantial privacy interest |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | because they are associated with sensitive and potentially high-profile investigative efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFFC_00000800 **TFFC_00000801** | Page 2 of a 2-page email string among TFFC personnel circulating for review and comment a draft description of the origins, scope, methodologies, status, and assessment of certain cooperative investigative efforts related to a bilateral project investigating terrorist financing through a particular terrorist organization. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted substantive portions of nonfinal draft descriptions of the origins, scope, methodologies, status, and assessment of certain cooperative investigative efforts and potential areas for further engagement.  Redacted names and email addresses of TFFC and FinCEN personnel.  EXEMPTION 5 (deliberative process) is asserted to substantive portions of nonfinal draft descriptions of the origins, scope, methodologies, status, and assessment of certain cooperative investigative efforts and potential areas for further engagement that were prepared in anticipation of a briefing of senior TFI officials.  The email string on this page contains two different versions of the draft descriptions (not the final text) reflecting the back and forth of pre-decisional and deliberative internal discussion, review and comment and were subject to further consideration.  Disclosure would foreseeably jeopardize the candid considerations |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities and contact information of TFFC personnel whose duties and responsibilities include targeting terrorist financing investigative efforts with foreign law enforcement counterparts through, among other things, investigative exchanges of information to facilitate detection and disruption of terrorist financing, money laundering and related financial crimes domestic and abroad.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile investigative efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| TFFC_00001049 TFFC_00001050 **TFFC_00001051** | Page 3 of a 3-page email string among Treasury and FinCEN personnel concerning anticipated confidential bilateral meeting with Rosfinmonitoring. A PORTION OF THIS PAGE CONTAINS THE SAME INFORMATION DESCRIBED IN BATES PAGE 1001 (ABOVE). ADDITIONAL INFORMATION ON THIS PAGE (BATES 1051) This page also contains the final line of a subsequent email under the same title at the top of the page. | (b)(5) DP | THE EXEMPTIONS AND JUSTICIFICATIONS ASSERTED TO WITHHOLD THE INFORMATION ON BATES PAGE 1001 ARE INCORPORATED BY REFERENCE HERE. THE FOLLOWING PERTAINS TO THE ADDITIONAL INFORMATION ON THIS PAGE.  Redacted in part - the final line of a subsequent email that appears at the top of the page concerning planning details for the anticipated confidential bilateral meeting. EXEMPTION 5 (deliberative process) is asserted to planning details for the anticipated confidential bilateral meeting.  These details are pre-decisional and deliberative and were part of an internal planning process in anticipation of an anticipated meeting the disclosure of which would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFFC_00001099 TFFC_00001100 **TFFC_00001101** | Page 3 of a 3-page email string among Treasury and FinCEN personnel containing AN EXCERPT OF A PORTION OF THE INFORMATION ON BATES PAGE 651 (ABOVE), i.e., *historical correspondence dated November 26, 2016, from a TFFC advisor representing the financial* | (b)(5) CCD (b)(6) (b)(7)(C) (b)(7)(E) | THE EXEMPTIONS AND JUSTICIFICATIONS ASSERTED TO WITHHOLD THE INFORMATION ON BATES PAGE 651 ARE INCORPORATED BY REFERENCE HERE. |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | *investigative law enforcement interests of the Treasury Department and FinCEN to a counterpart in Rosfinmonitoring concerning the framework, methodology, and protocol of an agreement to share investigative information in the course of a specific bilateral project investigating terrorist financing through a particular terrorist organization.*  ADDITIONAL INFORMATION:  None | | |
| TFFC_00001150 **TFFC_00001151** | Page 2 of a 2-page email string titled "FW: Regarding letter from RFM to Danny Glaser" among TFFC and FinCEN personnel. | (b)(6) (b)(7)(C) | Redacted in part - the name and direct phone number of an individual within FinCEN's Intelligence Division. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of an individual within FinCEN's Intelligence Division whose duties and responsibilities include compiling, analyzing, and disseminating highly sensitive financial information and other classified matters that may serve as the basis for investigations into financial crimes, national security matters, and other matters.  These duties also include targeting terrorist financing investigative efforts with foreign law enforcement counterparts through, among other things, investigative exchanges of information to facilitate detection and disruption of terrorist financing, money laundering and related financial crimes domestic and abroad.  This individual has a substantial privacy interest because the individual is associated with sensitive and potentially high- |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 101 of 359

TFFC AND RUSSIA VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | profile investigative efforts into terrorist financing and financial crimes through work that could subject the individual to undue public scrutiny or harassment, including through the efforts of hostile foreign actors.  Additionally, this individual is not a political employee, and is below the level of Deputy Assistant Secretary, and therefore plays no substantive role in the policy-making process.  Treasury has consistently protected the identities of such employees.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose FinCEN personnel to unwarranted invasion of their personal privacy. |
| TFFC_00001201 | First page of an email titled "RE: VTC with Rosfin" among TFFC and FinCEN personnel concerning the planning, methodology and scheduling of a video conference call with Rosfinmonitoring representatives concerning cooperative investigative efforts related to a bilateral project investigating terrorist financing through a particular terrorist organization. | (b)(5) DP (b)(6) (b)(7)(C) (b)(7)(E) | Redacted in part – Redacted personal comments, assessments, concerns and recommendations concerning the import and optics of certain Rosfinmonitoring efforts to exchange investigative information and possible misunderstandings regarding the appropriate methodology and protocols for investigative exchanges.  Redacted names, phone number, and email addresses of TFFC and FinCEN personnel. Redacted references to a specific investigative communications technique. EXEMPTION 5 (deliberative process) is asserted to personal comments, assessments, concerns and recommendations concerning the import and |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 102 of 359

TFFC AND RUSSIA VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
| | | | optics of certain Rosfinmonitoring efforts to exchange investigative information and possible misunderstandings regarding the appropriate methodology and protocols for investigative exchanges.  These comments reflect only the views of the author and are part of an ongoing assessment of Rosfinmonitoring's investigative exchange efforts, proposed methodologies and protocols, and proposed courses of action for consideration to address concerns which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken.<br>EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities and contact information of TFFC and FinCEN personnel whose duties and responsibilities include targeting terrorist financing investigative efforts with foreign law enforcement counterparts through, among other things, investigative exchanges of information to facilitate detection and disruption of terrorist financing, money laundering and related financial crimes domestic and abroad.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile investigative |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 103 of 359

TFFC AND RUSSIA VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. EXEMPTION 7E (law enforcement investigative techniques and procedures) is asserted to protect the reference of a specific investigative communications technique used in FIU-to-FIU investigative exchanges in law enforcement investigations.  This technique is not well-known to the public and cannot be described with greater specificity without yielding sufficient information to enable wrongdoers to potentially evade detection.  Disclosing how governments cooperate internationally to combat terrorism and financial crime would provide potential wrongdoers clear insights into exactly how law-enforcement authorities operate, share information, and collaborate, thereby permitting criminals to calibrate their efforts to avoid detection or otherwise frustrate law-enforcement actions. Disclosure of this information could reasonably be expected to interfere with the effective use of this practice and potentially undermine cooperation with investigative partners prospectively. |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 104 of 359

TFFC AND RUSSIA VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| **TFFC_00001201** | First page of an email titled "RE: VTC with Rosfin" among TFFC and FinCEN personnel concerning the planning, methodology and scheduling of a video conference call with Rosfinmonitoring representatives concerning cooperative investigative efforts related to a bilateral project investigating terrorist financing through a particular terrorist organization. | (b)(5) DP<br>(b)(6)<br>(b)(7)(C)<br>(b)(7)(E) | Redacted in part – Redacted personal comments, assessments, concerns and recommendations concerning the import and optics of certain Rosfinmonitoring efforts to exchange investigative information and possible misunderstandings regarding the appropriate methodology and protocols for investigative exchanges.  Redacted names, phone number, and email addresses of TFFC and FinCEN personnel. Redacted references to a specific investigative communications technique.<br>EXEMPTION 5 (deliberative process) is asserted to personal comments, assessments, concerns and recommendations concerning the import and optics of certain Rosfinmonitoring efforts to exchange investigative information and possible misunderstandings regarding the appropriate methodology and protocols for investigative exchanges.  These comments reflect only the views of the author and are part of an ongoing assessment of Rosfinmonitoring's investigative exchange efforts, proposed methodologies and protocols, and proposed courses of action for consideration to address concerns which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities and contact information of TFFC and FinCEN personnel whose duties and responsibilities include targeting terrorist financing investigative efforts with foreign law enforcement counterparts through, among other things, investigative exchanges of information to facilitate detection and disruption of terrorist financing, money laundering and related financial crimes domestic and abroad.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile investigative efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. EXEMPTION 7E (law enforcement investigative techniques and procedures) is asserted to protect the reference of a specific investigative communications technique used in FIU-to-FIU investigative exchanges in law enforcement investigations.  This technique is not well-known to the public and cannot be described with greater |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|-------------------------------------------------------|
| | | | specificity without yielding sufficient information to enable wrongdoers to potentially evade detection.  Disclosing how governments cooperate internationally to combat terrorism and financial crime would provide potential wrongdoers clear insights into exactly how law-enforcement authorities operate, share information, and collaborate, thereby permitting criminals to calibrate their efforts to avoid detection or otherwise frustrate law-enforcement actions. Disclosure of this information could reasonably be expected to interfere with the effective use of this practice and potentially undermine cooperation with investigative partners prospectively. |
| **TFFC_00001301** | Page 5 of a 5-page email string titled "RE: Follow-up on Russia-US meeting in Busan" among TFFC and FinCEN personnel.  This page is an excerpt of correspondence to a TFFC advisor from a Rosfinmonitoring representative concerning the status of two specific confidential requests for investigative exchanges related to a bilateral project investigating terrorist financing through a particular terrorist organization. | (b)(5) CCD (b)(6) (b)(7)(C) (b)(7)(E) | Redacted in part – Redacted substantive discussion of the investigative status, subject and nature of two specific confidential investigative exchanges related to a bilateral project investigating terrorist financing through a particular terrorist organization, descriptions of possible misunderstandings regarding the appropriate methodology and protocols for investigative exchanges with FinCEN, including two investigative case names and numbers; a specific investigative communications technique used in FIU-to-FIU investigative exchanges in law enforcement investigations; and the name of the Rosfinmonitoring representative. EXEMPTION 5 (consultant corollary doctrine) is asserted to the substantive portions of the correspondence revealing the investigative status, |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 107 of 359

TFFC AND RUSSIA VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
|  |  |  | subject and nature of specific confidential investigative exchanges related to a bilateral project investigating terrorist financing through a particular terrorist organization, and possible misunderstandings regarding the appropriate methodology and protocols for investigative exchanges with FinCEN, including two investigative case names and numbers.  This confidential discussion was part of an ongoing iterative consultative process between Treasury (TFI/TFFC and FinCEN) and its foreign counterpart on an investigative project in which Treasury in part, sought advice and information from Rosfinmonitoring to jointly combat terrorist financing by a particular terrorist organization. Disclosure of this information would foreseeably jeopardize the candid considerations necessary for good decision making in the Government and undermine the confidence of our foreign partner in Treasury's ability to maintain confidences in confidential collaborative efforts and international cooperation more broadly. EXEMPTION 6 and 7C (privacy interests) is asserted to withhold the name of a Rosfinmonitoring representative to protect a substantial privacy interest rooted in the individual's association with sensitive, confidential and high-profile collaborative investigative efforts between Treasury and Rosfinmonitoring into terrorist financing could subject the individual to undue public scrutiny or |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
| | | | harassment.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead would expose foreign government personnel to unwarranted invasion of their personal privacy. Also withheld is the identity of a suspected terrorist financier based on FinCEN law enforcement data.  This individual has a substantial privacy interest in avoiding undue public attention, harassment, embarrassment, and severe financial consequences if the individual's status as a person of investigative interest to law enforcement authorities were publicly disclosed. This information is being withheld because there is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead would expose the identity and other personal information of a subject of investigation to unwarranted invasion of their personal privacy. EXEMPTION 7E (law enforcement investigative techniques and procedures) is asserted to protect the reference of a specific investigative communications technique used in FIU-to-FIU investigative exchanges in law enforcement investigations.  This technique is not well-known to the public and cannot be described with greater |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | specificity without yielding sufficient information to enable wrongdoers to potentially evade detection.  Disclosing how governments cooperate internationally to combat terrorism and financial crime would provide potential wrongdoers clear insights into exactly how law-enforcement authorities operate, share information, and collaborate, thereby permitting criminals to calibrate their efforts to avoid detection or otherwise frustrate law-enforcement actions. Disclosure of this information could reasonably be expected to interfere with the effective use of this practice and potentially undermine cooperation with investigative partners prospectively. |
| TFFC_00001500 **TFFC_00001501** TFFC_00001502 | Page 2 of a 3-page email string among Treasury and FinCEN personnel containing AN EXCERPT OF A PORTION OF THE INFORMATION ON BATES PAGE 651 (ABOVE), A PORTION OF WHICH IS ALSO REPEATED ON BATES PAGE 1101, i.e., historical correspondence dated November 26, 2016 from a TFFC advisor representing the financial investigative law enforcement interests of the Treasury Department and FinCEN to a counterpart in Rosfinmonitoring concerning the proposed framework, methodology, and protocol of an agreement to share investigative information in the course of a specific bilateral project investigating | (b)(5) DP (b)(6) (b)(7)(C) (b)(7)(E) | THE EXEMPTIONS AND JUSTICIFICATIONS ASSERTED TO WITHHOLD THE SAME INFORMATION ON BATES PAGES 651 AND 1101 ARE INCORPORATED BY REFERENCE HERE.   THE FOLLOWING PERTAINS TO THE ADDITIONAL INFORMATION ON THIS PAGE.  Redacted in part – Redacted the FinCEN advisor's described review of the historical correspondence and personal comments, opinions, expectations regarding the appropriate means to further communicate with Rosfinmonitoring on the proposed methodology and protocol for sharing investigative information; the reference to a specific investigative communications technique of a specific investigative communications technique used in FIU-to-FIU investigative exchanges in law enforcement investigations; and |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 110 of 359

TFFC AND RUSSIA VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | terrorist financing through a particular terrorist organization. It identifies specific sources, methodologies, objectives, and targets of investigation, as well as past collaborative investigative efforts and possible next steps. While that project is no longer ongoing, cooperative efforts to investigate and combat the terrorist financing threats posed by the subject terrorist organization and similar actors remain constant for prospective enforcement efforts.<br><br>ADDITIONAL INFORMATION: The top of this page also contains a portion of an email in the string that describes a FinCEN advisor's review of the historical correspondence and expresses personal comments, opinions, expectations regarding the appropriate means to further communicate with Rosfinmonitoring on the proposed methodology and protocol for sharing investigative information, and identifies specific investigative communications technique of a specific investigative communications technique used in FIU-to-FIU investigative exchanges in law enforcement investigations. | | the names, email addresses and phone number of FinCEN personnel.<br>EXEMPTION 5 (deliberative process) is asserted to described review of the historical correspondence and personal comments, opinions, expectations regarding the appropriate means to further communicate with Rosfinmonitoring on the proposed methodology and protocol for sharing investigative information which were subject to further consideration and discussion. These comments reflect only the views of the author were part of an internal discussion within FinCEN about proposed methodology and protocol for sharing investigative information with Rosfinmonitoring that are pre-decisional and deliberative, the disclosure of which would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken.<br>EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities and contact information of FinCEN personnel whose duties and responsibilities include targeting terrorist financing investigative efforts with foreign law enforcement counterparts through, among other things, investigative exchanges of |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | information to facilitate detection and disruption of terrorist financing, money laundering and related financial crimes domestic and abroad.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile investigative efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose FinCEN personnel to unwarranted invasion of their personal privacy.<br>EXEMPTION 7E (law enforcement investigative techniques and procedures) is asserted to protect the reference of a specific investigative communications technique used in FIU-to-FIU investigative exchanges in law enforcement investigations.  This technique is not well-known to the public and cannot be described with greater specificity without yielding sufficient information to enable wrongdoers to potentially evade detection.  Disclosing how governments cooperate internationally to combat terrorism and financial crime would provide potential wrongdoers clear insights into exactly how law-enforcement authorities operate, share information, and collaborate, thereby permitting criminals to |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | calibrate their efforts to avoid detection or otherwise frustrate law-enforcement actions. Disclosure of this information could reasonably be expected to interfere with the effective use of this practice and potentially undermine cooperation with investigative partners prospectively. |
| TFFC_00001550 **TFFC_00001551** TFFC_00001552 TFFC_00001553 TFFC_00001554 | Page 2 of a 5-page email string titled "RE: Calls from Rosfinmonitoring - heads up" among FinCEN personnel, including an attorney within FinCEN's Office of Chief Counsel, discussing misdirected efforts by a Rosfinmonitoring representative to contact a particular individual within FinCEN on investigative matters. | (b)(5) DP (b)(5) AC (b)(6) (b)(7)(C) | Redacted in part – Redacted personal observations, comments, reactions and concerns about Rossfinmonitoring representative's misdirected contact efforts, characterizations of recent developments, alleged conduct and assessments thereof shared as contextual background for further analysis and legal review. This same information was part of a privileged communication seeking legal advice from FinCEN counsel. Names, email addresses, and direct phone numbers of TFFC and FinCEN personnel and the names of Rosfinmonitoring representatives. EXEMPTION 5 (deliberative process) is asserted to personal observations, comments, reactions and concerns about Rossfinmonitoring representative's misdirected contact efforts, characterizations of recent developments, alleged conduct and assessments thereof shared as contextual background for further analysis which were part of pre-decisional and deliberative considerations concerning these sensitive communications. Disclosure would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 5 (privileged attorney-client communications) is asserted to discussions that are part of a series of communications with FinCEN's Office of Chief Counsel presenting information for which legal advice was sought which, if disclosed, would reveal the specific subject and detailed nature of matters under legal consideration and which are encompassed by the attorney-client privilege and would impair the ability of FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities and contact information of TFFC and FinCEN personnel and Rosfinmonitoring representatives whose duties and responsibilities include targeting terrorist financing investigative efforts with foreign law enforcement counterparts through, among other things, investigative exchanges of information to facilitate detection and disruption of terrorist financing, money laundering and related financial crimes domestic and abroad.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile investigative efforts into |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment.  Additionally, the TFFC and FinCEN personnel are not political employees, and are below the level of Deputy Assistant Secretary, and therefore play no substantive role in the policy-making process. Treasury has consistently protected the identities of such employees.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose TFI and FinCEN personnel and and Rosfinmonitoring representatives to unwarranted invasion of their personal privacy. |
| TFFC_00001597 TFFC_00001598 TFFC_00001599 TFFC_00001600 **TFFC_00001601** | Page 5 of a 5-page email string among FinCEN personnel concerning a specific bilateral project investigating terrorist financing through a particular terrorist organization. | (b)(6) (b)(7)(C) | Redacted in part – Redacted the name, title, email address and direct phone numbers of a TFFC advisor. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of a TFFC advisor whose duties and responsibilities included targeting terrorist financing investigative efforts with foreign law enforcement counterparts through, among other things, investigative exchanges of information to facilitate detection and disruption of terrorist financing, money laundering and related financial crimes domestic and abroad.  This individual has a substantial privacy interest because the individual is |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 115 of 359

TFFC AND RUSSIA VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | associated with sensitive and potentially high-profile investigative efforts into terrorist financing and financial crimes through work that could subject the individual to undue public scrutiny or harassment, including through the efforts of hostile foreign actors.  Additionally, this individual is not a political employee, and is below the level of Deputy Assistant Secretary, and therefore plays no substantive role in the policy-making process.  Treasury has consistently protected the identities of such employees.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose this individual to unwarranted invasion of personal privacy. |
| **TFFC_00001651** TFFC_00001652 TFFC_00001653 TFFC_00001654 | Page 1 of a 4-page email string titled "RE: Confirmation Danny Glaser is leaving..." among FinCEN personnel concerning a specific bilateral project investigating terrorist financing through a particular terrorist organization. | (b)(5) CCD (b)(6) (b)(7)(C) | Redacted in part – Redacted references to a specific investigative matter appearing in the subject heading of other emails in the email string. Redacted the substantive portion of an email from a TFFC advisor representing the financial investigative law enforcement interests of the Treasury Department and FinCEN to a Rosfinmonitoring representative concerning a proposed methodology for communicating investigative requests in the course of a specific bilateral project investigating terrorist financing through a particular terrorist organization. Redacted the names and email addresses of TFFC |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | and FinCEN personnel and the name and email address of a Rosfinmonitoring representative. EXEMPTION 5 (consultant corollary doctrine) is asserted to the substantive portions of the correspondence which was part of an iterative consultative process between Treasury (TFI/TFFC and FinCEN) and its foreign counterpart on an investigative project in which Treasury in part, sought advice and information from Rosfinmonitoring to jointly combat terrorist financing by a particular terrorist organization. The correspondence was confidential and if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government and undermine the confidence of our foreign partner in Treasury's ability to maintain confidences in confidential collaborative efforts and international cooperation more broadly. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of a TFFC advisor and Rosfinmonitoring counterpart whose duties and responsibilities included targeting terrorist financing investigative efforts with foreign law enforcement counterparts through, among other things, investigative exchanges of information to facilitate detection and disruption of terrorist financing, money laundering and related financial crimes domestic and abroad.  These individuals have a substantial privacy interest because they are associated with sensitive and potentially high-profile investigative |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 117 of 359

TFFC AND RUSSIA VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | efforts into terrorist financing and financial crimes through work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors.  Additionally, the TFFC advisor is not a political employee, and is below the level of Deputy Assistant Secretary, and therefore plays no substantive role in the policy-making process. Treasury has consistently protected the identities of such employees.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose a TFFC advisor and a foreign law enforcement counterpart to unwarranted invasion of their personal privacy. |
| TFFC_00001699 TFFC_00001700 **TFFC_00001701** TFFC_00001702 TFFC_00001703 TFFC_00001704 | Page 2 of a 6-page email string among TFFC and FinCEN personnel. concerning a specific bilateral project investigating terrorist financing through a particular terrorist organization. THIS PAGE IS MOSTLY A DUPLICATE OF THE INFORMATION CONTAINED IN THE EMAIL STRING ON BATES PAGE 701 (ABOVE). ADDITIONAL INFORMATION:  This page also contains a portion of the final sentence of prior email correspondence between a TFFC advisor and a Rosfinmonitoring representative | (b)(5) DP (b)(5) AC (b)(5) CCD (b)(6) (b)(7)(C) (b)(7)(E) | THE EXEMPTIONS AND JUSTICIFICATIONS ASSERTED TO WITHHOLD THE SAME INFORMATION ON BATES PAGE 701 ARE INCORPORATED BY REFERENCE HERE. THE EXEMPTIONS AND JUSTICIFICATIONS ASSERTED TO WITHHOLD THE SAME INFORMATION ON BATES PAGE 1301 ARE INCORPORATED BY REFERENCE HERE |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | concerning the status of certain formal information exchanges related to a bilateral project investigating terrorist financing through a particular terrorist organization. THIS ADDITIONAL INFORMATION WAS INCLUDED IN THE INFORMATION CONTAINED ON BATES PAGE 1301 regarding possible misunderstandings regarding the appropriate methodology and protocols for investigative exchanges with FinCEN. | | |
| TFFC_00001745 TFFC_00001746 TFFC_00001747 TFFC_00001748 TFFC_00001749 TFFC_00001750 **TFFC_00001751** | Page 7 of a 7-page email string among Treasury and FinCEN personnel containing AN EXCERPT OF A PORTION OF THE INFORMATION CONTAINED ON BATES PAGE 651 (ABOVE), PORTIONS OF WHICH ARE ALSO REPEATED ON BATES PAGES 1101 and 1501. ADDITIONAL INFORMATION:  None. | (b)(5) CCD (b)(6) (b)(7)(C) (b)(7)(E) | THE EXEMPTIONS AND JUSTICIFICATIONS ASSERTED TO WITHHOLD THE SAME INFORMATION ON BATES PAGES 651, 1101, AND 1501 ARE INCORPORATED BY REFERENCE HERE. |
| **TFFC_00001801** TFFC_00001802 | Page 1 of a 2-page email string titled "FW: Follow Up with Rosfinmonitoring" among FinCEN personnel concerning the status of certain confidential investigative exchanges related to a bilateral project investigating terrorist financing through a particular terrorist organization. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part - Redacted a substantive comment concerning the basis for the pending status of a specific investigative exchange and the names, email addresses and direct phone number of FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to comment concerning the basis for the pending status of a specific investigative exchange under review for further action.  This information was part of a pre-decisional and deliberative internal discussion concerning a confidential investigative |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 119 of 359

TFFC AND RUSSIA VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
| | | | exchange of law enforcement information that was pending and under review by FinCEN for further evaluation and possible action.  Disclosure would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken.<br>EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities and contact information of FinCEN personnel whose duties and responsibilities include targeting terrorist financing investigative efforts with foreign law enforcement counterparts through, among other things, investigative exchanges of information to facilitate detection and disruption of terrorist financing, money laundering and related financial crimes domestic and abroad.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile investigative efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 120 of 359

TFFC AND RUSSIA VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFFC_00001849 TFFC_00001850 **TFFC_00001851** TFFC_00001852 | Page 3 of a 4-page email string titled "RE: RUSSIA: RE: Follow Up with Rosfinmonitoring" among FinCEN personnel concerning the status of a set of specific confidential investigative exchanges of law enforcement information related to a bilateral project investigating terrorist financing through a particular terrorist organization. While that project is no longer ongoing, cooperative efforts to investigate and combat the terrorist financing threats posed by the subject terrorist organization and similar actors remain constant for prospective enforcement efforts. | (b)(5) DP (b)(6) (b)(7)(C) (b)(7)(E) | Redacted in part - Redacted portions of email conversations detailing a set of specific confidential investigative exchanges of law enforcement information and specific investigative information revealing specific sources, methodologies, targets of investigation, law enforcement sensitive investigative analysis and financial intelligence, and details of confidential collaborative investigative efforts with several identified foreign FIUs; personal comments, observations, assessments and opinions concerning the status and merits of certain confidential investigative exchanges; and the names, email addresses and direct phone number of FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to personal comments, observations, assessments and opinions concerning the status and merits of certain confidential investigative exchanges.  This commentary reflects only the views of the author and was part of a pre-decisional and deliberative internal evaluative discussion concerning the status and merits of specific pending and potential nexus to past investigative exchanges with foreign FIUs and counterparts.  This information is withheld to protect FinCEN's deliberative process because disclosure would foreseeably jeopardize the candid considerations necessary for good |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
| | | | decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities and contact information of FinCEN personnel whose duties and responsibilities include targeting terrorist financing investigative efforts with foreign law enforcement counterparts through, among other things, investigative exchanges of information to facilitate detection and disruption of terrorist financing, money laundering and related financial crimes domestic and abroad.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile investigative efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. EXEMPTION 7E (law enforcement investigative techniques and procedures) is asserted to the |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | substantive portions of the correspondence detailing confidential investigative exchanges of law enforcement information and specific investigative information revealing specific sources, methodologies, targets of investigation, law enforcement sensitive investigative analysis and financial intelligence, and details of confidential collaborative investigative efforts with several identified foreign FIUs.  These investigative data reveal the nature of the confidential communications and cooperation between FinCEN and discrete foreign FIUs regarding terrorist financing investigations through a particular terrorist organization.  The procedures for sharing information among financial-intelligence units, and between FinCEN and its other foreign-government partners, are closely guarded, treated as highly confidential, are not well-known to the public, and cannot be described with greater specificity without yielding sufficient information to enable wrongdoers to potentially evade detection. Disclosing how governments cooperate internationally to combat terrorism and financial crime would provide potential wrongdoers clear insights into exactly how law-enforcement authorities operate, share information, and collaborate, thereby permitting criminals to calibrate their efforts to avoid detection or otherwise frustrate law-enforcement actions. Disclosure of any of this information could reasonably be expected to interfere with the |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 123 of 359

TFFC AND RUSSIA VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | effective use of this practice and potentially undermine cooperation with investigative partners prospectively. |
| TFFC_00001947 TFFC_00001948 TFFC_00001949 TFFC_00001950 **TFFC_00001951** | Page 5 of a 5-page email titled "RE: Follow Up with Rosfinmonitoring" among FinCEN and TFFC personnel concerning a February 2017 meeting and the status of certain investigative requests for law enforcement information on specific targets of investigation related to a bilateral project investigating terrorist financing through a particular terrorist organization. | (b)(5) DP (b)(5) CCD (b)(6) (b)(7)(C) | Redacted in part – Redacted substantive comments, concerns, assessments and proposed courses of action regarding the status and proposed response to certain investigative requests for information, descriptions and assessments of investigative efforts, and a sentence revealing the identities of specific targets of investigation related to a bilateral project investigating terrorist financing through a particular terrorist organization.  Redacted the names, email addresses and direct phone number of TFFC and FinCEN personnel and the name of a Rosfinmonitoring representative. EXEMPTION 5 (deliberative process) is asserted to a description of internal review and clearance process regarding a matter under consideration for further action; substantive comments, concerns, assessments, and proposed courses of action regarding the status of certain investigative requests for information, including proposed responses. This information was part of a pre-decisional and deliberative internal evaluative discussion concerning the status and merits of certain investigative exchanges.  It is withheld to protect TFI/TFFC and FinCEN's deliberative process concerning these matters because disclosure would foreseeably jeopardize the candid considerations necessary for good decision making |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 124 of 359

TFFC AND RUSSIA VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 5 (consultant corollary doctrine) is asserted to a sentence regarding specific targets of investigation that reveals and relay part of an iterative consultative process between Treasury (TFI/TFFC and FinCEN) and its foreign counterpart on an investigative project in which Treasury in part, sought advice and information from Rosfinmonitoring to jointly combat terrorist financing by a particular terrorist organization. The statement discloses part of a confidential and iterative consultative process with a foreign partner on an investigative project which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government and undermine the confidence of our foreign partner in Treasury's ability to maintain confidences in confidential collaborative efforts and international cooperation more broadly. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities and contact information of TFFC and FinCEN personnel whose duties and responsibilities include targeting terrorist financing investigative efforts with foreign law enforcement counterparts through, among other things, investigative |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 125 of 359

TFFC AND RUSSIA VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | exchanges of information to facilitate detection and disruption of terrorist financing, money laundering and related financial crimes domestic and abroad.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile investigative efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment.  Also withheld are identities of specific targets of investigation conducted by Russian authorities, including Rosfinmonitoring.  These individuals have a substantial privacy interest in avoiding undue public attention, harassment, embarrassment, and severe financial consequences if the individual's status as a person of investigative interest to law enforcement authorities were publicly disclosed.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFFC_00001998 TFFC_00001999 TFFC_00002000 **TFFC_00002001** TFFC_00002002 | Page 4 of a 5-page email string titled "FW: Follow Up with Rosfinmonitoring" among TFFC and FinCEN personnel concerning a February 2017 meeting and the status of certain investigative requests for information on specific targets of | (b)(5) DP (b)(6) (b)(7)(C) | THE EXEMPTIONS AND JUSTIFICATIONS ASSERTED TO WITHHOLD THE SAME INFORMATION ON BATES PAGE 1951 ARE INCORPORATED BY REFERENCE HERE. THE FOLLOWING PERTAINS TO THE ADDITIONAL INFORMATION ON THIS |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 126 of 359

TFFC AND RUSSIA VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | investigation related to a bilateral project investigating terrorist financing through a particular terrorist organization. NOTE: THIS PAGE CONTAINS MOSTLY THE SAME INFORMATION ON BATES PAGE 1951 (ABOVE). ADDITIONAL INFORMATION:  This page also contains a portion of a subsequent email in the string from a FinCEN advisor dated Monday, March 13, 2017, 12:48 PM with the same email title. | | PAGE.  Redacted in part – Redacted personal comments, assessment and characterizations regarding Rosfinmonitoring's conduct in the course of investigative efforts related to a bilateral project investigating terrorist financing through a particular terrorist organization. Redacted the name of a FinCEN advisor. EXEMPTION 5 (deliberative process) is asserted to personal comments, assessment and characterizations regarding Rosfinmonitoring's conduct in the course of investigative efforts related to a bilateral project.  This information reflects only the view of the author and was part of an internal discussion concerning pending investigative exchanges of law enforcement information.  This information is withheld to protect FinCEN's deliberative process because disclosure would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the name of a FinCEN advisor whose duties and responsibilities include targeting terrorist financing investigative efforts with foreign law enforcement counterparts through, among other things, investigative |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | exchanges of information to facilitate detection and disruption of terrorist financing, money laundering and related financial crimes domestic and abroad.  This individual maintains a substantial privacy interest because the individual is associated with sensitive and potentially high-profile investigative efforts into terrorist financing and financial crimes through the individual's work that could subject the individual to undue public scrutiny or harassment.  Additionally, the advisor is not a political employee, and is below the level of Deputy Assistant Secretary, and therefore plays no substantive role in the policy-making process.  Treasury has consistently protected the identities of such employees.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose this advisor to unwarranted invasion of personal privacy. |
| TFFC_00002046 TFFC_00002047 TFFC_00002048 TFFC_00002049 TFFC_00002050 **TFFC_00002051** TFFC_00002052 | Page 6 of a 7-page email string titled "FW: Follow Up with Rosfinmonitoring" among TFFC and FinCEN personnel concerning a February 2017 meeting and the status of certain investigative requests for information on specific targets of investigation related to a bilateral project investigating terrorist financing through a particular terrorist organization. | (b)(5) DP (b)(5) CCD (b)(6) (b)(7)(C) | THE EXEMPTIONS AND JUSTICIFICATIONS ASSERTED TO WITHHOLD THE SAME INFORMATION ON BATES PAGES 1951 and 2001 ARE INCORPORATED BY REFERENCE HERE. |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | NOTE: THIS PAGE CONTAINS PORTIONS OF THE INFORMATION ON BATES PAGES 1951 AND 2001 (ABOVE) AND IS WHOLLY DUPLICATIVE OF THOSE PAGES. ADDITIONAL INFORMATION:  None. | | |
| TFFC_00002097 TFFC_00002098 TFFC_00002099 TFFC_00002100 **TFFC_00002101** | Page 5 of a 5-page email string titled "RE: Brainstorm" among TFFC and FinCEN personnel discussing the nature and contours of a potential bilateral meeting with Rosfinmonitoring, the sensitive context of the meeting, and possible courses of action related to a bilateral project investigating terrorist financing through a particular terrorist organization. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the substantive description of a notional agenda for and contours of a potential bilateral meeting, sensitive contextual information, and possible courses of action in advance of any meeting.  Redacted the name of a TFFC advisor. EXEMPTION 5 (deliberative process) is asserted to the substantive description of a notional agenda for and contours of a potential bilateral meeting, sensitive contextual information, and possible courses of action in advance of any meeting.  This information constitutes the initial thoughts of a TFFC advisor attempting to outline some very basic ideas for a proposed meeting related to a bilateral project investigating terrorist financing through a particular terrorist organization.  This information was being shared with other TFFC and FinCEN personnel as part of a pre-decisional and deliberative internal discussion and is withheld to protect the deliberative process of the TFI/TFFC and FinCEN.  Disclosure would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the name of a TFFC advisor whose duties and responsibilities include targeting terrorist financing investigative efforts with foreign law enforcement counterparts through, among other things, investigative exchanges of information to facilitate detection and disruption of terrorist financing, money laundering and related financial crimes domestic and abroad.  This individual maintains a substantial privacy interest because the individual is associated with sensitive and potentially high-profile investigative efforts into terrorist financing and financial crimes through the individual's work that could subject the individual to undue public scrutiny or harassment.  Additionally, this advisor is not a political employee, and is below the level of Deputy Assistant Secretary, and therefore plays no substantive role in the policy-making process. Treasury has consistently protected the identities of such employees.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose this advisor to unwarranted invasion of personal privacy. |

# EXHIBIT K

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| **TFI_00000001** | Page 1 of a 1-page email titled "RE: TFI Institutional Perspectives" between Treasury personnel proposing a meeting to discuss ideas for improving the Office of Terrorist Finance and Intelligence (TFI) as an institution. TFI marshals the department's intelligence and enforcement functions to sever the lines of financial support to international terrorists, weapons of mass destruction proliferators, narcotics traffickers, money launderers, and other threats to our national security.  TFI also oversees several component offices and bureaus, including the Office of Terrorist Financing and Financial Crime (TFFC) responsible for formulating and coordinating the counter terrorist financing and anti-money laundering efforts of the Department of the Treasury; the Office of Intelligence and Analysis (OIA) responsible for intelligence functions, integrating Treasury into the larger intelligence community (IC), and providing support to both Treasury leadership and the IC; the Office of Foreign Assets Control (OFAC), which administers and enforces economic and trade sanctions; and the Financial Crimes Enforcement Network (FinCEN), which is responsible for administering the Bank | (b)(6) (b)(7)(C) | Redacted in part - Redacted names, email addresses, and direct phone numbers of TFI (TFFC) personnel. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of TFI (TFFC) personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these TFI (TFFC) personnel to unwarranted invasion of their personal privacy. |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
| | Secrecy Act ("BSA"), the United States' comprehensive federal anti-money laundering and countering the financing of terrorism statute.  TFI and its organizational components are designated as a law enforcement organization of the Department of the Treasury.  31 USC 312(d). | | |
| TFI_00000050 **TFI_00000051** | Page 2 of a 2-page email titled "RE: TFI Realignment Meetings with Components" among TFI (TFFC) senior advisors concerning announcement of a proposed TFI organizational realignment under consideration and meetings with TFI components. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted description of Acting Under Secretary Adam Szubin's preferences for announcing the proposed realignment and author's beliefs as to what those plans entail prior to announcement.  Redacted names, email addresses, and direct phone numbers of TFI (TFFC) personnel. EXEMPTION 5 (deliberative process) is asserted to pre-decisional and deliberative planning and proposed courses of action regarding Acting Under Secretary Szubin's preferences for announcing the proposed realignment and author's beliefs as to what those plans entail prior to announcement to protect the deliberative process of the Treasury Department.  The remarks reflect personal preferences and beliefs that were deliberative and are part of a senior level internal, pre-decisional discussion among TFI (TFFC) senior advisors which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of TFI (TFFC) personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these TFI (TFFC) personnel to unwarranted invasion of their personal privacy. |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 135 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| TFI_00000097 TFI_00000098 TFI_00000099 TFI_00000100 **TFI_00000101** | Page 5 of a 5-page draft PowerPoint presentation titled "Working TFI Quad Charts" presenting notional information for discussion among TFI leadership and input by TFI components and special staff prepared for an initial meeting of the TFI Executive Steering Group (ESG) scheduled for August 12, 2016. | (b)(5) DP | EXEMPTION 5 (deliberative process) is asserted to pre-decisional and deliberative information concerning notional planning and proposed courses of action regarding proposed TFI organizational realignment under consideration to protect the deliberative process of the U.S. Department of Treasury.  TFI was never realigned. There was no final decision to realign TFI, and except for minor structural changes within the TFI front office, the other realignment proposals were never finalized or implemented, and further development of the overall proposal was not undertaken.  This presentation of notional information was developed in the course of examining proposed realignment concepts during ongoing deliberations concerning how TFI might be realigned to improve organizational efficiency and effectiveness.  The discussion is part of an internal senior level process evaluating realignment concepts, including proposed staffing models, modifications of TFI component functional roles and responsibilities to improve efficiency and effectiveness, relocation of certain staff for better organizational and strategic integration, and measurements of TFI employee concerns, support, and professional development. Disclosure of this pre-decisional and deliberative information and process regarding notional concepts would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 136 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00000150 **TFI_00000151** TFI-00000153 | Page 1 of a 3-page draft document containing questions and answers regarding contemplated modifications to FinCEN's budget request for FY 2017 to reflect the potential impact of certain aspects of the proposed TFI realignment. | (b)(5) DP | Redacted in full – Redacted the nonfinal draft questions and answers, editorial comments, edits and highlighted text regarding contemplated modifications to FinCEN's budget request and descriptions of the potential impact of certain aspects of the proposed TFI realignment. EXEMPTION 5 (deliberative process) is asserted to pre-decisional and deliberative information presented in an initial draft of questions and answers, editorial comments, proposed edits and highlighting of text ascribed for emphasis and import regarding contemplated modifications to FinCEN's budget request and descriptions of the potential impact of certain aspects of the proposed TFI realignment under consideration to protect the deliberative process of FinCEN.  The initial draft document is part of an internal, pre-decisional discussion among senior FinCEN personnel to assess and explain possible changes to FinCEN's budget request to support a TFI realignment under consideration which, if disclosed, would reveal the sensitive give-and-take of the budgetary process internal to Treasury and FinCEN and foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 137 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00000198-200 **TFI_00000201** TFI_00000198-216 | Page 4 of a 19-page nonfinal draft document describing and analyzing elements of proposed staffing models under consideration for the proposed realignment.  This page contains two graphics depicting certain proposed staffing models relating to realignment scenarios under consideration. | (b)(5) DP | Redacted in full - Redacted the nonfinal draft version of two graphics and data attempting to depict by percentages the functional impact to discrete types of work performed by a select number of full-time employees (FTE) in three identified TFI strategic mission areas under a proposed staffing model relating to realignment scenarios being considered. EXEMPTION 5 (deliberative process) is asserted to draft depictions of notional staffing elements and selected data under analysis and consideration to include percentages and types of work performed in three identified TFI mission areas and number of FTE proposed in support of a TFI organizational realignment to protect the deliberative process of the Treasury Department. The discussion is part of an internal, pre-decisional and deliberative discussion among senior TFI personnel to evaluate elements of certain staffing models under consideration that were never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | were not in fact the grounds for the action ultimately taken. |
| TFI_00000236-250 **TFI_00000251** TFI_00000252-254 | Page 16 of a 19-page nonfinal draft document describing and analyzing elements of proposed staffing models under consideration for the proposed realignment.  This page contains a table outlining certain programmatic and operational activities specific to one TFI strategic mission area and identifying scope of duty limitations impacting realignment scenarios under consideration. | (b)(5) DP | Redacted in full – Redacted a nonfinal draft table reflecting analysis of certain programmatic and operational activities specific to one TFI strategic mission area and identifying perceived scope of duty limitations impacting realignment scenarios under consideration.EXEMPTION 5 (deliberative process) is asserted to notional staffing models under analysis and consideration to include analysis of certain programmatic and operational activities specific to one TFI strategic mission area and identifying perceived scope of duty limitations impacting realignment scenarios under consideration to protect the deliberative process of the Treasury Department.  The discussion is part of an internal, pre-decisional and deliberative discussion among senior TFI personnel to evaluate elements of certain staffing models under consideration that were never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| **TFI_00000301** | Page 1 of a 1-page email titled "FW: Meeting to define and document OIA/FinCEN detailees' mission, vision, | (b)(6) (b)(7)(C) | Redacted in part – Redacted names and email addresses of TFI (TFFC/OIA/FinCEN) personnel. EXEMPTION 6 and 7C (privacy interests) is |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | and metrics" among Treasury personnel regarding a proposed meeting. | | asserted to protect from disclosure the identities of TFI personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these TFI personnel to unwarranted invasion of their personal privacy. |
| **TFI_00000351** TFI_00000352 | Page 1 of a 2-page draft document titled "TFI Executive Steering Group (ESG) (8/18/16)" summarizing an ESG meeting, topics and issues discussed and proposed | (b)(5) DP | Redacted in part – Redacted portions of the draft document containing descriptions of key pillars of the proposed realignment and design elements under consideration, including select factual matters identified as hallmarks of the realignment |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | courses of action under consideration for the proposed TFI realignment. | | planning and reflecting incremental progress on developmental aspects of the realignment; descriptions of issues of concern for ongoing consideration and development by the ESG; descriptions of strategic goals and proposed interim measures to address perceived build-out gaps in the proposed realignment. EXEMPTION 5 (deliberative process) is asserted to pre-decisional and deliberative information concerning notional planning and proposed courses of action regarding proposed TFI organizational realignment under consideration to protect the deliberative process of the Treasury Department.  Descriptions of key pillars of the proposed realignment and design elements under consideration, including select factual matters identified as hallmarks of the realignment planning and reflecting incremental progress on developmental aspects of the realignment reveal the deliberative process contours of the ESG, its purpose, process, planning and goals. Descriptions of issues of concern for ongoing consideration and development by the ESG, strategic goals and proposed interim measures to address perceived build-out gaps in the proposed realignment further reveal pre-decisional and deliberative information concerning the proposed realignment.  These matters are part of a sensitive and high-level discussion among senior TFI personnel to evaluate and monitor progress of proposed design elements of under consideration, |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | and except for minor structural changes within the TFI front office, these design elements were never implemented.  Release of this information would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00000398 TFI_00000399 TFI_00000400 **TFI_00000401** TFI_00000402 TFI_00000403 TFI_00000404 TFI_00000405 TFI_00000406 TFI_00000407 TFI_00000408 TFI_00000409 TFI_00000410 TFI_00000411 TFI_00000412 | Page 4 of a revised 19-page nonfinal draft document describing and analyzing elements of proposed staffing models under consideration for the proposed realignment.  This page contains two graphics depicting certain proposed staffing models relating to realignment scenarios under consideration. | (b)(5) DP | Redacted in full - Redacted the nonfinal draft version of two graphics and selected data attempting to depict by percentages the functional impact to discrete types of work performed by a select number of full-time employees (FTE) in two discrete, specifically identified TFI strategic mission areas under a proposed staffing model relating to realignment scenarios being considered. EXEMPTION 5 (deliberative process) is asserted to draft depictions of notional staffing models and selected data under analysis and consideration to include percentages and types of work performed in two identified TFI mission areas and number of FTE proposed in support of a TFI organizational realignment to protect the deliberative process of the Treasury Department.  The discussion is part of an internal, pre-decisional and deliberative discussion among senior TFI personnel to evaluate elements of certain staffing models under consideration that were never implemented which, |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 142 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00000450 **TFI_00000451** TFI_00000452 | Page 2 of a 3-page string email among TFI (TFFC/OIA) personnel concerning a specific organizational unit under consideration as part of the proposed TFI realignment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the name of a specific organizational unit under consideration as part of the proposed TFI realignment, description of a proposed methodology for coordinating and collaborating efforts in the developmental design of the unit, and personal commentary thereon. Redacted names, email addresses, and direct phone numbers of TFI (TFFC/OIA) personnel. EXEMPTION 5 (deliberative process) is asserted to the name of a proposed type of organizational unit under consideration as part of the proposed TFI realignment, description of a proposed methodology for coordinating and collaborative efforts in the developmental design of the proposed unit, and personal commentary thereon to protect the deliberative process of the Treasury Department.  This information reveals very preliminary thoughts of one TFI advisor concerning a proposed methodology for coordinating and collaborative efforts in the developmental design of the proposed unit and personal remarks and assessments of some aspects. This information is part of an internal pre- |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | decisional discussion among selected experts within TFI assigned to devise and coordinate development of a proposed organizational unit which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of TFI personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 144 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these TFI personnel to unwarranted invasion of their personal privacy. |
| **TFI_00000501** TFI_00000502 TFI_00000503 | Page 1 of a 3-page email among TFI (TFFC/OIA/OFAC and FinCEN) personnel concerning a specific type of organizational unit under consideration as part of the proposed TFI realignment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the name of the proposed organizational unit, descriptions of conflicting edits to a draft document outlining the proposed design and operation of the unit, and descriptions of proposed compromises to reconcile the substantive design issues causing the conflicting edits to the draft document, including logistical issues regarding the location and technical support for the proposed organizational unit.  Redacted names, email addresses, and direct phone numbers of TFI (TFFC/OIA/OFAC and FinCEN) personnel. EXEMPTION 5 (deliberative process) is asserted to the name of a proposed organizational unit, descriptions of conflicting edits to a draft document and proposed compromises to reconcile the substantive design issues causing the conflicting edits to the draft document, including logistical issues regarding the location and technical support for the proposed unit to protect the deliberative process of the U.S. Department of Treasury.  The document was intended to provide an outline of the proposed design and operation of a new unit and was the collaborative effort of |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 145 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | several TFI sanctions experts.  The version of the draft document discussed in this email string was still being edited to address substantive descriptions of design elements which one contributor identified as areas where conflicting edits had been made to the draft and proposing specific compromises reconcile the substantive design issues causing the conflicting edits to the draft.  These descriptions of proposed edits, compromises and personal comments of a contributor reflect the give and take pre-decisional and deliberative internal discussion as part of a review and comment process and subject to further consideration.  These descriptions also reveal detailed elements of proposed design elements under consideration for the formation and operation of a proposed organizational unit.  All these matters were part of an internal, pre-decisional discussion among TFI personnel which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of TFI personnel who occupy sensitive national security positions with access to classified |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 146 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
| | | | information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these TFI personnel to unwarranted invasion of their personal privacy. |
| **TFI_00000551** TFI_00000552 | Page 1 of a 2-page email titled "RE: ESG readout and Initiatives Tracker" among TFI (TFFC/OFAC/OIA and FinCEN) and legal counsel personnel circulating a read out of a recent ESG meeting and another document titled an "Initiatives Tracker". | (b)(6) (b)(7)(C) | Redact in part - Redacted names and email addresses of TFI (TFFC/OFAC/OIA and FinCEN) and Office of the General Counsel (OGC) personnel. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of TFI and legal counsel personnel who occupy sensitive national security positions with access to |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00000601 | Page 1 of a 1-page email among TFI (TFFC) personnel requesting a draft Integrated Management Team (IMT) plan for a specific TFI realignment proposal. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the subject of a draft plan regarding the formation of a proposed type of organizational unit under consideration as part of the proposed TFI realignment.  Redacted names, email addresses, and direct phone numbers of TFI (TFFC) personnel.  EXEMPTION 5 (deliberative process) is asserted to the subject of the draft IMT plan under |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 148 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | consideration as part of the proposed TFI realignment to protect the deliberative process of the TFI.  The draft plan was still being circulated for review and comment and not final.  Moreover, the subject of the draft plan identifies a specific type of organizational unit being proposed as part of the realignment under consideration.  This information is sensitive, not public and part of an internal pre-decisional discussion among senior TFI personnel about the formation of a new unit which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of TFI personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these TFI personnel to unwarranted invasion of their personal privacy. |
| TFI_00000696 TFI_00000697 TFI_00000698 TFI_00000699 TFI_00000700 **TFI_00000701** | Page 6 of a 6-page draft working paper titled "TFI Functional Alignment Briefing  September X, 2016 0:00-0:00 [Location]". | (b)(5) DP | Redacted in full - Redacted entirety of page 6 marked as "Draft/Pre-Decisional Staff Working Paper" presenting in bulleted fashion five draft questions and answers, including redline edits, describing a specific staffing design element under consideration for the proposed realignment that were being prepared for an anticipated congressional briefing on the TFI realignment. EXEMPTION 5 (deliberative process) is asserted to notional draft questions and answers and edits describing a specific staffing design element under consideration for the proposed realignment to protect the deliberative process of the U.S. Department of Treasury.  The draft questions and answers are notional explanations of a particular staffing component of the proposed realignment and the "how and why" of the proposal.  The |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 150 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | working paper and the information on this page were in draft undergoing review and editing and not the final paper crafted for an anticipated congressional briefing at a to be determined date and location in September of 2016.  This information is part of an internal pre-decisional discussion among senior TFI personnel about what information needed to be conveyed in a congressional briefing explaining the proposed TFI realignment which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00000747 TFI_00000748 TFI_00000749 TFI_00000750 **TFI_00000751** TFI_00000752 TFI_00000753 TFI_00000754 TFI_00000755 | Page 5 of a 9-page revised draft working paper titled "TFI Functional Alignment Briefing  September X, 2016 0:00-0:00 [Location]". | (b)(5) DP | Redacted in full - Redacted entirety of page 5 marked as "Draft/Pre-Decisional Staff Working Paper" presenting in bulleted fashion seven draft questions and answers, including redline edits, describing three proposed organizational changes under consideration for the proposed realignment that were being prepared for an anticipated congressional briefing on the TFI realignment. EXEMPTION 5 (deliberative process) is asserted to a revised notional draft questions and answers and edits describing three proposed organizational changes under consideration for the proposed realignment to protect the deliberative process of |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | the U.S. Department of Treasury.  The nonfinal draft questions and answers are notional explanations of three proposed organizational changes and provide very specific details of the "how and why" of these proposed changes.  The working paper and the information on this page were in draft undergoing review and editing and not the final paper crafted for an anticipated congressional briefing at a to be determined date and location in September of 2016.  This information is part of an internal pre-decisional discussion among senior TFI personnel about what information needed to be conveyed in a congressional briefing explaining the proposed TFI realignment which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| **TFI_00000801** TFI_00000802 | Page 1 of a 2-page email among TFI (TFFC/OIA) personnel concerning the subject of a draft IMT paper. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part - Redacted the subject of a draft IMT paper identifying a proposed type of organizational unit under consideration as part of the proposed TFI realignment under consideration and portions of personal commentary on certain problems in coordinated review of another version of the paper prior to a briefing of Acting Under Secretary Szubin.  Redacted names, email |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 152 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | addresses, and direct phone numbers of TFI (TFFC/OIA) personnel. EXEMPTION 5 (deliberative process) is asserted to the subject of the nonfinal draft paper identifying a proposed type of organizational unit under consideration as part of the proposed TFI realignment and personal commentary on internal coordination problems for review of another version of the paper to protect the deliberative process of the Treasury Department.  The paper was drafted by sanctions experts to provide an outline of the proposed design and operation of a new unit and intended to be part of a senior level briefing of Acting Under Secretary Szubin on the matter for additional consideration and development.  The subject of the paper identifies the new type of unit being proposed.  This information is sensitive, not public and part of an internal pre-decisional discussion among senior TFI personnel about the formation of the new unit; and the personal commentary on perceived coordination problems reveals specific critiques reflecting the back-and-forth of internal pre-decisional and deliberative matters which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 153 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | action ultimately taken.<br>EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of TFI  personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these TFI personnel to unwarranted invasion of their personal privacy. |
| TFI_00000846<br>TFI_00000847<br>TFI_00000848 | Page 6 of an 8-page nonfinal draft document titled "Department of the | (b)(5) DP | Redacted in full – Redacted entirety of page 6 description of certain elements, standards, weighting and relevance to strategic plan and |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 154 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| TFI_00000849 TFI_00000850 **TFI_00000851** TFI_00000852 TFI_00000853 | Treasury, Departmental Offices, Employee Performance Appraisal Form". | | organizational goals of a notional performance appraisal form under consideration as part of the proposed TFI realignment. EXEMPTION 5 (deliberative process) is asserted to entirety of page 6 description of certain elements, standards, weighting and relevance to strategic plan and organizational goals of a notional performance appraisal form under consideration that was created to illustrate what an appraisal would look like for a specific new position and grade proposed under the realignment to protect the deliberative process of the Treasury Department.  The notional draft form and descriptions of the aspects of the performance elements are part of an internal, pre-decisional discussion among senior Treasury personnel evaluating the appropriate criteria for performance appraisals for a new position proposed under the realignment which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00000897 TFI_00000898 TFI_00000899 TFI_00000900 | Page TFI_00000901 Released in Full. Page TFI_00000902 was added and it is Page 6 of a 6-page nonfinal draft document titled "Department of the | (b)(5) DP | Redacted in full – Redacted entirety of page 6 description of certain elements, standards, weighting and relevance to strategic plan and organizational goals of a notional performance appraisal form under consideration as part of the |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 155 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| **TFI_00000901**<br>**TFI_00000902** | Treasury, Departmental Offices, Employee Performance Appraisal Form". | | proposed TFI realignment.<br>EXEMPTION 5 (deliberative process) is asserted to entirety of page 6 description of certain elements, standards, weighting and relevance to strategic plan and organizational goals of a notional performance appraisal form under consideration that was created to illustrate what an appraisal would look like for a specific new position and grade proposed under the realignment to protect the deliberative process of the Treasury Department.  The notional draft form and descriptions of the aspects of the performance elements are part of an internal, pre-decisional discussion among senior Treasury personnel evaluating the appropriate criteria for performance appraisals for a new position proposed under the realignment which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00000950<br>**TFI_00000951**<br>**TFI_00000952**<br>TFI_00000953<br>TFI_00000954<br>TFI_00000955<br>TFI_00000956 | Page **TFI_00000951 Released in Full**. Page TFI_00000952 was added and it is Page 3 of a 13-page PowerPoint presentation titled "Near-Term Institutional Strategy, Acting Under Secretary Adam Szubin, TFI Principals Meeting - July 22 2016". | (b)(5) DP | Redacted in part – Redacted the 6 bullet-points presenting a frank, critical assessment of organizational, operational, functional and performance areas challenging and/or limiting the ability of TFI and its constituent components to most efficiently and effectively achieve its strategic goals and mission. |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 156 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| TFI_00000957<br>TFI_00000958<br>TFI_00000959<br>TFI_00000960<br>TFI_00000961<br>TFI_00000962 | | | EXEMPTION 5 (deliberative process) is asserted to descriptions and details of frank, critical assessment specific organizational, operational, functional and performance areas identified as challenging and/or limiting TFI and its constituent components to protect the deliberative process of TFI.  Developed as part of an initial exercise by TFI leadership to critically review and assess how TFI is organized, the roles and functions of its components, and areas where TFI could improve, this information is highly sensitive, deliberative and pre-decisional.  Disclosure would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00000998<br>TFI_00000999<br>TFI_000001000<br>**TFI_000001001**<br>TFI_000001002<br>TFI_000001003<br>TFI_000001004 | Page 4 of a 7-page nonfinal draft document titled "Department of the Treasury, Departmental Offices, Employee Performance Appraisal Form". | (b)(5) DP | Redacted in full – Redacted entirety of page 4 description of certain elements, standards, weighting and relevance to strategic plan and organizational goals of a notional performance appraisal form under consideration as part of the proposed TFI realignment.<br>EXEMPTION 5 (deliberative process) is asserted to entirety of page 6 description of certain elements, standards, weighting and relevance to strategic plan and organizational goals of a notional performance appraisal form under consideration that was created to illustrate what an |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 157 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | appraisal would look like for a specific new position and grade proposed under the realignment to protect the deliberative process of the Treasury Department.  The notional draft form and descriptions of the aspects of the performance elements are part of an internal, pre-decisional discussion among senior Treasury personnel evaluating the appropriate criteria for performance appraisals for a new position proposed under the realignment which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| **TFI_00001051** TFI_00001052 TFI_00001053 TFI_00001054 | Page 1 of a 4-page document describing a proposed approach to realigning certain components of TFI, delineating functions, operations and strategic alignments, and providing assessments of key aspects of the proposal and identification of key issue areas to be addressed. | (b)(5) DP | Redacted in full - Redacted all substantive details of a proposed approach to realigning certain components of TFI, delineating functions, operations and strategic alignments, and providing assessments, critiques and recommendations regarding key aspects of the proposal and identification of key issue areas to be addressed. EXEMPTION 5 (deliberative process) is asserted to all substantive details of a proposed approach to realigning certain components of TFI, delineating functions and operations and strategic alignments, and providing assessments, critiques and recommendations regarding key aspects of the proposal and identification of key issue areas to be |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 158 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | addressed under consideration as part of the proposed TFI realignment to protect the deliberative process of the U.S. Department of Treasury.  The draft document was prepared for senior TFI principals as part of an internal, pre-decisional discussion evaluating specific ways to design or modify proposed elements of the realignment which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00001099 TFI_00001100 **TFI_00001101** TFI_00001102 | Page 3 of a 4-page email string among FinCEN personnel concerning a request for legal advice from FinCEN's Office of Chief Counsel regarding a specific staffing proposal under consideration for the proposed TFI realignment. | (b)(5) AC (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the title of the email identifying a specific staffing proposal for which legal advice is sought and the substantive portion of the email citing legal authority which is the subject of the request for legal advice, as well as personal views, characterizations, opinions and interpretations of legal authorities concerning the specific issue for which legal advice is sought. Redacted the names and email addresses of FinCEN personnel. EXEMPTION 5 (privileged attorney-client communications) is asserted to the title and substantive portion of the email identifying a specific staffing proposal and legal authority for which legal advice is sought from FinCEN's Office of Chief Counsel, as well as personal views, |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
|  |  |  | characterizations, opinions and interpretations of legal authorities. The subject of the email and its substance are part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature of matters encompassed by the privilege and would impair the ability of FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (deliberative process) is asserted to the title and substantive portion of the email identifying a specific staffing proposal under consideration and personal views, characterizations, opinions and interpretations of legal authorities that is pre-decisional and deliberative in nature to protect the deliberative process of FinCEN regarding a proposal under consideration for the proposed TFI realignment. This information was part of an internal discussion among senior FinCEN personnel trying to understand and apply legal authorities relevant to a proposed design element of the realignment which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | asserted to protect from disclosure the identities of FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00001146 TFI_00001147 TFI_00001148 TFI_00001149 TFI_00001150 | Page 6 of an 8-page nonfinal Microsoft Excel "Worksheet1" containing detailed information concerning certain proposed staffing models relating to realignment scenarios under consideration.  This page | (b)(5) DP | Redacted in full - Redacted the nonfinal draft page of the worksheet with graphics and selected data attempting to depict by percentages the functional impact to discrete types of work performed by a select number of full-time employees (FTE) in one |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| **TFI_00001151** TFI_00001152 TFI_00001153 | contains a graphic and selected data depicting a certain proposed staffing model relating to realignment scenarios under consideration. | | discrete, specifically identified TFI strategic mission area under a proposed staffing model relating to realignment scenarios being considered. EXEMPTION 5 (deliberative process) is asserted to the draft depiction and selected data of notional staffing elements and related workforce data under analysis and consideration to include percentages and types of work performed in one identified TFI mission area and number of FTE proposed in support of a TFI organizational realignment to protect the deliberative process of the Treasury Department.  The discussion is part of an internal, pre-decisional and deliberative discussion among senior TFI personnel to evaluate elements of a certain staffing model under consideration that was never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00001196 TFI_00001197 TFI_00001198 TFI_00001199 TFI_00001200 **TFI_00001201** TFI_00001202 | Page 6 of a 7-page email string circulating to TFI (TFFC/OFAC/OIA and FinCEN) personnel seeking review and comments on a draft concept paper concerning certain aspects of the proposed TFI realignment under consideration. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the subject of the email on page 6 identifying a specific type of organizational unit being proposed as part of the realignment under consideration, descriptions of a potential misperception of the contours of an element of the realignment proposal and commentary reflecting the personal views, |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | opinions, critique and concerns regarding a proposed element of the realignment and suggested process to resolve potential areas of disagreement.  Redacted the names and email addresses of TFI (TFFC/OFAC/OIA and FinCEN) personnel. EXEMPTION 5 (deliberative process) is asserted to subject of the email on page 6 identifying a specific type of organizational unit being proposed as part of the realignment under consideration, descriptions of a potential misperception of the contours of the proposed team and commentary reflecting the personal views, opinions, critique and concerns regarding that aspect of the proposed realignment and suggested process to resolve potential areas of disagreement to protect the deliberative process of TFI.  These matters are part of an internal discussion among senior TFI personnel attempting to develop the contours of a new unit which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of TFI personnel who occupy sensitive national security positions with access to classified |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these TFI personnel to unwarranted invasion of their personal privacy. |
| **TFI_00001251** TFI_00001252 | Page 1 of a 2-page email titled "FW: FinCEN and TFI realignment – OMB" among FinCEN personnel. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – The portion of the message describing cautionary instructions from OMB about prematurely discussing the TFI realignment with Congress and personal comments, views, and opinions regarding any similar discussions with outside stakeholders. Redacted the names and email addresses of FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 164 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | to a portion of the message describing cautionary instructions from OMB about prematurely discussing the TFI realignment with Congress and personal comments, views, and opinions regarding any similar discussions with outside stakeholders that are pre-decisional and deliberative in nature to protect the deliberative process of FinCEN.  This information was part of an internal discussion among senior FinCEN personnel to maintain the integrity of the agency's deliberative process which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00001301 | Page 1 of a 1-page nonfinal draft document outlining in bulleted format the details of a specific staffing proposal under consideration for the proposed TFI realignment. | (b)(5) DP | Redacted in full - Redacted title and substantive details of a staffing proposal concerning the identification of a select group of employees to perform work within a prescribed set of substantive parameters as a proposed means to realign certain functional aspects of component offices to support TFI's mission.  Redacted internal edits, editorial and substantive comments, and personal views, opinions, characterizations and beliefs of commentors.<br>EXEMPTION 5 (deliberative process) is asserted to the title  and substantive details of the staffing proposal concerning identification of a select group of employees to perform work within a prescribed set of substantive parameters as a proposed means to realign certain functional aspects of component offices to support TFI's |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | mission and the reviewer comments, assessments, and opinions concerning the details of the proposal to protect the deliberative process of FinCEN. This nonfinal draft document presents in great detail the prescribed set of work parameters and substantive knowledge requirements for this staffing proposal and is heavily edited with reviewer comments, assessments, and opinions concerning the details of the proposal. The staffing proposal and all substantive details proposed in this document were under consideration and development and were never implemented.  These matters and the reviewer comments were part of an internal pre-decisional and deliberative discussion among TFI and FinCEN personnel which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| **TFI_00001351** TFI_00001352 | Page 1 of a 2-page nonfinal draft document outlining in bulleted format the details of a specific staffing proposal under consideration for the proposed TFI realignment.  This a subsequent draft of the document described in Bates page 1301 (above). | (b)(5) DP | Redacted in full - Redacted title and substantive details of a staffing proposal concerning the identification of a select group of employees to perform work within a prescribed set of substantive parameters as a proposed means to realign certain functional aspects of component offices to support TFI's mission.  Redacted internal edits, editorial and substantive comments, |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | and personal views, opinions, characterizations and beliefs of commentors. EXEMPTION 5 (deliberative process) is asserted to the title  and substantive details of the staffing proposal concerning identification of a select group of employees to perform work within a prescribed set of substantive parameters as a proposed means to realign certain functional aspects of component offices to support TFI's mission and the reviewer comments, assessments, and opinions concerning the details of the proposal to protect the deliberative process of FinCEN. This nonfinal draft document presents in great detail the prescribed set of work parameters and substantive knowledge requirements for this staffing proposal and is heavily edited with reviewer comments, assessments, and opinions concerning the details of the proposal. The staffing proposal and all substantive details proposed in this document were under consideration and development and were never implemented.  These matters and the reviewer comments were part of an internal pre-decisional and deliberative discussion among TFI and FinCEN personnel which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 168 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
| | | | rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00001399 TFI_00001400 **TFI_00001401** | Page 3 of a 3-page email string among TFI (TFFC/OFAC/OIA and FinCEN) and OGC personnel concerning a staffing proposal under consideration as part of the proposed TFI realignment. | (b)(5) AC (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part - Redacted the subject substantive portion of the email on page 3 identifying and describing a specific staffing proposal related to developing new positions within TFI, a proposed method for filling those positions, a parallel workstream item under development and anticipated proposed courses of action which were the subject of a request for legal advice.  Redacted the names and email addresses of TFI and OGC personnel. EXEMPTION 5 (privileged attorney-client communications) is asserted to the title and substantive portion of the email identifying a specific staffing proposal, proposed method for filling new positions and a parallel workstream item under development for which legal advice is sought.  The subject of the email and its substance are part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature of matters encompassed by the privilege and would impair the ability of Treasury and FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (deliberative process) is asserted to the title  and substantive portion of an email identifying a specific staffing proposal concerning developing new positions within TFI, revealing the |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 169 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | proposed method for filling the proposed new positions, identifying a parallel workstream item under development and detailing anticipated proposed courses of action to protect the deliberative process of TFI.  These matters were part of an internal pre-decisional and deliberative discussion among senior TFI and OGC personnel trying to build out a process for development of the staffing proposal which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of TFI and OGC personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti- |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00001449 TFI_00001450 **TFI_00001451** TFI_00001452 TFI_00001453 TFI_00001454 | Page 3 of a 6-page nonfinal draft legal memorandum dated October __, 2016 from FinCEN Chief Counsel responding to a request for legal advice concerning certain aspects of the proposed TFI realignment. | (b)(5) AC (b)(5) WP (b)(5) DP | Redacted in full – Redacted the title and substance of the nonfinal draft memorandum analyzing certain legal authorities and their application to a proposed element under consideration for the TFI realignment, draft legal opinions and conclusions, internal reviewer comments, assessments, edits, and opinions of an editorial nature. EXEMPTION 5 (privileged attorney-client communications) is asserted to the title and substance of the nonfinal draft legal memorandum identifying the specific matter for which legal advice is sought and revealing draft legal analysis |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 171 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | and opinions concerning proposed element of the realignment for which legal advice is sought.  The draft memorandum was part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature of matters encompassed by the privilege and would impair the ability of Treasury and FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (attorney work-product) is asserted to the nonfinal draft legal memorandum which reveals draft legal analysis and opinions prepared by attorneys in FinCEN's Chief Counsel's office concerning proposed element of the realignment in reasonable anticipation of potential litigation.  This information is attorney work-product, the release of which would expose attorneys' preparation materials to scrutiny, harming the adversarial trial process. EXEMPTION 5 (deliberative process) is asserted to the title  and substance of the draft memorandum identifying a proposed element of the realignment under consideration, and the analysis, edits and commentary therein that are pre-decisional and deliberative in nature to protect the deliberative process of FinCEN.  This draft memorandum was part of an internal effort among senior FinCEN personnel to obtain guidance regarding a proposed element of the realignment which, if disclosed, would foreseeably jeopardize the candid |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00001496 TFI_00001497 TFI_00001498 TFI_00001499 TFI_00001500 **TFI_00001501** | Page 6 of a 6-page draft legal memorandum dated November __, 2016 from FinCEN Chief Counsel responding to a request for legal advice concerning certain aspects of the proposed TFI realignment.  This a subsequent draft of the legal memorandum described in Bates page 1451 (above). | (b)(5) AC (b)(5) WP (b)(5) DP | Redacted in full – Redacted substance of the final page of the draft legal memorandum presenting a portion of the legal conclusion reached based on interpretation of certain legal authorities and their application to a proposed element under consideration for the TFI realignment, and references identifying other internal documents relevant to the proposed realignment element that were analyzed in the draft legal opinion. EXEMPTION 5 (privileged attorney-client communications) is asserted to the last page of the draft legal memorandum describing the specific matter for which legal advice is sought and revealing draft legal analysis and opinions concerning proposed element of the realignment for which legal advice is sought.  This information was part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature of matters encompassed by the privilege and would impair the ability of Treasury and FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 173 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
|       |                              |                        | EXEMPTION 5 (attorney work-product) is asserted to the last page of the draft legal memorandum which reveals draft legal analysis and opinions prepared by attorneys in FinCEN's Chief Counsel's office concerning proposed element of the realignment in reasonable anticipation of potential litigation.  This information is attorney work-product, the release of which would expose attorneys' preparation materials to scrutiny, harming the adversarial trial process. EXEMPTION 5 (deliberative process) is asserted to last page of the nonfinal draft legal memorandum presenting a portion of the legal conclusion reached based on interpretation of certain legal authorities and their application to a proposed element under consideration for the TFI realignment, and references identifying other internal documents relevant to the proposed realignment element that were analyzed in the draft legal opinion.  It was part of an internal effort among senior FinCEN personnel to obtain guidance regarding a proposed element of the realignment which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| **TFI_00001601** TFI_00001602 TFI_00001603 TFI_00001604 TFI_00001605 | Page 1 of a 5-page email string titled "FW: Developing an initial rollout plan on Adam's realignment effort" among FinCEN personnel discussing a specific classified draft working-level document under development regarding the proposed TFI realignment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part - Redacted the description of the type of classified working paper being drafted that would reveal the nature of certain proposed structural details of the realignment under consideration and discussion of proposed coordination procedures to allow further review of the classified document among FinCEN personnel. Redacted the names and email addresses of Treasury and FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to the description of the type of classified nonfinal working paper being drafted that would reveal the nature of certain proposed structural details of the realignment under consideration and discussion of proposed coordination procedures for review of the document to protect the deliberative process of FinCEN.  This information is part of an internal pre-decisional and deliberative discussion among senior FinCEN personnel concerning sensitive classified elements of the development of realignment planning which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00001650 **TFI_00001651** | Page 2 of a 2-page email string titled "RE: Town Hall Questions" among FinCEN personnel preparing two versions of draft questions and answers for discussion at a TFI all-hands Town | (b)(5) DP | Redacted in part – Redacted substantive portions of internal discussion detailing the content of an additional proposed question and distinctions between two versions of draft Q&A under consideration and review by senior FinCEN and TFI personnel, personal comments, assessments, |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | Hall meeting regarding the proposed TFI realignment. | | and opinions concerning substantive issues discussed in the Q&A and procedural choices regarding circulation for further review, and proposed courses of action for discussion before the planned Town Hall.  Redacted the names and email addresses of FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to the portions of discussion detailing the content of an additional proposed question and distinctions between two versions of draft Q&A, personal comments, assessments, and opinions concerning substantive issues discussed in the Q&A and procedural choices regarding circulation for further review, and proposed courses of action for discussion before the planned Town Hall to protect the deliberative process of FinCEN.  This information is part of an internal pre-decisional and deliberative discussion among senior FinCEN personnel the content and development of a set of nonfinal draft Q&A to be used in a planned TFI Town Hall meeting which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 177 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| **TFI_00001701**<br>TFI_00001702<br>TFI_00001703 | Page 1 of a 3-page email string titled "FW: Revised documents" among FinCEN personnel forwarding several versions of draft documents regarding a specific staffing proposal under consideration as part of the proposed TFI realignment. | (b)(5) DP<br>(b)(6)<br>(b)(7)(C) | Redacted in part – Redacted the titles of the draft documents identifying a specific staffing proposal under consideration as part of the proposed TFI realignment, FinCEN Deputy Director Jamal El-Hindi's personal description of his editing changes, the logic behind substantive distinctions between the versions of draft documents, preferred design elements regarding the staffing proposal and comments, critique, assessments, and opinions concerning substantive issues discussed in the documents, and strategic and procedural choices regarding presentation of proposed courses of actions regarding the TFI realignment proposal. Redacted the names and email addresses of FinCEN personnel and Amy Taylor's (CIO) email address.<br>EXEMPTION 5 (deliberative process) is asserted to the titles of the draft documents identifying a specific staffing proposal under consideration, Deputy Director El-Hindi's personal description of his editing changes, the logic behind substantive distinctions between the versions of draft documents, preferred design elements regarding the staffing proposal, his comments, critique, assessments, and opinions concerning substantive issues discussed in the documents, and his strategic and procedural choices regarding presentation of proposed courses of actions regarding the TFI realignment proposal to protect the deliberative process of FinCEN.  This information was part of an internal discussion |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | among senior FinCEN personnel presenting in confidence Mr. El-Hindi's personal views and preferences on specific staffing proposal under consideration which were never implemented and which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00001745 TFI_00001746 TFI_00001747 TFI_00001748 TFI_00001749 TFI_00001750 **TFI_00001751** TFI_00001752 TFI_00001753 TFI_00001754 TFI_00001755 TFI_00001756 TFI_00001757 TFI_00001758 TFI_00001759 TFI_00001760 TFI_00001761 TFI_00001762 TFI_00001763 TFI_00001764 TFI_00001765 TFI_00001766 | Page 7 of a 24-page revised draft document describing and analyzing elements of proposed staffing models under consideration for the proposed realignment.  This page contains two graphics depicting certain proposed staffing models relating to realignment scenarios under consideration. | (b)(5) DP | Redacted in full - Redacted the revised nonfinal draft version of two graphics and selected data attempting to depict by percentages the functional impact to discrete types of work performed by a select number of full-time employees (FTE) in two identified TFI strategic mission areas under a proposed staffing model relating to realignment scenarios being considered. EXEMPTION 5 (deliberative process) is asserted to draft depictions of notional staffing elements and selected data under analysis and consideration to include percentages and types of work performed in three identified TFI mission areas and number of FTE proposed in support of a TFI organizational realignment to protect the deliberative process of the Treasury Department. The discussion is part of an internal, pre-decisional and deliberative discussion among senior TFI personnel to evaluate elements of a certain staffing model under consideration that was never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 180 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| TFI_00001767 TFI_00001768 | | | Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00001847 TFI_00001848 TFI_00001849 TFI_00001850 **TFI_00001851** TFI_00001852 | Page 5 of a 6-page draft FinCEN PowerPoint presentation concerning workforce metrics related to FinCEN's internal consideration of a staffing proposal under consideration for the proposed TFI realignment. | (b)(5) DP | Redacted in full - Redacted title and substantive data on the page reporting initial polling results concerning logistical scenarios for a portion of FinCEN's workforce under a proposed staffing model under consideration for the proposed TFI realignment. EXEMPTION 5 (deliberative process) is asserted to the title  and substantive data on the page reporting initial polling results concerning various logistical scenarios for a portion of FinCEN's workforce under a proposed staffing model under consideration for the proposed TFI realignment to protect the deliberative process of FinCEN.  This information is part of an internal pre-decisional and deliberative discussion among senior FinCEN personnel evaluating logistical components of a proposed staffing model that was never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | were not in fact the grounds for the action ultimately taken. |
| TFI_00001897 TFI_00001898 TFI_00001899 TFI_00001900 **TFI_00001901** TFI_00001902 TFI_00001903 | Page 5 of a 7-page email string among FinCEN personnel concerning a request for legal advice from FinCEN's Office of Chief Counsel regarding a specific staffing proposal under consideration for the proposed TFI realignment. MOST OF THIS PAGE CONTAINS THE SAME INFORMATION DESCRIBED IN BATES PAGE 1101 (ABOVE). ADDITIONAL INFORMATION: This page also contains the final portion of a subsequent email under the same title at the top of the page from a FinCEN attorney responding to a request for legal advice. | (b)(5) DP (b)(5) AC (b)(5) WP (b)(6) (b)(7)(C) | THE EXEMPTIONS AND JUSTICIFICATIONS ASSERTED TO WITHHOLD THE INFORMATION ON BATES PAGE 1101 ARE INCORPORATED BY REFERENCE HERE. THE FOLLOWING PERTAINS TO THE ADDITIONAL INFORMATION ON THIS PAGE. Redacted in part – Redacted the title of the email identifying a specific staffing proposal for which legal advice is sought. Redacted the names and email addresses of FinCEN personnel. Redacted the substantive portion of the email string on page 5 citing particular legal authorities applicable to analysis of the legal issues under consideration, initial interpretations of those authorities, preliminary legal advice and guidance communicated. EXEMPTION 5 (privileged attorney-client communications) is asserted to the title of the email identifying a specific staffing proposal for which legal advice is sought and the substantive portion of the email citing legal authority which is the subject of the request and personal views, characterizations, opinions and interpretations of legal authorities concerning the specific issue for which legal advice is sought from FinCEN's Office of Chief Counsel. The subject of the email and substance of the email are part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature of matters |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | encompassed by the privilege and would impair the ability of FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (deliberative process) is asserted to the title and substantive portion of communications on page 5 citing particular legal authorities applicable to analysis of the legal issues under consideration, initial interpretations of those authorities, preliminary legal advice and guidance communicated to protect the deliberative process of FinCEN regarding a proposal under consideration for the proposed TFI realignment. This information was part of an internal discussion among FinCEN personnel trying to understand and apply legal authorities relevant to a proposed design element of the realignment which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy |
| TFI_00001945 TFI_00001946 TFI_00001947 TFI_00001948 TFI_00001949 TFI_00001950 **TFI_00001951** TFI_00001952 TFI_00001953 | Page 7 of an 11-page draft document describing and analyzing the details of a certain staffing proposal and proposed courses of action regarding the TFI realignment under consideration.  Page 7 contains a table presenting staffing metrics detailing the current staffing and functions of FinCEN employees within a particular division. | (b)(5) DP | Redacted in full – Redacted a table presenting selected staffing metrics detailing the current staffing and functions of FinCEN employees within a particular division. EXEMPTION 5 (deliberative process) is asserted to the table and data therein to protect the deliberative process of FinCEN.  The information identifies a specific division within FinCEN, it's FTE make up and operational functionalities that |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 184 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| TFI_00001954<br>TFI_00001955 | | | were being studied for possible realignment under a proposed staffing model under consideration to protect the deliberative process of FinCEN.  This selected information was an integral part of the pre-decisional and deliberative discussion among FinCEN personnel evaluating the merits of a proposed staffing model under consideration that was never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00001998<br>TFI_00001999<br>TFI_00002000<br>**TFI_00002001** | Page 4 of a 4-page email string among FinCEN personnel concerning a staffing proposal under consideration for the proposed TFI realignment. | (b)(5) DP<br>(b)(6)<br>(b)(7)(C) | Redacted in part – Redacted substantive portions of an email requesting specific internal actions be taken to facilitate collaboration on the development of certain personnel matters under consideration that need resolution prior to any further action on a staffing proposal and personal comments, views and assessments of the author regarding these matters.  Redacted the name and direct phone number of FinCEN personnel.  EXEMPTION 5 (deliberative process) is asserted to content revealing the nature and identification of specific internal actions requested to facilitate collaboration on certain personnel-related activities under consideration that needed resolution prior to any further action on a staffing |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | proposal and the personal comments, views and assessments of the author regarding these matters to protect the deliberative process of FinCEN. This information was part of an internal evaluative process regarding a staffing proposal under consideration for the realignment.  The discussion and commentary among FinCEN personnel collaborating on certain personnel-related activities under consideration reflects internal planning and the back-and-forth of pre-decisional and deliberative matters which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 186 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose FinCEN personnel to unwarranted invasion of their personal privacy. |
| **TFI_00002051** TFI_00002052 TFI_00002053 | Page 1 of a 3-page email titled "RE: RESPONSE: TFI/FinCEN OMB 1-pager" among TFI and FinCEN personnel discussing FinCEN's proposed revisions and comments to a nonfinal draft one-page document outlining certain issues concerning a proposed course of action under consideration for the proposed TFI realignment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted substantive portions detailing FinCEN's proposed revisions and comments to the nonfinal draft one-page document and internal comments, assessments, views, characterizations and descriptions of strategy concerning specific proposed courses of action regarding various staffing proposals under consideration for the proposed TFI realignment.  Redacted the names and email addresses of TFI, FinCEN and OGC personnel.  EXEMPTION 5 (deliberative process) is asserted to the substance of FinCEN's proposed revisions and comments to the draft document and internal comments, assessments, views, characterizations and descriptions of strategy concerning specific proposed courses of action regarding various |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 187 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | staffing proposals under consideration to protect the deliberative process of TFI and FinCEN.  The discussion is part of an internal planning process among TFI components, reflecting the back-and-forth of divergent views on specific proposed courses of action and areas of concern which are the hallmarks of pre-decisional and deliberative matters which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken.  EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of TFI,  FinCEN and OGC personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 188 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00002095 TFI_00002096 TFI_00002097 TFI_00002098 TFI_00002099 TFI_00002100 **TFI_00002101** TFI_00002102 TFI_00002103 TFI_00002104 TFI_00002105 TFI_00002106 TFI_00002107 TFI_00002108 TFI_00002109 TFI_00002110 TFI_00002111 TFI_00002112 TFI_00002113 | Page 7 of a 19-page revised nonfinal draft document describing and analyzing the FinCEN's capacity to meet certain staffing proposals for the TFI realignment under consideration.  Page 7 contains a graphic, data and descriptions of current staffing metrics of FinCEN FTE devoted to a specific strategic mission area and discussion of their tactical and strategic law enforcement products over a 6-month period. | (b)(5) DP | Redacted in full – Redacted a nonfinal graphic, data and descriptions of current staffing metrics of FinCEN FTE devoted to a specific strategic mission area and discussion of their tactical and strategic law enforcement products over a 6-month period. EXEMPTION 5 (deliberative process) is asserted to draft depictions of FinCEN FTE devoted to a specific strategic mission area and discussion of their tactical and strategic law enforcement products over a 6-month period to protect the deliberative process of the Treasury Department. These depictions were the nonfinal version of the information presented.  The information reflects deliberate selection of information for presentation concerning the operational functionalities that were being studied for possible realignment under a proposed staffing model under consideration. This selected information was an integral part of the pre-decisional and deliberative discussion |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 189 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | among FinCEN personnel evaluating the merits of the proposed staffing model under consideration that was never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| **TFI_00002151** TFI_00002152 | Page 1 of a 2-page email string titled "RE: TFI Functional Alignment Adjustment" among FinCEN personnel regarding a description of a specific staffing concept under consideration for the TFI realignment proposal that was sent to OMB for consideration. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted portions of substantive description revealing details of the staffing concept under consideration for the TFI realignment proposal, specific details of the concept, and comments, assessments, characterizations and opinions regarding the concept and OMB review of the draft description. Redacted the names and email addresses of FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to substantive descriptions revealing details of the staffing concept under consideration for the TFI realignment proposal and comments, assessments, characterizations and opinions regarding the concept and OMB review of the draft description to protect the deliberative process of Treasury and FinCEN.  The discussion is part of an internal pre-decisional and deliberative discussion among TFI, FinCEN and OMB personnel assessing budgetary |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | issues related to the staffing concept and developing a strategy to brief Congress on the proposed TFI realignment that which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00002198 TFI_00002199 TFI_00002200 **TFI_00002201** TFI_00002202 TFI_00002203 TFI_00002204 | Page 4 of a 7-page email string titled "RE: RESPONSE: TFI/FinCEN OMB 1-pager" among FinCEN personnel discussing FinCEN's proposed revisions and comments to a draft 1-page document outlining certain issues concerning a proposed course of action under consideration for the proposed TFI realignment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted substantive portions detailing FinCEN's proposed revisions and comments to the draft 1-page document and personal comments, assessments, views, characterizations of two discrepancies regarding a staffing proposal under consideration for the proposed TFI realignment.  Redacted the names and email addresses of TFI, FinCEN and OGC personnel. EXEMPTION 5 (deliberative process) is asserted to the substance of FinCEN's proposed revisions and comments to the draft document and personal comments, assessments, views, characterizations of two discrepancies regarding a staffing proposal under consideration to protect the deliberative process of TFI and FinCEN.  The discussion is part of an internal pre-decisional and deliberative planning process among TFI components, reflecting the back-and-forth of divergent views on a staffing proposal that was never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 192 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of TFI, FinCEN and OGC personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 193 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| TFI_00002249 TFI_00002250 **TFI_00002251** TFI_00002252 | Page 3 of a 4-page email string titled "RE: My notes from the 10:00 meeting" among FinCEN personnel.  Page 3 summarizes the issues discussed at a TFI realignment meeting concerning proposed courses of action under consideration for the proposed TFI realignment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in full – Redacted substantive descriptions of issues discussed at a TFI realignment meeting, including interim action items identified to coordinate development of specific design elements of the proposed realignment, proposed timing, logistical and IT concerns, side-bar discussions, attributed statements of certain attendees on specific matters under consideration and the author's personal impressions, comments, assessments, views and opinions, characterizations concerning proposed courses of action under consideration for the realignment.  Redacted the names and email addresses of TFI and FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to detailed descriptions of issues discussed at a TFI realignment meeting, including interim action items identified to coordinate development of specific design elements of the proposed realignment, proposed timing, logistical and IT concerns, side-bar discussions, attributed statements of certain attendees on specific matters under consideration and the author's personal impressions, comments, assessments, views and opinions, characterizations concerning proposed courses of action under consideration for the realignment to protect the deliberative process of the Treasury Department.  Descriptions of deliberations on realignment planning and incremental developmental aspects of the realignment, issues of concern and debate, and |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
|  |  |  | personal commentary thereon reveal pre-decisional and deliberative information concerning the proposed realignment.  These matters are part of a sensitive and high-level on-going discussion among senior TFI personnel to evaluate and monitor progress of proposed design elements of under consideration that were never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of TFI and FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 195 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00002300 **TFI_00002301** | Page 2 of a 2-page email string titled "FW: Questions from the Hill" among Treasury and FinCEN personnel circulating an informal listing of questions apparently received by Treasury personnel regarding the proposed TFI realignment following a briefing of unspecified congressional representatives. | (b)(5) DP (b)(6) | Redacted in part – Redacted the substance of the informal listing of questions regarding the proposed TFI realignment.  The list is a restatement and/or reformulation by budgetary personnel of questions informally received.  Redacted the name and direct phone numbers of an employee in the Office of Performance and Budgeting in the Treasury Department.  EXEMPTION 5 (deliberative process) is asserted to the author's formulation of the questions, as they reflect the personal interpretation of the author and not clearly attributed or otherwise evident in a formal submission from the requestor(s), and thereby may not accurately restate the questions asked.  The information is part of an internal, pre-decisional discussion among TFI and FinCEN personnel which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 196 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 (privacy interests) is asserted to protect from disclosure the identity of a budgetary staffer whose duties and responsibilities include access to sensitive financial and budgetary information of the Department and high-level communications concerning those matters. This individual maintains a substantial privacy interest because the individual is associated with sensitive and potentially high-profile efforts of senior leaders to manage and finance the operations of the Department that could subject the staffer to undue public scrutiny or harassment.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead would expose government personnel to unwarranted invasion of their personal privacy. |
| TFI_00002348 TFI_00002349 TFI_00002350 **TFI_00002351** | Page 4 of a 4-page document titled "Senate Appropriations Follow-up Question to FinCEN" presenting draft responses to a set of questions from the Senate Committee on Appropriations regarding aspects of the proposed TFI realignment under consideration. | (b)(5) DP | Redacted in full – Redacted of the last two lines of a sentence that was a redline edit to a nonfinal draft response to a question regarding the proposed TFI realignment. EXEMPTION 5 (deliberative process) is asserted to the last two lines of a sentence that was a redline edit a nonfinal draft response to a question regarding the proposed TFI realignment to protect |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | the deliberative process of Treasury and FinCEN. The information was subsequently revised and part of an initial draft response that reveals a proposed answer explaining one facet of the proposed realignment.  This portion of the nonfinal draft answer was part of an internal review and editing process among TFI and FinCEN personnel which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00002400 **TFI_00002401** TFI_00002402 TFI_00002403 | Page 1 of a 4-page revised document titled "Senate Appropriations Follow-up Question to FinCEN" presenting draft responses to a set of questions from the Senate Committee on Appropriations regarding aspects of the proposed TFI realignment under consideration. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in full – Redacted the substance of a nonfinal draft response and reviewer redline edits, comments, opinions, analysis and recommendations. EXEMPTION 5 (deliberative process) is asserted to the substance of a nonfinal draft response and reviewer redline edits, comments, opinions, analysis and recommendations revealing a proposed answer explaining one facet of the proposed realignment.  This draft answer was subsequently revised and part of an internal review and editing process among TFI and FinCEN personnel which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 198 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00002450 **TFI_00002451** TFI_00002452 TFI_00002453 | Page 2 of a 4-page email string titled "FW: Senate Appropriations Follow-up Questions FINAL" among TFI, FinCEN and OGC personnel regarding revisions to draft responses to a set of questions from the Senate Committee on Appropriations regarding aspects of the proposed TFI realignment under consideration. | (b)(5) AC (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the substance of portions of the email expressing personal comments, opinions, views, and analysis regarding specific edits to draft responses to questions regarding the proposed TFI realignment and proposed response strategy.  Redacted portion of the email discussing information for which legal advice is sought.  Redacted the names, email addresses, and direct phone number of TFI, FinCEN and OGC personnel. EXEMPTION 5 (privileged attorney-client communications) is asserted to discussing information for which legal advice is sought.  The subject of the email and its substance are part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature of matters encompassed by the privilege and would impair the ability of Treasury and FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (deliberative process) is asserted to portions of the email expressing personal comments, opinions, views, and analysis regarding specific edits to draft answers to questions regarding the proposed TFI realignment and proposed response strategy to protect the |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | deliberative process of Treasury.  This information reflects the personal views of reviewers and part of an internal review and editing process among TFI, FinCEN and OGC personnel which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of TFI and FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 200 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| **TFI_00002501** TFI_00002502 TFI_00002503 | Page 1 of a 3-page November 2016 draft letter on TFI Initiatives for the Senate Committee on Appropriations detailing discrete aspects of the proposed TFI realignment under consideration. | (b)(5) DP | Redacted in full – Redacted the first page of a nonfinal draft letter detailing discrete aspects of the proposed TFI realignment under consideration, reviewer comments, opinions, analysis, and redline edits thereto. EXEMPTION 5 (deliberative process) is asserted to nonfinal draft letter detailing discrete aspects of the proposed TFI realignment under consideration, reviewer comments, opinions, analysis, and redline edits thereto to protect the deliberative process of Treasury.  This information was not the final version of the letter and reflects the personal views of commentators and part of an internal review and editing process among TFI, FinCEN and OGC personnel which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| **TFI_00002551** | Page 1 of a 1-page email string titled "Response to Congressman Duffy's Inquiry" among TFI and OMB personnel forwarding for clearance a draft response to a Congressional inquiry regarding a specific TFI realignment staffing proposal under consideration. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the portion of the email identifying a specific TFI realignment staffing proposal under consideration.  Redacted the names and email addresses of Treasury and OMB budgetary personnel. EXEMPTION 5 (deliberative process) is asserted to pre-decisional and deliberative response identifying a specific TFI realignment staffing proposal that was never implemented and reviewer comments, opinions, analysis, and edits to questions regarding the proposed TFI realignment to protect the deliberative process of Treasury and FinCEN.  The discussion is part of an internal, pre-decisional discussion among Treasury and FinCEN personnel which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 (privacy interests) is asserted to protect from disclosure the identities of budgetary personnel whose duties and responsibilities include access to sensitive financial and budgetary information of the Department and high-level communications concerning those matters. These personnel maintain a substantial privacy interest because they are associated with sensitive and |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | potentially high-profile efforts of senior leaders to manage and finance the operations of the Department that could subject them to undue public scrutiny or harassment.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead would expose government personnel to unwarranted invasion of their personal privacy. |
| TFI_00002597 TFI_00002598 TFI_00002599 TFI_00002600 **TFI_00002601** TFI_00002602 TFI_00002603 TFI_00002604 TFI_00002605 TFI_00002606 | Page 5 of a 10-page nonfinal draft memorandum of agreement document delineating the contours of a staffing proposal concerning FinCEN and other TFI components under consideration and legal review for the proposed TFI realignment.  This version of the document consolidates edits from FinCEN personnel. | (b)(5) AC (b)(5) DP | Redacted in full - Redacted the heavily edited substance of page 5 of the nonfinal draft memorandum of agreement which reveals specific details of a proposed framework for the staffing proposal, including operational roles and responsibilities of the parties and staffing arrangements under consideration and legal review, as well as internal reviewer redline edits, comments, and assessments concerning the specific aspects of the staffing proposal and opinions of an editorial nature regarding the draft document. EXEMPTION 5 (privileged attorney-client communications) is asserted to the substantive details presented on page 5 regarding elements of a proposed framework for the staffing proposal for which legal review and advice was sought and specific legal commentary and edits on legal issues presented by counsel.  This nonfinal draft memorandum and substantive details presented on page 5 are part of a privileged attorney-client |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 203 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | communication which, if disclosed, would reveal the subjects and nature of matters encompassed by the privilege and would impair the ability of Treasury and FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency.<br><br>EXEMPTION 5 (deliberative process) is asserted to substantive details on page 5 of the nonfinal draft memorandum of agreement revealing specific details of a proposed framework for the staffing proposal, including operational roles and responsibilities of the parties and staffing arrangements under consideration, as well as internal reviewer redline edits and commentary to protect the deliberative process of TFI and FinCEN.  These specific matters are one iteration of a nonfinal draft memorandum and part of an internal, pre-decisional and deliberative review and comment process among senior TFI and FinCEN personnel trying to reach an agreement and common understanding regarding key features of a specific staffing proposal which was never implemented and which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government. |
| TFI_00002647 TFI_00002648 TFI_00002649 | Page 5 of a 5-page revised, nonfinal draft legal memorandum dated November __, 2016 from FinCEN Chief Counsel responding to a request for legal advice | (b)(5) AC (b)(5) WP (b)(5) DP | Redacted in full – Redacted the substance of the last page of the revised nonfinal draft memorandum concerning specific aspects of a staffing proposal under the proposed TFI |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 204 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
| TFI_00002650 **TFI_00002651** | concerning certain aspects of the proposed TFI realignment.  Note: This a subsequent draft of the documents described in Bates pages 1451 and 1501 (above). | | realignment and internal reviewer comments of an editorial nature. EXEMPTION 5 (privileged attorney-client communications) is asserted to final page of the draft legal memorandum describing the specific matter for which legal advice is sought and revealing draft legal analysis and interpretation of certain legal authorities and their application to a specific staffing proposal, legal opinions concerning a design element of the realignment for which legal advice is sought, and a reference identifying an internal document relevant to the proposed realignment element that was analyzed in the draft legal opinion.  This information was part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature of matters encompassed by the privilege and would impair the ability of Treasury and FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (attorney work-product) is asserted to the final page of the draft legal memorandum which reveals draft legal analysis and interpretation of certain legal authorities and their application to a specific staffing proposal, legal opinions concerning a design element of the realignment, and a reference identifying an internal document relevant to the proposed realignment element that was analyzed in the draft legal opinion. This nonfinal draft legal |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | memorandum was prepared in anticipation of potential litigation prepared by attorneys in FinCEN's Chief Counsel's office in reasonable anticipation of potential litigation.  This information is attorney work-product, the release of which would expose attorneys' preparation materials to scrutiny, harming the adversarial trial process.<br>EXEMPTION 5 (deliberative process) is asserted to final page of the draft legal memorandum presenting nonfinal legal analysis and opinions interpreting of certain legal authorities and their application to a design element under consideration, and reference to an internal document relevant to the proposed realignment element that was analyzed in the draft legal opinion.  The information on this page was part of an internal effort among senior FinCEN personnel to obtain guidance regarding a proposed design element of the realignment which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00002700<br>**TFI_00002701**<br>TFI_00002702 | Page 2 of an 8-page revised nonfinal draft memorandum of agreement document delineating the contours of a staffing | (b)(5) AC<br>(b)(5) DP | Redacted in full - Redacted the substance of page 2 of the nonfinal draft memorandum of agreement which reveals specific details of a proposed |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| TFI_00002703 TFI_00002704 TFI_00002705 TFI_00002706 TFI_00002707 | proposal concerning FinCEN and other TFI components under consideration and legal review for the proposed TFI realignment.  Note: This a subsequent draft of the document described in Bates page 2601 (above) consolidating edits from FinCEN personnel. | | framework for the staffing proposal, including operational roles and responsibilities of the parties and staffing arrangements under consideration and legal review, as well as internal reviewer redline edits, comments, and assessments concerning the specific aspects of the staffing proposal. EXEMPTION 5 (privileged attorney-client communications) is asserted to the substantive details presented on page 2 regarding elements of a proposed framework for the staffing proposal for which legal review and advice was sought and specific legal commentary and edits on legal issues presented by counsel.  This nonfinal draft memorandum and substantive details presented on page 2 are part of a privileged attorney-client communication which, if disclosed, would reveal the subjects and nature of matters encompassed by the privilege and would impair the ability of Treasury and FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (deliberative process) is asserted to substantive details on page 2 of the nonfinal draft memorandum of agreement revealing specific details of a proposed framework for the staffing proposal, including operational roles and responsibilities of the parties and staffing arrangements under consideration, as well as internal reviewer redline edits and commentary to protect the deliberative process of TFI and |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 207 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | FinCEN.  These specific matters are another iteration of a nonfinal draft memorandum and part of an internal, pre-decisional and deliberative review and comment process among senior TFI and FinCEN personnel trying to reach an agreement and common understanding regarding key features of a specific staffing proposal which was never implemented and which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00002749 TFI_00002750 **TFI_00002751** | Page 3 of a 3-page email string among FinCEN personnel detailing specific questions and concerns about proposed design elements of the TFI realignment sent in preparation for an ESG meeting. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part - Redacted the identity and specific questions and concerns of a FinCEN senior level advisor about proposed design elements of the TFI realignment under consideration by the Executive Steering Group (ESG), and personal critique, opinions and commentary of the advisor on these matters. EXEMPTION 5 (deliberative process) is asserted to the substantive portion of the email detailing specific questions and concerns of a FinCEN senior level advisor and the advisor's personal critique and commentary to protect the deliberative process of FinCEN.  This information is part of an internal discussion among FinCEN personnel about the merits and impact of certain design |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 208 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | elements of the TFI realignment that were never implemented and offered in preparation for an upcoming ESG meeting on realignment topics which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of a FinCEN advisor who occupies a sensitive national security position with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  This person maintains a substantial privacy interest because the person is associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through the person's work that could subject the person to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  Additionally, this |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 209 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | person is not political employees, and is below the level of Deputy Assistant Secretary, and therefore plays no substantive role in the policy-making process. Treasury has consistently protected the identities of such employees.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose this person to unwarranted invasion of personal privacy. |
| TFI_00002799 TFI_00002800 **TFI_00002801** | Page 3 of a 3-page email string titled "RE: readout" among FinCEN personnel summarizing a conversation among the email addressee's and Deputy Director El-Hindi about his conversation with Acting Under Secretary Szubin on specific interim measures to develop of a specific design element of the realignment of the proposed TFI realignment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part - Redacted the portions of the email recounting the substance of the El-Hindi/Szubin conversation.  Redacted the names and email addresses of FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to the portions of the email recounting the substance of the El-Hindi/Szubin conversation to protect the deliberative process of TFI/FinCEN. This information reveals the content of a highly sensitive senior leadership conversation on specific interim measures to develop of a particular design element of the realignment which was never implemented.  Similarly, Exemption 5 is asserted to protect the details of follow up action items intended to support a proposed staffing model and the concerns and objections raised by senior FinCEN personnel with certain design elements to protect the deliberative process of FinCEN.  This is also highly sensitive internal |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 210 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|-------------------------------------------------------|
|       |                              |                        | information about a staffing model that was never implemented.  These conversations were part of the internal pre-decisional and deliberative discussions among TFI and FinCEN personnel about realignment proposals that were never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 211 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
| | | | to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00002851 | Page 1 of a 1-page email titled "FW: TFI/FinCEN OMB 1-pager" among FinCEN personnel forwarding a draft document regarding proposed TFI realignment concepts circulated for review and comment. | (b)(6) (b)(7)(C) | Redacted in part - Redacted the title "TFI OMB Memo-Draft v2_OPBedits.docz (28.1 kB)" of a draft document attached to the email circulated a for review and comment regarding proposed TFI realignment concepts.  Redacted the names, email addresses and direct phone number of a TFI and FinCEN personnel. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00002896 TFI_00002897 TFI_00002898 TFI_00002899 TFI_00002900 **TFI_00002901** | Page 6 of a 6-page email string titled "FW: TFI/FinCEN OMB  1-pager" among FinCEN personnel forwarding a draft document regarding proposed TFI realignment concepts circulated for review and comment. | (b)(6) (b)(7)(C) | Redacted in part - Redacted the names of TFI and FinCEN personnel. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of TFI and FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 213 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00002949 TFI_00002950 **TFI_00002951** TFI_00002952 TFI_00002953 TFI_00002954 | Page 3 of a 6-page revised draft working paper titled "TFI Functional Alignment Briefing" dated "September X, 2016 0:00-0:00 [Location]". | (b)(5) DP | Redacted in full - Redacted entirety of page 3 of the nonfinal working paper marked as "Draft/Pre-Decisional Staff Working Paper", including redline edits and substantive comments of a reviewer, which present in bulleted fashion several notional draft questions and answers concerning discussions specific interagency stakeholders about the realignment and descriptions of specific staffing design elements under consideration for the proposed realignment that were being prepared for an anticipated congressional briefing on the TFI realignment. EXEMPTION 5 (deliberative process) is asserted to notional draft questions and answers and edits describing discussions with specific interagency stakeholders about the realignment and descriptions of specific staffing design elements under consideration for the proposed realignment to protect the deliberative process of the Treasury. The draft questions and answers are notional |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 214 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
| | | | explanations of particular staffing design elements of the realignment and the "how and why" of the proposal.  The working paper and the information on this page were in draft undergoing review and editing and not the final paper crafted for an anticipated congressional briefing at a to be determined date and location in September of 2016.  This information is part of an internal pre-decisional discussion among senior TFI personnel about what information needed to be conveyed in a congressional briefing explaining the proposed TFI realignment which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00002997 TFI_00002998 TFI_00002999 TFI_00003000 **TFI_00003001** TFI_00003002 TFI_00003003 | Page 5 of a 7-page email string titled "RE: TFI Realignment Briefing Paper draft" among TFI and FinCEN personnel regarding a draft briefing paper concerning the TFI realignment proposal. | (b)(6) (b)(7)(C) | Redacted in part - Redacted the names of a TFI and FinCEN personnel. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of TFI and FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti- |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 215 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00003048 TFI_00003049 TFI_00003050 **TFI_00003051** TFI_00003052 | Page 4 of a 5-page email string among FinCEN personnel discussing specific concerns and issues regarding a draft description of a specific realignment staffing proposal that was circulated for review and comment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part - Redacted the title of the email revealing the subject of a specific realignment staffing proposal under consideration.  Redacted the substantive text of an email presenting the senders critique of the draft description and detailing specific concerns and issues regarding staffing proposal under consideration, including personal comments, opinions, assessments, characterizations, perceptions about other reviewer contributions and misconceptions about the work to be performed under the staffing proposal.  Redacted the names of TFI and FinCEN personnel. EXEMPTION specific 5 (deliberative process) is |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | asserted to the title of the email revealing the subject of a specific staffing proposal and substantive critique, and concerns and issues regarding the draft description of the staffing circulated for comment, including personal comments, opinions, assessments, characterizations, perceptions about other reviewer contributions and misconceptions about the work to be performed under the staffing proposal to protect the deliberative process of TFI/FinCEN. This information reflects the personal views of the sender and the give-and-take of a pre-decisional and deliberative review and comment process. These comments were part of an internal review discussion among TFI and FinCEN personnel about a staffing proposal that was never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of TFI and FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00003099 TFI_00003100 **TFI_00003101** TFI_00003102 | Page 3 of a 4-page of a revised draft document titled "Senate Appropriations Follow-up Questions to FinCEN" presenting draft responses to a set of questions from the Senate Committee on Appropriations regarding aspects of the proposed TFI realignment under consideration.  Note: This a subsequent draft of the document described in Bates pages 2351 and 2401 (above). | (b)(5) DP | Redacted in full – Redacted the substance of a nonfinal draft response and reviewer redline edits, comments, opinions, analysis and recommendations to questions regarding the proposed TFI realignment. EXEMPTION 5 (deliberative process) is asserted to the substance of a nonfinal draft response and reviewer redline edits, comments, opinions, analysis and recommendations revealing a proposed answer explaining how requested |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 218 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | funding of specific elements of the proposed realignment would enhance TFI's mission to target certain types of illicit financial activities.  This nonfinal draft answer was subsequently revised and part of an internal review and editing process among TFI and FinCEN personnel which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00003150 **TFI_00003151** TFI_00003152 TFI_00003153 TFI_00003154 TFI_00003155 TFI_00003156 TFI_00003157 | Page 2 of an 8-page email string titled "Re: Updated realignment activities list" among TFI/OIA and FinCEN personnel concerning development of a list of activities for a proof-of-concept implementation plan for a specific staffing proposal in preparation for a briefing of Acting Under Secretary Szubin. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the substantive descriptions of a specific staffing proposal, proposed developmental steps needed to be discussed/considered for a proof-of-concept implementation plan for the proposal, including staffing metrics, training, organizational vision and missions of collaborating elements and strategic planning regarding the TFI realignment proposal, and personal comments, opinions, analysis regarding those matters.  Redacted the names of a Treasury and FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted descriptions of a specific staffing proposal, proposed developmental steps needed to be discussed/considered for a proof of concept implementation plan for the proposal, including staffing metrics, training, organizational vision and |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | missions of collaborating elements and strategic planning regarding the TFI realignment proposal under consideration, and personal comments, opinions, analysis regarding those matters to protect the deliberative process of TFI and FinCEN.  The discussion is part of an internal, pre-decisional discussion among TFI and FinCEN personnel concerning the development of a proof-of-concept implementation plan for a staffing proposal that was never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of TFI and FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 220 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00003198 TFI_00003199 TFI_00003200 **TFI_00003201** TFI_00003202 | Page 4 of a 5-page draft legal memorandum dated November __, 2016 from FinCEN Chief Counsel responding to a request for legal advice concerning certain aspects of the proposed TFI realignment.  Note: This a subsequent draft of the documents described in Bates pages 1451, 1501, and 2651 (above). | (b)(5) AC (b)(5) WP (b)(5) DP | Redacted in full – Redacted page 4 of the revised nonfinal draft legal memorandum concerning specific aspects of a staffing proposal under the proposed TFI realignment, legal citations, and an internal reviewer comment of an editorial nature.  EXEMPTION 5 (privileged attorney-client communications) is asserted to page 4 of the draft legal memorandum describing the specific matter for which legal advice is sought and revealing draft legal analysis and interpretation of certain legal authorities and their application to a specific staffing proposal, legal opinions concerning a design element of the realignment for which legal advice is sought, and legal citations relied upon for arguments advanced in the draft legal opinion.  This information was part of a privileged attorney-client communication which, if disclosed, would |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 221 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
|       |                              |                        | reveal the subject and nature of matters encompassed by the privilege and would impair the ability of Treasury and FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (attorney work-product) is asserted to page 4 of the draft legal memorandum which reveals draft legal analysis and interpretation of certain legal authorities and their application to a specific staffing proposal, legal opinions concerning a design element of the realignment, and legal citations relied upon for arguments advanced prepared by attorneys in FinCEN's Chief Counsel's office in reasonable anticipation of potential litigation.  This information is attorney work-product, the release of which would expose attorneys' preparation materials to scrutiny, harming the adversarial trial process. EXEMPTION 5 (deliberative process) is asserted to final page of the draft legal memorandum presenting nonfinal legal analysis and opinions interpreting of certain legal authorities and their application to a design element under consideration.  The information on this page was part of an internal effort among senior FinCEN personnel to obtain guidance regarding a proposed design element of the realignment which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 222 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00003245<br>TFI_00003246<br>TFI_00003247<br>TFI_00003248<br>TFI_00003249<br>TFI_00003250<br>**TFI_00003251**<br>TFI_00003252<br>TFI_00003253<br>TFI_00003254 | Page 7 of a 10-page revised nonfinal draft memorandum of agreement document delineating the contours of a staffing proposal concerning FinCEN and other TFI components under consideration and legal review for the proposed TFI realignment.  This a subsequent draft of the documents described in Bates pages 2601 and 2701 (above). This version of the document consolidates edits from OGC personnel. | (b)(5) AC<br>(b)(5) DP | Redacted in full - Redacted page 5 of the nonfinal draft memorandum of agreement which reveals specific details of a proposed framework for the staffing proposal, including operational roles and responsibilities of the parties, staffing arrangements, and termination and severability clauses under consideration and legal review, as well as internal reviewer redline edits, comments, and assessments concerning the specific aspects of the staffing proposal and opinions of an editorial nature regarding the draft document. EXEMPTION 5 (privileged attorney-client communications) is asserted to the substantive details presented on page 5 regarding elements of a proposed framework for the staffing proposal for which legal review and advice was sought and specific legal commentary and edits on legal issues presented by counsel.  This nonfinal draft memorandum and substantive details presented on page 5 are part of a privileged attorney-client communication which, if disclosed, would reveal the subjects and nature of matters encompassed by the privilege and would impair the ability of Treasury and FinCEN employees to fully inform their counsel when seeking legal advice, resulting |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (deliberative process) is asserted to substantive details on page 5 of the nonfinal draft memorandum of agreement revealing specific details of a proposed framework for the staffing proposal, including operational roles and responsibilities of the parties, staffing arrangements, and termination and severability clauses under consideration, as well as internal reviewer redline edits and commentary to protect the deliberative process of TFI and FinCEN. These specific matters are another iteration of a nonfinal draft memorandum and part of an internal, pre-decisional and deliberative review and comment process among senior TFI and FinCEN personnel trying to reach an agreement and common understanding regarding key features of a specific staffing proposal which was never implemented and which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| **TFI_00003301** TFI_00003302 TFI_00003303 | Page 1 of a 3-page email titled "Fwd: Initial Concepts for Adam by tomorrow noon" among TFI and FinCEN personnel | (b)(5) DP | Redacted in part – Redacted portions of the email from Deputy Director El-Hindi expressing his views about the basis for a proposed meeting with |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 224 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | regarding discussion and planning for a meeting concerning initial concepts of the TFI realignment proposal under consideration. | | TFI principals concerning initial concepts of the TFI realignment proposal under consideration and personal comments, assessments, characterizations, and opinions on planning options.  Redacted the names and email addresses of TFI and FinCEN personnel and the direct phone number Mr. El-Hindi. EXEMPTION 5 (deliberative process) is asserted portions of the El-Hindi email expressing his views about the basis for a proposed meeting with TFI principals concerning initial concepts of the TFI realignment proposal under consideration and personal comments, assessments, characterizations, and opinions on planning options to protect the deliberative process of TFI/FinCEN.  The views of senior FinCEN leadership are highly sensitive and the expressions in this email about possible misperceptions concerning the substantive basis for a meeting on concepts of the TFI realignment proposal were pre-decisional and deliberative.  This discussion was part of an internal discussion among TFI and FinCEN personnel trying to develop these initial concepts of the realignment plan which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 225 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00003347 TFI_00003348 TFI_00003349 TFI_00003350 **TFI_00003351** TFI_00003352 | Page 5 of a 6-page draft white paper providing an in-depth strategic analysis and assessment of specific TFI components, proposed conceptual designs of realignment, and initial recommendations on possible redesign elements under consideration. | (b)(5) DP | Redacted in full – Redacted edited in-depth descriptions of draft strategic analysis and assessment of specific TFI components operational roles and responsibilities, proposed conceptual designs of discrete aspects of realignment, initial recommendations on possible redesign elements under consideration, and substantive internal edits. EXEMPTION 5 (deliberative process) is asserted nonfinal draft descriptions of strategic analysis and assessment of specific TFI components, proposed conceptual designs, initial recommendations on possible redesign elements under consideration, and substantive internal edits to protect the deliberative process of TFI/FinCEN.  The information on this page and in the nonfinal draft white paper is part of an internal discussion among TFI and FinCEN personnel evaluating potential areas of overlapping functionalities among TFI components and possible integration and collaboration realignment elements which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| TFI_00003400 **TFI_00003401** | Page 2 of a 2-page email among Treasury and FinCEN personnel concerning a request for legal advice from FinCEN's Office of Chief Counsel regarding a staffing proposal under consideration for the TFI realignment. | (b)(5) AC (b)(5) DP | Redacted in part – Redacted the portion of email text containing an excerpt of statutory text for which legal advice was sought. EXEMPTION 5 (privileged attorney-client communications) is asserted to the substantive portion of the email citing legal authority which is the subject of the request for legal advice and would grant insight into specific nature of a staffing proposal under consideration.  This information was part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature matters encompassed by the privilege and would impair the ability of Treasury and FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (deliberative process) is asserted to the substantive portion of the email citing legal authority which is the subject of the request for legal advice and would grant insight into specific nature of a staffing proposal under consideration to protect the deliberative process of Treasury and FinCEN.  This information is part of an internal discussion among Treasury and FinCEN personnel about the interpretation of a legal authority and its impact on a staffing proposal under consideration that was never implemented and which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 227 of 359

TFI REALIGNMENT VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken |
| TFI_00003449 TFI_00003450 **TFI_00003451** TFI_00003452 | Page 3 of a 4-page email string titled "RE: Additional Information on TFI Executive Steering Group - 1st Meeting this Friday, 10:30 - 11:15" among Treasury and FinCEN personnel regarding an initial meeting of the ESG to discuss the proposed TFI realignment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted portions of email text containing personal comments, assessments, characterizations, and opinions regarding notional aspects of the proposed TFI realignment and planning process.  Redacted the names and email addresses of TFI and FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to portions of email text containing personal comments, assessments, characterizations, and opinions regarding notional aspects of the proposed TFI realignment and planning process to protect the deliberative process of TFI and FinCEN.  This information reflects the personal views of two individuals and the give and take of an internal discussion among TFI and FinCEN personnel on those notional topics which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 228 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | TFI and FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00003499 TFI_00003500 **TFI_00003501** TFI_00003502 TFI_00003503 TFI_00003504 | Page 3 of a 24-page revised nonfinal draft document describing and analyzing the FinCEN's capacity to meet certain staffing proposals for the TFI realignment under consideration.  Page 3 contains redline deletions and edits of draft | (b)(5) DP | Redacted in full – Redacted redline deletions and edits of a nonfinal draft description of current staffing metrics of FinCEN FTE work group alignment among analytic and strategic mission areas; substantive questions, commentary, critique, opinions, and characterizations of the descriptions, |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 229 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| TFI_00003505 TFI_00003506 TFI_00003507 TFI_00003508 TFI_00003509 TFI_00003510 TFI_00003511 TFI_00003512 TFI_00003513 TFI_00003514 TFI_00003515 TFI_00003516 TFI_00003517 TFI_00003518 TFI_00003519 TFI_00003520 TFI_00003521 TFI_00003522 | descriptions of current staffing metrics of FinCEN FTE work group alignment among analytic and strategic mission areas. | | and personal assessments of the nature and import of work performed within those work groups. EXEMPTION 5 (deliberative process) is asserted to redline deletions and edits of a nonfinal draft description of current staffing metrics, substantive questions, commentary, critique, opinions, and characterizations of the descriptions, and personal assessments of the nature and import of work performed within certain work groups to protect the deliberative process of the FinCEN.  The descriptions are mostly deleted by redline editing and were a nonfinal version of the information presented.  The information reflects deliberate selection of information for presentation concerning the operational functionalities that were being studied for possible realignment under a proposed staffing model under consideration. This selected information and reviewer commentary were an integral part of the predecisional and deliberative discussion among FinCEN personnel evaluating the merits of the proposed staffing model under consideration that was never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government. |
| **TFI_00003551** TFI_00003552 TFI_00003553 TFI_00003554 TFI_00003555 | Page 1 of a 5-page nonfinal draft document titled "ID Questions on FinCEN OIA Realignment" delineating a list of staff-level questions challenging aspects of the proposed TFI realignment | (b)(5) AC (b)(5) DP | Redacted in part – Redacted the substantive nonfinal draft questions challenging aspects of the proposed TFI realignment and contextual information underlying each issue for which organizational guidance and legal advice were |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | for which organizational guidance and legal advice was requested. | | sought. EXEMPTION 5 (privileged attorney-client communications) is asserted to the specific questions challenging aspects of the proposed TFI realignment and contextual information underlying each issue for which legal advice was sought.  This information was part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature matters encompassed by the privilege and would impair the ability of FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (deliberative process) is asserted to the nonfinal draft questions challenging aspects of the proposed TFI realignment and contextual information underlying each issue for which organizational guidance was sought to protect the deliberative process of TFI and FinCEN.  This information reveals proposed design elements of the realignment which were never implemented and is part of an internal debate pre-decisional and deliberative discussion among FinCEN personnel challenging a staffing proposal which was never undertaken and which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | were not in fact the grounds for the action ultimately taken. |
| **TFI_00003601** TFI_00003602 | Page 1 of a 2-page email string titled "FW: TFI/FinCEN OMB 1-pager" among FinCEN personnel forwarding a draft document regarding proposed TFI realignment concepts circulated for review and comment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part - Redacted personal comments, assessments, characterizations, and opinions regarding alleged misstatements in the draft document and the nature of those misstatements. Redacted the names, email addresses and direct phone number of FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to the personal comments, assessments, characterizations, and opinions regarding alleged misstatements in the draft document, the nature and perceived import of those misstatements, and alleged contextual misunderstandings underlying them to protect the deliberative process of FinCEN.  This information reflects personal views and opinions and possible misperceptions by personnel working on a coordinated review of a draft document discussing the TFI realignment proposal.  This information is part of an internal pre-decisional and deliberative discussion among FinCEN personnel which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 232 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | asserted to protect from disclosure the identity of FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy |
| TFI_00003650 **TFI_00003651** TFI_00003652 | Page 2 of a 3-page email string titled "FW: TFI/FinCEN OMB 1-pager (Draft V4)" among Treasury and FinCEN personnel forwarding initial staff revisions of a draft document regarding | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part - Redacted the substantive portion of revised text circulated for senior level review describing key TFI realignment concepts and a comment concerning the nature of a pending consultation with another TFI component. |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 233 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
|  | proposed TFI realignment concepts circulated for senior level review and comment. |  | Redacted the names, email addresses and direct phone number of Treasury and FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to the substantive portion of nonfinal revised text undergoing senior level review prior to forwarding on for OMB review that describes key TFI realignment concepts and a comment concerning the nature of a pending consultation with another TFI component to protect the deliberative process of TFI and FinCEN.  This information reveals the nonfinal text of a description of realignment concepts and the nature of a pending consultation relevant to statements in the draft.  This information was part of an internal discussion among Treasury and FinCEN personnel which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of Treasury FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 234 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00003699 TFI_00003700 **TFI_00003701** TFI_00003702 TFI_00003703 | Page 3 of a 5-page email string titled "RE: RESPONSE TFI/FinCEN OMB  1-pager" among TFI and FinCEN personnel sharing revisions to draft document regarding proposed TFI realignment concepts circulated for review and comment. MOST OF THIS PAGE CONTAINS THE SAME INFORMATION DESCRIBED IN BATES PAGE 2051 (ABOVE). ADDITIONAL INFORMATION ON | (b)(5) DP | THE EXEMPTIONS AND JUSTICIFICATIONS ASSERTED TO WITHHOLD THE INFORMATION ON BATES PAGE 2051 ARE INCORPORATED BY REFERENCE HERE. THE FOLLOWING PERTAINS TO THE ADDITIONAL INFORMATION ON THIS PAGE.  Redacted in part - Redacted nonfinal substantive revisions of a draft description of proposed TFI realignment concepts circulated for review and comment. EXEMPTION 5 (deliberative process) is asserted to the nonfinal substantive revisions of a draft |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | THIS PAGE (BATES 3701) This page also contains the final two paragraphs of a subsequent email under the same title at the top of the page. | | description of proposed TFI realignment concepts circulated for review and comment to protect the deliberative process of Treasury and FinCEN. This information reveals proposed realignment concepts in draft form that were never implemented and reflect specific nonfinal revisions to prior versions of the description.  This information was part of an internal review and editing process that was pre-decisional and deliberative which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| **TFI_00003751** TFI_00003752 | Page 1 of a 2-page email string titled "RE: TFI Functional Alignment Adjustment" among FinCEN personnel regarding a description of a specific staffing concept under consideration for the TFI realignment proposal that was sent to OMB for consideration. MOST OF THIS PAGE CONTAINS THE SAME INFORMATION DESCRIBED IN BATES PAGE 2151 (ABOVE). ADDITIONAL INFORMATION ON THIS PAGE (BATES 3701) This page also contains a subsequent email among | (b)(5) DP (b)(6) (b)(7)(C) | THE EXEMPTIONS AND JUSTICIFICATIONS ASSERTED TO WITHHOLD THE INFORMATION ON BATES PAGE 2151 ARE INCORPORATED BY REFERENCE HERE. THE FOLLOWING PERTAINS TO THE ADDITIONAL INFORMATION ON THIS PAGE.  Redacted in part – Redacted personal comments, assessments, characterizations, and opinions regarding alleged misstatements in the draft document and the nature of those misstatements.  Redacted the names and email addresses of FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to the personal comments, assessments, |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 236 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | FinCEN personnel under the same title at the top of the page. | | characterizations, and opinions regarding alleged misstatements in the draft document to protect the deliberative process of FinCEN.  This information reflects personal views and opinions and possible misperceptions by personnel working on a coordinated review of a draft document discussing the TFI realignment proposal.  This information is part of an internal pre-decisional and deliberative discussion among FinCEN personnel which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are |

Case 1:17-cv-01524-APM  Document 75-2  Filed 03/31/23  Page 237 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
| | | | associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00003801 | Page 1 of a 1-page email titled "Another question from staff to add" among FinCEN personnel concerning reactions of employees to an all-hands meeting discussing the TFI realignment proposal. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part - Redacted portions of the text of the email relating reactions of employees to an all-hands meeting, specific details of the TFI realignment proposal, and personal comments, assessments, characterizations and opinions regarding these matters from the sender of the email.  Redacted the names, email addresses and direct phone number of FinCEN personnel.  EXEMPTION 5 (deliberative process) is asserted to descriptions of employee reactions, concerns and comments on specific elements of the TFI realignment proposal discussed at an all-hands meeting, and personal comments, assessments, characterizations and opinions regarding these matters of the sender of the email to protect the deliberative process of FinCEN.  The discussion is part of an internal managerial assessment of employee reaction and support for specific |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | realignment design elements that were never implemented.  It also reflects pre-decisional and deliberative discussion on how to respond to questions and concerns raised and the nature of those questions and concerns.  Disclosure of this information would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken.  EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00003850 **TFI_00003851** TFI_00003852 | Page 2 of a 3-page email string titled "MORE: Questions regarding the realignment" among FinCEN personnel delineating list of questions from FinCEN personnel regarding conceptual aspects of proposed TFI realignment for which for which organizational guidance and legal advice is sought. | (b)(5) AC (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the substantive questions challenging aspects of the proposed TFI realignment and contextual information underlying each issue for which organizational guidance and legal advice were sought. EXEMPTION 5 (privileged attorney-client communications) is asserted to the specific questions challenging aspects of the proposed TFI realignment and contextual information underlying each issue for which legal advice was sought.  This information was part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature matters encompassed by the privilege and would impair the ability of FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (deliberative process) is asserted to the questions challenging aspects of the proposed TFI realignment and contextual information underlying each issue for which organizational guidance was sought to protect the |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 240 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | deliberative process of TFI and FinCEN.  This information reveals proposed design elements of the realignment which were never implemented and is part of an internal debate pre-decisional and deliberative discussion among FinCEN personnel challenging a staffing proposal which was never undertaken and which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government.<br><br>EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00003900 **TFI_00003901** | Page 2 of a 2-page email titled "Questions" among FinCEN personnel forwarding a list of questions from FinCEN personnel regarding conceptual aspects of proposed TFI realignment for which for which guidance is sought. | (b)(6) (b)(7)(C) | Redacted in part - Redacted the email address and direct phone number of a FinCEN advisor. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of FinCEN advisor who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  This person maintains a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  Additionally, this person is not political employees, and is below the level of Deputy Assistant Secretary, and therefore play no substantive role in the policy-making process. |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 242 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | Treasury has consistently protected the identities of such employees.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose this person to unwarranted invasion of their personal privacy. |
| TFI_00003950 **TFI_00003951** | Page 2 of a 2-page email titled "RE: TFI Realignment Briefing Paper draft" among FinCEN personnel forwarding a first draft of responses to questions for a briefing template regarding conceptual aspects of proposed TFI realignment. | (b)(6) (b)(7)(C) | Redacted in part - Redacted the names and email addresses of Treasury and FinCEN personnel.  EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of Treasury and FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 243 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00004000 **TFI_00004001** | Page 2 of a 2-page email titled "RE: TFI Realignment Briefing Paper draft" among FinCEN personnel forwarding a first draft of responses to questions for a briefing template regarding conceptual aspects of proposed TFI realignment. THIS PAGE CONTAINS THE SAME INFORMATION DESCRIBED IN BATES PAGE 3951 (ABOVE). ADDITIONAL INFORMATION ON THIS PAGE (BATES 4001) This page also contains a subsequent email under the same title at the top of the page from Deputy Director El-Hindi. | (b)(6) (b)(7)(C) | THE EXEMPTIONS AND JUSTICIFICATIONS ASSERTED TO WITHHOLD THE INFORMATION ON BATES PAGE 2501 ARE INCORPORATED BY REFERENCE HERE. THE FOLLOWING PERTAINS TO THE ADDITIONAL INFORMATION ON THIS PAGE.  Redacted in part - Redacted the names and email addresses of FinCEN personnel. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 244 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00004050 **TFI_00004051** | Page 2 of a 2-page email titled "RE: TFI Realignment Questions" among FinCEN personnel delineating a list of staff level questions challenging aspects of the proposed TFI realignment for which organizational guidance and legal advice was requested. | (b)(5) AC (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the substantive questions challenging aspects of the proposed TFI realignment and contextual information underlying each issue for which organizational guidance and legal advice were sought and the personal comments, concerns, assessments, characterizations and opinions of the author regarding the process for developing the elements of the realignment.  Redacted the name, secure email address and direct phone number of FinCEN personnel. EXEMPTION 5 (privileged attorney-client communications) is asserted to the specific questions challenging aspects of the proposed TFI realignment and contextual information underlying each issue for which legal advice was sought.  This information was part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature matters encompassed by the privilege and would impair the ability of FinCEN employees to fully inform their counsel when |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (deliberative process) is asserted to the questions challenging aspects of the proposed TFI realignment, contextual information underlying each issue for which organizational guidance was sought and the commentary expressing personal concerns, assessments, characterizations and opinions of the author regarding the process for developing the elements of the realignment to protect the deliberative process of TFI and FinCEN.  This information reveals proposed design elements of the realignment which were never implemented.  This information was part of an internal debate among FinCEN personnel challenging a staffing proposal and would reveal the personal views of one employee regarding those matters which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| **TFI_00004101** TFI_00004102 | Page 1 of a 2-page email string among FinCEN personnel concerning a request for legal advice from FinCEN's Office of Chief Counsel regarding the interpretation and application of certain legal authorities to a staffing proposal under consideration for the proposed TFI realignment. | (b)(5) AC (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the title of the email identifying a specific matter for which legal advice is sought, the substantive portion of the email expressing a legal opinion and interpretation of specific legal authority which is the subject of the request, and description of a staffing proposal and personal views, characterizations, opinions and reaction to the legal guidance.  Redacted the names and email addresses of FinCEN personnel. |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | EXEMPTION 5 (privileged attorney-client communications) is asserted to the title of the email identifying a specific matter for which legal advice is sought and the substantive portion of the email expressing a legal opinion and interpretation of specific legal authority which is the subject of the request.  This information is part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature matters encompassed by the privilege and would impair the ability of FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (deliberative process) is asserted to the title  and substantive portion of the email identifying and describing a specific staffing proposal under consideration that was never implemented and the personal views, characterizations, opinions and reaction of a FinCEN employee to the legal guidance to protect the deliberative process of TFI and FinCEN.  This information was part of an internal discussion among TFI and FinCEN personnel examining the legal basis for an element of a staffing proposal, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| **TFI_00004151** TFI_00004152 | Page 1 of a 2-page email string among FinCEN personnel concerning a staffing | (b)(5) AC (b)(5) DP | Redacted in part – Redacted the title of the email string identifying a specific staffing proposal under |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 249 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
|  | proposal under consideration for the proposed TFI realignment and forwarding a draft document for review and editing related thereto. | (b)(6) (b)(7)(C) | consideration and for which legal advice is sought, the substantive portion of the email revealing substantive details of a specific attorney-client communication, internal views, characterizations, opinions concerning specific edits to a nonfinal draft document and the substance of pending questions for resolution about prior to moving forward with further development of the staffing proposal.  Redacted the names and email addresses of FinCEN personnel. EXEMPTION 5 (privileged attorney-client communications) is asserted to the title of the email identifying a specific matter for which legal advice is sought and the substantive portion of the email revealing details of a specific attorney-client communication.  The subject of the email and substance of the email are part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature matters encompassed by the privilege and would impair the ability of FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (deliberative process) is asserted to the title, substantive portion of the email identifying a specific staffing proposal under consideration and internal views, characterizations, opinions concerning specific edits to a nonfinal draft document and the substance of pending questions for resolution about prior to moving |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 250 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | forward with further development of the staffing proposal to protect the deliberative process of TFI and FinCEN.  This information was part of an internal review and comment process among TFI and FinCEN personnel for the development of a staffing proposal that was never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00004199 TFI_00004200 **TFI_00004201** | Page 3 of a 3-page email string among TFI, FinCEN and OGC personnel concerning updated revisions to a nonfinal staffing proposal under development for the proposed TFI realignment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the title of the email identifying updated revisions to a nonfinal staffing proposal under development for the proposed TFI realignment.  Redacted the names and email addresses of TFI, FinCEN and OGC personnel.  Redacted the email title and substantive portion of the email text identifying the specific staffing proposal under development for the TFI realignment. EXEMPTION 5 (deliberative process) is asserted to the email title and substantive portion of the email text identifying the specific staffing proposal under development for the proposed TFI realignment to protect the deliberative process of TFI and FinCEN.  This information was part of an internal pre-decisional and deliberative discussion among TFI and FinCEN personnel considering a staffing proposal that was never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
|  |  |  | discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of TFI, FinCEN and OGC personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | personnel to unwarranted invasion of their personal privacy. |
| **TFI_00004251** TFI_00004252 TFI_00004253 TFI_00004254 | Page 1 of a 3-page email string among FinCEN personnel concerning a staffing proposal under development for the proposed TFI realignment and text of a draft description of elements of the of the proposal at issue, including highlighted portions for editorial emphasis. | (b)(5) AC (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the title of the email string identifying the specific staffing proposal under development and for which legal advice is sought, text of a nonfinal draft description of elements of the proposal at issue, including highlighted portions for editorial emphasis, and personal views, characterizations, opinions, and concerns about portions of the draft description and relevant legal authorities at issue.  Redacted the names and email addresses of FinCEN personnel. EXEMPTION 5 (privileged attorney-client communications) is asserted to the title of the email identifying a specific matter for which legal advice is sought and the substantive portion of the email revealing details of a specific attorney-client communication.  The subject of the email and substance of the email are part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature matters encompassed by the privilege and would impair the ability of FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (deliberative process) is asserted to the title of the email identifying the specific staffing proposal under development and for which guidance was sought, text of and editorial |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 254 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | highlights to a nonfinal draft description of elements of the proposal at issue, and personal views, characterizations, opinions, and concerns about portions of the draft description and relevant legal authorities at issue to protect the deliberative process of TFI and FinCEN.  This information was part of an internal review and comment process among TFI and FinCEN personnel for the development of a staffing proposal that was never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| **TFI_00004301** TFI_00004302 TFI_00004303 TFI_00004304 | Page 1 of a 4-page email string titled "Fwd: Tomorrow's ESG" among FinCEN personnel regarding an upcoming ESG meeting on the proposed TFI realignment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted a portion of the email identifying a specific element of a staffing proposal under development for the proposed TFI realignment.  Redacted the names and email addresses of FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to a portion of the email identifying a specific element of staffing proposal under development for the proposed TFI realignment to protect the deliberative process of TFI and FinCEN.  This information was part of an internal discussion among senior level TFI and FinCEN personnel working on the development of the staffing proposal which was never implemented and which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | personnel to unwarranted invasion of their personal privacy. |
| **TFI_00004351** TFI_00004352 TFI_00004353 | Page 1 of a 3-page email string titled "FW: Exec Sec CT: New Case: Duffy Fitzpatrick on TFI Staff Proposal Reorg" among FinCEN personnel circulating a nonfinal draft response to a congressional inquiry on the proposed TFI realignment. | (b)(6) (b)(7)(C) | Redacted in part – Redacted the names and email addresses of FinCEN personnel. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| **TFI_00004401**<br>TFI_00004402<br>TFI_00004403<br>TFI_00004404 | Page 1 of a 4-page email string titled "Fwd: Senate Appropriations Follow-up Questions FINAL" among Treasury and FinCEN personnel circulating a proposed "final" draft response to a congressional inquiry on the proposed TFI realignment prior to sending it to OMB for additional review and consideration. | (b)(5) DP<br>(b)(6)<br>(b)(7)(C) | Redacted in part – Redacted substantive portions of the email identifying and describing proposed design elements of a specific staffing proposal, personal critique, criticisms, views and opinions regarding the proposed "final" description of those design elements, including threatened actions if certain changes are not made, and anticipated edits to be made in the OMB review process to the "final" draft response.  Redacted the names and email addresses of TFI, FinCEN and OGC personnel.<br>EXEMPTION 5 (deliberative process) is asserted to substantive portions of the email identifying and describing proposed design elements of a specific staffing proposal never implemented, personal critique, criticisms, views and opinions of a reviewer regarding the proposed "final" description of those design elements, including threatened actions if certain changes are not made, and a comment revealing anticipated edits to be made in the OMB review process to the "final" draft response to protect the deliberative process of TFI and FinCEN.  This information reveals the substance of proposed design elements never implemented, reflect the personal thoughts and accusations of a reviewer about perceived misstatements in the nonfinal draft response and projected changes to the document resulting from OMB's serial internal review and comment process.  This information was part of an ongoing internal predecsional and deliberative discussion |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | among senior level personnel evaluating the substance of a document to be reviewed by OMB prior to any final version of the document being sent to the Senate Appropriation Committee which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00004447 TFI_00004448 TFI_00004449 TFI_00004450 **TFI_00004451** | Page 5 of a 5-page nonfinal draft legal memorandum dated November __, 2016 from FinCEN Chief Counsel responding to a request for legal advice concerning certain aspects of the proposed TFI realignment.  Note: This a subsequent draft of the documents described in Bates pages 1451, 1501, 2651, 3201 (above). THIS PAGE CONTAINS THE SAME INFORMATION DESCRIBED IN BATES PAGE 2651 (ABOVE). ADDITIONAL INFORMATION: None | (b)(5) AC (b)(5) WP (b)(5) DP | THE EXEMPTIONS AND JUSTICIFICATIONS ASSERTED TO WITHHOLD THE INFORMATION ON BATES PAGE 2651 ARE INCORPORATED BY REFERENCE HERE. |
| TFI_00004500 **TFI_00004501** | Page 2 of a 2-page email string titled "RE: TFI Executive Steering Group (ESG) draft charter (1-pager)" among TFI and FinCEN personnel regarding an upcoming ESG meeting on the proposed TFI realignment. | (b)(6) (b)(7)(C) | Redacted in part – Redacted the names, email addresses, and phone number of TFI personnel. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti- |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
| | | | money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00004550 **TFI_00004551** TFI_00004552 | Page 2 of a 3-page email string among FinCEN personnel regarding a request for legal advice from FinCEN's Office of Chief Counsel regarding a proposal under consideration for the proposed TFI realignment. THIS PAGE CONTAINS THE SAME INFORMATION DESCRIBED IN BATES PAGES 1101 AND 1901 (ABOVE) WHEN COMBINED. ADDITIONAL INFORMATION: None | (b)(5) AC (b)(5) DP (b)(6) (b)(7)(C) | THE EXEMPTIONS AND JUSTICIFATIONS ASSERTED TO WITHHOLD THE INFORMATION ON BATES PAGES 1101 AND 1901 ARE INCORPORATED BY REFERENCE HERE. |
| TFI_00004600 **TFI_00004601** | Page 2 of a 4 page email string among FinCEN personnel regarding a request for | (b)(5) AC (b)(5) DP | THE EXEMPTIONS AND JUSTICIFATIONS ASSERTED TO WITHHOLD THE |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| TFI_00004602 TFI_00004603 | legal advice from FinCEN's Office of Chief Counsel regarding a proposal under consideration for the proposed TFI realignment.  THIS PAGE CONTAINS THE SAME INFORMATION DESCRIBED IN BATES PAGE 4551 (ABOVE).  THE EXEMPTIONS AND JUSTICIFICATIONS ASSERTED TO WITHHOLD THE INFORMATION ON BATES PAGE 4551 ARE INCORPORATED BY REFERENCE HERE. ADDITIONAL INFORMATION: None | (b)(6) (b)(7)(C) | INFORMATION ON BATES PAGE 4551 ARE INCORPORATED BY REFERENCE HERE. |
| **TFI_00004651** TFI_00004652 | Page 1 of a 2-page email string titled "FW: TFI/FinCEN OMB 1-pager" among FinCEN personnel discussing FinCEN's proposed revisions and comments to an attached nonfinal draft one page document outlining certain issues concerning a proposed course of action under consideration for the proposed TFI realignment. MOST OF THIS PAGE CONTAINS THE SAME INFORMATION DESCRIBED IN BATES PAGE 3601 (ABOVE). ADDITIONAL INFORMATION: This page also contains two subsequent emails under the same title at the top of the page. | (b)(6) (b)(7)(C) |  THE EXEMPTIONS AND JUSTICIFICATIONS ASSERTED TO WITHHOLD THE INFORMATION ON BATES PAGE 3601 ARE INCORPORATED BY REFERENCE HERE. THE FOLLOWING PERTAINS TO THE ADDITIONAL INFORMATION ON THIS PAGE.  Redacted in part – Redacted the names, email addresses and direct phone number of FinCEN personnel. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of FinCEN personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti- |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 263 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00004695 TFI_00004696 TFI_00004697 TFI_00004698 TFI_00004699 TFI_00004700 **TFI_00004701** | BLANK PAGE – Substituted Bates page 4702 below | n/a | BLANK PAGE |
| **TFI_00004702** TFI_00004703 TFI_00004704 TFI_00004705 TFI_00004706 TFI_00004707 | Page 1 of a 6-page email string titled "FW: Final TFI OMB draft memo" among Treasury and FinCEN personnel regarding a particular version of nonfinal draft document for OMB review describing the TFI realignment proposal. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted substantive portions of email conversation containing excerpted nonfinal draft text from commentary describing the nature and tenor of disputed viewpoints regarding the described overlap, personal opinions and characterizations regarding alleged |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 264 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|-----------------------------|------------------------|------------------------------------------------------|
|       |                             |                        | misstatements and/or misunderstandings about the excerpted text and the nature of those misstatements, and personal views about anticipated discussions with OMB in their serial review of the draft document.  Redacted the names, email addresses and direct phone number of a FinCEN and OGC personnel. EXEMPTION 5 (deliberative process) is asserted to the excerpted nonfinal draft text in dispute, commentary describing the nature and tenor of disputed viewpoints, personal opinions and characterizations regarding alleged misstatements and/or misunderstandings about the excerpted text and the nature of those misstatements, and personal views about anticipated discussions with OMB in their serial review of the draft document to protect the deliberative process of TFI and FinCEN.  This information reveals a substantive portion of text of a nonfinal draft document, very sensitive senior level discussion of the nature and tenor of a disputed viewpoints, details of the dispute, personal opinions and allegations about perceived misstatements and view on anticipated discussions with OMB in the serial review process. This information is part of a sensitive discussion among senior FinCEN and OGC personnel attempting to outline and resolve a matter of internal dispute which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 265 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 266 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | personnel to unwarranted invasion of their personal privacy. |
| **TFI_00004751** TFI_00004752 | Page 1 of a 2-page email string among TFI, FinCEN and OGC personnel circulating for substantive and legal review a nonfinal draft document concerning a staffing proposal under development for the proposed TFI realignment circulated. | (b)(5) AC (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the title of the email string identifying a specific element of a staffing proposal under development for which legal advice was sought.  Redacted the names and email addresses of TFI, FinCEN and OGC personnel.  Redacted the text of a specific edit to a version of the draft document and a personal statement about the proposed internal review process. EXEMPTION 5 (privileged attorney-client communications) is asserted to the title of the email string identifying a specific element of a staffing proposal under development for which legal advice was sought.  The subject of the email string is part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature matters encompassed by the privilege and would impair the ability of Treasury and FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (deliberative process) is asserted to the title of the email identifying the specific staffing proposal under development, the text of a specific edit to a version of the draft document under review and a personal statement about the proposed internal review process to protect the deliberative process of TFI and FinCEN.  This information was part of an internal review and |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | comment process among senior TFI, FinCEN and OGC personnel for the development of a staffing proposal that was never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI  00004800 **TFI_00004801** | Page 2 of a 2-page email string among TFI, FinCEN and OGC personnel concerning updated revisions to a nonfinal staffing proposal under development for the proposed TFI realignment. THIS PAGE CONTAINS THE SAME INFORMATION DESCRIBED IN BATES PAGE 4201 (ABOVE). ADDITIONAL INFORMATION:  None. | (b)(5) DP (b)(6) (b)(7)(C) | THE EXEMPTIONS AND JUSTICIFICATIONS ASSERTED TO WITHHOLD THE INFORMATION ON BATES PAGE 4201 ARE INCORPORATED BY REFERENCE HERE. |
| **TFI_00004851** TFI_00004852 TFI_00004853 | Page 1 of a 3-page email string among TFI, FinCEN and OGC personnel circulating for substantive and legal review a nonfinal draft document concerning a staffing proposal under development for the proposed TFI realignment circulated. | (b)(5) AC (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the title of the email identifying a staffing proposal under development for which substantive and legal review was sought and the substance of preliminary legal analysis, interpretation and assessments.  Redacted the names and email addresses of TFI, FinCEN and OGC personnel.  Redacted edits and internal views, characterizations, opinions concerning draft document. EXEMPTION 5 (privileged attorney-client communications) is asserted to title of the email identifying a specific matter for which legal review is sought, the substance of preliminary legal analysis, interpretation and legal |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | assessments, and substantive legal and editorial commentary on text of the preliminary legal advice to be provided.  The subject of the email is part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature matters encompassed by the privilege and would impair the ability of Treasury and FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (deliberative process) is asserted title of the email identifying a specific element of staffing proposal under development that was never implemented and notional guidance concerning a draft document to protect the deliberative process of TFI, FinCEN and OGC. The discussion is part of an internal, pre-decisional discussion among senior level personnel attempting to determine how to develop a specific staffing proposal which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of personnel who occupy sensitive national security |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 270 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy |
| **TFI_00004901** TFI_00004902 | Page 1 of a 3-page email string among TFI, FinCEN and OGC personnel circulating for substantive and legal review a nonfinal draft document concerning a staffing proposal under development for the proposed TFI realignment circulated. | (b)(5) AC (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the title of the email identifying a staffing proposal under development for which substantive and legal review was sought.  Redacted the names and email addresses of TFI, FinCEN and OGC personnel.  Redacted the substantive portion of an email containing a preliminary legal assessment and a specific legal |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | question under discussion. EXEMPTION 5 (privileged attorney-client communications) is asserted to title of the email identifying a specific matter for which legal review is sought and substantive portion of an email containing a preliminary legal assessment and a specific legal question under discussion. This information is part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature matters encompassed by the privilege and would impair the ability of Treasury and FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (deliberative process) is asserted title of the email identifying a specific element of staffing proposal under development that was never implemented and notional guidance protect the deliberative process of TFI, FinCEN and OGC. The discussion is part of an internal, pre-decisional discussion among senior level personnel attempting to determine how to develop a specific staffing proposal which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identity of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00004949 TFI_00004950 **TFI_00004951** | Page 3 of a 6-page draft memorandum dated October ___, 2016 from FinCEN Chief Counsel responding to a request for | (b)(5) AC (b)(5) WP (b)(5) DP | THE EXEMPTIONS AND JUSTICIFATIONS ASSERTED TO WITHHOLD THE |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 273 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| TFI_00004952<br>TFI_00004953<br>TFI_00004954 | legal advice concerning certain aspects of the proposed TFI realignment.<br>THIS PAGE CONTAINS THE SAME INFORMATION DESCRIBED IN BATES PAGE 1451 (ABOVE).<br>ADDITIONAL INFORMATION: None | | INFORMATION ON BATES PAGE 1451 ARE INCORPORATED BY REFERENCE HERE. |
| TFI_00004998<br>TFI_00004999<br>TFI_00005000<br>**TFI_00005001**<br>TFI_00005002 | Page 4 of a 5-page email string titled "Re: Senate Appropriations Follow-up Questions FINAL" among TFI, FinCEN and OGC personnel circulating for review a proposed "final" draft response to a congressional inquiry on the proposed TFI realignment prior to sending it to OMB for additional review and consideration. | (b)(5) AC<br>(b)(5) DP<br>(b)(6)<br>(b)(7)(C) | Redacted in part – Redacted substantive portions of the email identifying and describing a proposed design element of a specific staffing proposal, topics in the draft document needing additional development and confirmation, and a specific element of the staffing proposal for which legal review and advice was requested.  Redacted the names and email addresses of TFI, FinCEN and OGC personnel.<br>EXEMPTION 5 (privileged attorney-client communications) is asserted to title of the email identifying a specific a specific element of the staffing proposal for which legal review and advice was requested.  This information is part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature matters encompassed by the privilege and would impair the ability of Treasury and FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency.<br>EXEMPTION 5 (deliberative process) is asserted to substantive portions of the email identifying and describing a proposed design element of a specific staffing proposal and topics in the draft document |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | needing additional development and confirmation to protect the deliberative process of TFI and FinCEN.  This information reveals the substance of a proposed design element never implemented and reflect editorial critique during an internal review and comment process.  This information was part of an ongoing internal pre-decisional and deliberative discussion among senior level personnel evaluating the substance of a document to be reviewed by OMB prior to any final version of the document being sent to the Senate Appropriation Committee which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, |

Case 1:17-cv-01524-APM Document 75-2 Filed 03/31/23 Page 275 of 359

TFI REALIGNMENT VAUGHN INDEX LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | their foreign counterparts and foreign governments. These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage. There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| **TFI_00005051** TFI_00005052 | Page 1 of a 2-page document titled "EXSUM: HFSC & HFAC Brief on realignment of assets" summarizing notes taken during a briefing of congressional staff on the TFI realignment proposal by Treasury personnel. | (b)(5) DP (b)(5) CCD (b)(6) (b)(7)(C) | Redacted in part – Redacted substantive portions of the summary expressing the author's selected personal interpretations and characterizations of the nature and tenor of congressional staff perceptions, reactions, concerns and criticisms about certain concepts and design elements of the proposed TFI realignment, staff recommendations for the development of a specific proposed staffing element and a set of paraphrased questions from staffers for further consideration. Redacted names of TFI, FinCEN and OGC personnel. EXEMPTION 5 (deliberative process) is asserted to portions expressing personal interpretations and characterizations of the nature and tenor of congressional staff perceptions, reactions, |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 276 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | concerns and criticisms about certain concepts and design elements of the proposed TFI realignment, staff recommendations, and paraphrased questions from staffers for further consideration to protect the deliberative process of Treasury.  This information reflects the personal views of the drafter, not shared with the congressional staffers, and part of an internal effort to inform TFI leadership of key takeaways from the briefing for further consideration for the development of the TFI realignment.  For these reasons, disclosure of the information would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially causing public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken and to protect against premature disclosure of proposed policies before they are actually adopted. EXEMPTION 5 (consultant corollary doctrine).  This same information also part of a consultative process between Treasury (TFI/TFFC and FinCEN) and Congress in which Treasury, in part, sought advice and recommendations from congressional staff to assist in the planning and development of the realignment proposal to successfully achieve its intended goals.  For these reasons, disclosure of the information would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially causing public |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|-------------------------------------------------------|
|       |                              |                        | confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken and to protect against premature disclosure of proposed policies before they are actually adopted. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | personnel to unwarranted invasion of their personal privacy. |
| TFI_00005100 **TFI_00005101** TFI_00005102 | Page 2 of a 3-page email string titled "FW: FinCEN and TFI realignment – OMB among FinCEN personnel. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – The portion of the message describing cautionary instructions from OMB about prematurely discussing the TFI realignment with Congress and personal comments, views, and opinions regarding any similar discussions with outside stakeholders. Redacted the names and email addresses of TFI and FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to a portion of the message describing cautionary instructions from OMB about prematurely discussing the TFI realignment with Congress and personal comments, views, and opinions regarding any similar discussions with outside stakeholders that are pre-decisional and deliberative in nature to protect the deliberative process of FinCEN.  This information was part of an internal discussion among senior TFI and FinCEN personnel to maintain the integrity of the agency's deliberative process which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 279 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00005134 TFI_00005135 TFI_00005136 TFI_00005137 TFI_00005138 TFI_00005139 TFI_00005140 | Page 18 of a 24-page revised draft document describing and analyzing elements of proposed staffing models under consideration for the proposed realignment.  This page contains a table outlining certain programmatic and operational activities specific to two TFI | (b)(5) DP | Redacted in full – Redacted a nonfinal draft table reflecting analysis of certain programmatic and operational activities specific to two TFI strategic mission areas and identifying perceived scope of duty limitations impacting realignment scenarios under consideration. EXEMPTION 5 (deliberative process) is asserted |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| TFI_00005141 TFI_00005142 TFI_00005143 TFI_00005144 TFI_00005145 TFI_00005146 TFI_00005147 TFI_00005148 TFI_00005149 TFI_00005150 **TFI_00005151** TFI_00005152 TFI_00005153 TFI_00005154 TFI_00005155 TFI_00005156 TFI_00005157 | strategic mission areas and identifying scope of duty limitations impacting realignment scenarios under consideration. | | to notional staffing models under analysis and consideration to include analysis of certain programmatic and operational activities specific to two TFI strategic mission areas and identifying perceived scope of duty limitations impacting realignment scenarios under consideration to protect the deliberative process of the Treasury Department.  The discussion is part of an internal, pre-decisional and deliberative discussion among senior TFI personnel to evaluate elements of certain staffing models under consideration that were never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00005197 TFI_00005198 TFI_00005199 TFI_00005200 **TFI_00005201** | Page 5 of a 5-page email string among FinCEN personnel concerning a design element of a staffing proposal under consiferation. | (b)(6) (b)(7)(C) | Redacted in part - Redacted the name and direct phone number of FinCEN personnel. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti- |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 281 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00005251 | Page 1 of a 1-page of a heavily edited nonfinal draft document describing functional and operational evolution of certain TFI components and details several conceptual aspects of the proposed TFI realignment, strategic goals and assessments, and proposed courses of action.  This is the fourth revised version of this draft document. | (b)(5) DP | Redacted in full - Redacted nonfinal draft descriptions of functional and operational evolution of certain TFI components and details of proposed conceptual design and integration aspects of the proposed TFI realignment, including strategic goals and assessments, proposed courses of action and redline edits to the text. EXEMPTION 5 (deliberative process) is asserted to nonfinal draft descriptions of functional and operational evolution of TFI components and details of conceptual design and integration elements for development of the proposed TFI realignment, including strategic goals and |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | assessments, and proposed courses of action to protect the deliberative process of TFI.  This information reveals nonfinal assessments of the evolution of functional and operational roles and capacities of discrete TFI components and details of specific integration models relating to realignment scenarios under consideration, notional planning and proposed courses of action regarding the realignment, never implemented.  This nonfinal document is heavily revised and contains numerous redline edits to the textual presentation of this information, all of which were part of an internal, pre-decisional discussion within TFI trying to determine whether and how to shape the proposed realignment project which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00005300 **TFI_00005301** TFI_00005302 TFI_00005303 TFI_00005304 | Page 2 of a 5-page email string titled "FW: Need FinCEN and OIA to clear on language for email update to Hill" among TFI, FinCEN and OGC personnel regarding a draft response to unspecified congressional inquiries about the TFI realignment proposal circulated for | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part - Redacted substantive portions of email text presenting interpretations and characterizations of what information has been asked to be provided in response to unspecified congressional inquiries regarding the TFI realignment proposal, divergent views, proposed strategic messaging and recommendations on how to respond to such inquiries, and personal opinions |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | internal review, comment, and clearance by TFI components. | | on these matters and the substance of a proposed response.  Redacted the names and email addresses of TFI, FinCEN and OGC personnel. EXEMPTION 5 (deliberative process) is asserted to senior level discussions expressing individual understandings, interpretations, and characterizations of what information about the proposed realignment has been asked to be provided, divergent views of commentors, recommendations on how to respond to such inquiries, personal opinions on these matters and the substance of a proposed response to protect the deliberative process of TFI.  This information reflects the back-and-forth of internal debate and planning and reveals substantive elements of that pre-decisional and deliberative discussion on the substance and strategic messaging of a proposed response under consideration which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| **TFI_00005351** TFI_00005352 TFI_00005353 TFI_00005354 TFI_00005355 TFI_00005356 TFI_00005357 | Page 1 of a 7-page email string among FinCEN personnel circulating for review and editing draft notes from a senior level conference call concerning the proposed TFI realignment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted a portion of the email title identifying a specific element of a staffing proposal under consideration and substantive portions of draft notes describing Acting Under Secretary Szubin's reaction to a "letter from the Hill" received the evening prior and his notional assessment of a what is needed for a response which was the purpose of the call.  Redacted attributions of quoted or paraphrased statements |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | attributed individuals on the call, the substance of the quoted or paraphrased statements identifying a specific element of a staffing proposal, questions concerning proposed design limitations to the element under discussion, explanatory responses to those questions concerning the rational of the proposed design, and expressions of personal opinion and critique of the aspects of the design limitations.  Redacted names of serial edited nonfinal draft documents attached to the final email in the string which identify specific design elements of staffing proposals under consideration and development and the names of other nonfinal draft documents identified as being relevant to those staffing proposals, and the names and email addresses of TFI, FinCEN, and OGC personnel. EXEMPTION 5 (deliberative process) is asserted to description of Acting Under Secretary Szubin's reaction to a "letter from the Hill" and his notional assessment of a response, the substance and attribution of quoted or paraphrased statements identifying a specific element of a staffing proposal, questions and answers concerning proposed design limitations to the element under discussion, and personal opinions and critique of those limitations to protect the deliberative process of TFI and FinCEN.  This information reflects the back-and-forth of internal planning and development of a proposed design element of the realignment, reveals the nature and substance of the element under consideration, and was part of |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | an internal, pre-decisional and deliberative discussion among senior TFI leadership trying to determine whether and how to shape the realignment staffing proposal that was never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 287 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI  00005399 TFI  00005400 **TFI_00005401** | Page 3 of a 3-page email string titled "RE: Tomorrow's ESG" among Treasury and FinCEN personnel reminding recipients of a scheduled ESG meeting and topics for discussion concerning the proposed TFI realignment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in full – Redacted substantive descriptions of the specific agenda items and sub-elements and notional planning, including objectives and proposed near-term, mid-term and long-term timelines under consideration for the development of the proposed TFI realignment. Redacted the name of a senior TFI advisor. EXEMPTION 5 (deliberative process) is asserted to the specific agenda items and sub-elements and notional planning, including objectives and proposed near-term, mid-term and long-term timelines under consideration for the development of the proposed TFI realignment to protect the deliberative process of TFI.  This information identifies specific strategic design concepts of the proposed realignment and details elements of those design concepts, including proposed staffing models, proof of concept, logistics, and longitudinal objectives all of which were notional and under discussion for substantive development. This information was part of an internal senior level discussion within TFI working on the design |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 288 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|-------------------------------------------------------|
|       |                              |                        | and development of a plan to realign TFI organizationally that was never implemented, except for minor structural changes within the TFI front office.  Release of this information would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 289 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| **TFI_00005451** TFI_00005452 TFI_00005453 | Page 1 of a 3-page revised nonfinal draft letter to "Rep. Duffy/Fitzpatrick" responding to their inquiry regarding the proposed TFI realignment. | (b)(5) AC (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the heavily revised nonfinal draft text in the first page of the letter detailing conceptual elements of the proposed realignment, strategic design, and notional planning.  Redacted internal redline edits to text, comments of an editorial nature, personal assessments, concerns, and opinions of commentors, and description identifying the nature and substance of a specific design element of a staffing proposal for which legal advice was sought. EXEMPTION 5 (privileged attorney-client communications) is asserted to portions of the nonfinal draft letter and commentary revealing the nature and substance of a specific design element of a staffing proposal for which legal advice was sought.  This information was part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature matters encompassed by the privilege and would impair the ability of Treasury and FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | advocacy on behalf of the agency. EXEMPTION 5 (deliberative process) is asserted to revised nonfinal draft text detailing conceptual elements, strategic design, and notional planning for the proposed realignment, redline edits and editorial commentary, personal opinions of commentors, and description identifying the nature and substance of a specific design element of a staffing proposal for which legal advice was sought to protect the deliberative process of TFI. This nonfinal version underwent further revision and the information presented reflects the deliberative back-and-forth of internal review and comment process in drafting a response to a congressional inquiry.  It reveals the nature and substance of the conceptual elements, strategic design, and notional planning and was part of a broader internal, senior level discussion to determine how to design and develop the proposed realignment that was never implemented, except for minor structural changes within the TFI front office.  Release of this information would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| TFI_00005497<br>TFI_00005498<br>TFI_00005499<br>TFI_00005500<br>**TFI_00005501** | Page 5 of a 5-page email string titled "RE: Senate Appropriations Follow-up Questions FINAL" among Treasury and FinCEN personnel regarding a draft response to a congressional inquiry on the proposed TFI realignment.<br>THIS PAGE CONTAINS THE SAME INFORMATION DESCRIBED IN BATES PAGE 5001 (ABOVE). ADDITIONAL INFORMATION: None | (b)(5) AC<br>(b)(5) DP<br>(b)(6)<br>(b)(7)(C) | THE EXEMPTIONS AND JUSTICIFICATIONS ASSERTED TO WITHHOLD THE INFORMATION ON BATES PAGE 5001 ARE INCORPORATED BY REFERENCE HERE. |
| TFI_00005547<br>TFI_00005548<br>TFI_00005549<br>TFI_00005550<br>**TFI_00005551** | Page 5 of a 5-page email string titled "RE: OMB Questions: Senate Appropriations Follow-up Questions to FinCEN" among Treasury budgetary staff, OGC, FinCEN and OMB personnel circulating for review and editing a draft response to questions from the Appropriations Committee regarding the proposed TFI realignment. | (b)(5) DP<br>(b)(6)<br>(b)(7)(C) | Redacted in part - Redacted substantive descriptions of suggested edits to the response, proposed messaging and timing, and personal opinions and views on substance and process. Redacted the names, email addresses and direct phone numbers of OMB and Treasury budgetary staff and OGC personnel.<br>EXEMPTION 5 (deliberative process) is asserted to substantive descriptions of suggested edits to the response, proposed messaging and timing, substantive feedback from OBM reviewers, and personal opinions and views on the substance of the draft response and the coordinated OMB review process to protect the deliberative process of OMB and Treasury regarding the proposed TFI realignment.  This information reflects the deliberative back-and-forth of internal review and comment process in drafting and strategic messaging of a response to a congressional inquiry about the realignment which, if disclosed, would foreseeably jeopardize the candid considerations |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 292 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. <br><br>EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel whose duties and responsibilities include access to sensitive financial and budgetary information of the Department and high-level communications concerning those matters. These individuals maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts of senior leaders to manage and finance the operations of the Department that could subject them to undue public scrutiny or harassment.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00005601 | Page 1 of a 1-page email titled "Update" from a FinCEN Congressional Advisor to a John O'Hara, a Senate Banking Committee staffer providing an update on | (b)(6) (b)(7)(C) | Redacted in part – Redacted the names and email addresses of FinCEN personnel. <br><br>EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 293 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | certain matters regarding the TFI proposed realignment. | | positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| **TFI_00005651** TFI_00005652 TFI_00005653 TFI_00005654 | Page 1 of a 4-page email string titled "FW: Questions" among TFI and FinCEN personnel concerning a specific staffing model under consideration for the proposed TFI realignment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted portion of email providing a distilled explanation of the business case for the design of a specific staffing model under consideration for integration of certain TFI organizational components, substantive critiques and assessments of specific elements of the proposed model, and personal views and opinions |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 294 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | on defining the requirements for coordinated development of the proposal.  Redacted the names and email addresses of TFI and FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to the business case description for the design of the staffing model under consideration, substantive critiques and assessments of specific elements of the proposed model, and personal views and opinions on defining the requirements for coordinated development of the proposal to protect the deliberative process of TFI and FinCEN regarding the proposed TFI realignment.  This information reveals internal analysis of discrete operational and functional roles and work products of certain TFI components in the context of proposed integration of certain elements to achieve increased efficiency and mission effectiveness. This information also reflects the personal opinions of commenters about those matters and was part of an internal discussion among TFI and FinCEN personnel to assess the requirements for coordinated development of the proposal that was never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00005699 TFI_00005700 **TFI_00005701** | Page 3 of a 5-page email string titled "RE: Seeking assistance" among FinCEN personnel regarding a nonfinal draft paper responding to a request for | (b)(5) AC (b)(5) DP | Redacted in full – Redacted references to and text of selected legal authorities and an internal Treasury Order which are the subject of nonfinal draft analysis and proposed programmatic and |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 296 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|-------------------------------------------------------|
| TFI_00005702 TFI_00005703 | programmatic and legal advice on the analytic roles and responsibilities of certain TFI components relative to conceptual aspects of the TFI realignment proposal. | | legal guidance under review and comment to clarify analytic roles and responsibilities of certain TFI components relative to conceptual aspects of the TFI realignment proposal. EXEMPTION 5 (privileged attorney-client communications) is asserted to the text of selected legal authorities and an internal Treasury Order identifying the specific matter for which legal advice was sought.  The selected authorities were part of a privileged attorney-client communication which, if disclosed, would reveal the specific subject and nature of matters encompassed by the privilege and would impair the ability of FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (deliberative process) is asserted to the text of specific legal authorities selected for incorporation in nonfinal draft programmatic guidance analyzing and interpreting those authorities as they relate to analytic roles and responsibilities of certain TFI components to protect the deliberative process of TFI and FinCEN regarding the proposed realignment.  This information was part of a pre-decisional and deliberative process by TFI and FinCEN to assess and evaluate the legal parameters that govern mission specific roles and responsibilities and draft guidance to further clarify those assessments which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00005750 **TFI_00005751** TFI_00005752 TFI_00005753 TFI_00005754 | Page 3 of a 5-page email string among FinCEN personnel regarding a draft paper responding to a request for guidance on the roles and responsibilities of certain TFI components relative to conceptual aspects of the TFI realignment proposal. THIS PAGE CONTAINS THE SAME INFORMATION DESCRIBED IN BATES PAGE 5701 (ABOVE). ADDITIONAL INFORMATION: A more complete excerpt of the text of one of the legal authorities described in Bates page 5701. | (b)(5) AC (b)(5) DP | THE EXEMPTIONS AND JUSTICIFICATIONS ASSERTED TO WITHHOLD THE INFORMATION ON BATES PAGE 5701 ARE INCORPORATED BY REFERENCE HERE. THE FOLLOWING PERTAINS TO THE ADDITIONAL INFORMATION ON THIS PAGE.  Redacted in full – Redacted references to and text of selected legal authorities and an internal Treasury Order which are the subject of nonfinal draft analysis and proposed programmatic and legal guidance under review and comment to clarify analytic roles and responsibilities of certain TFI components relative to conceptual aspects of the TFI realignment proposal. EXEMPTION 5 (privileged attorney-client communications) is asserted to the text of selected legal authorities and an internal Treasury Order identifying the specific matter for which legal advice was sought.  The selected authorities were part of a privileged attorney-client communication which, if disclosed, would reveal the specific subject and nature of matters encompassed by the privilege and would impair the ability of FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | advice and advocacy on behalf of the agency. EXEMPTION 5 (deliberative process) is asserted to the text of specific legal authorities selected for incorporation in nonfinal draft programmatic guidance analyzing and interpreting those authorities as they relate to analytic roles and responsibilities of certain TFI components to protect the deliberative process of TFI and FinCEN regarding the proposed realignment.  This information was part of a pre-decisional and deliberative process by TFI and FinCEN to assess and evaluate the legal parameters that govern mission specific roles and responsibilities and draft guidance to further clarify those assessments which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00005795 TFI_00005796 TFI_00005797 TFI_00005798 TFI_00005799 TFI_00005800 **TFI_00005801** | Page 7 of a 7-page email string among Treasury and FinCEN personnel concerning a request for legal advice from FinCEN's Office of Chief Counsel regarding a proposal under consideration for the proposed TFI realignment. | (b)(5) AC (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the title of the email identifying a specific matter for which legal advice is sought and the substance of email text citing legal authority which is the subject of the request and personal comment.  Redacted the name and email address of a FinCEN senior advisor and Bob Mahaffie's email address and direct phone number. EXEMPTION 5 (privileged attorney-client |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | communications) is asserted to the title of the email identifying a specific matter for which legal advice is sought and the substantive portion of the email citing legal authority which is the subject of the request.  The subject of the email and substance of the email are part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature matters encompassed by the privilege and would impair the ability of Treasury and FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (deliberative process) is asserted to the title  and substantive portion of the email citing legal authority which is the subject of the request for legal advice, including a personal comment, that would grant insight into specific nature of a staffing proposal under consideration to protect the deliberative process of Treasury and FinCEN.  This information is part of an internal discussion among Treasury and FinCEN personnel about the interpretation of a legal authority and its impact on a staffing proposal under consideration that was never implemented and which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| TFI_00005849 TFI_00005850 **TFI_00005851** TFI_00005852 TFI_00005853 TFI_00005854 TFI_00005855 | Page 3 of a 7-page email string among TFI and FinCEN personnel concerning specific conceptual aspects of the TFI realignment proposal. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the portion of the title of the email string identifying specific notional working papers under conceptual development to guide the work of proposed IMT workgroups. Redacted substantive and conceptual descriptions and design details of discrete IMT workgroups under development, notional timelines and planning considerations, and personal comments, assessments, views and opinions on substance and process relating to the proposed realignment. Redacted the names and email addresses of TFI personnel. EXEMPTION 5 (deliberative process) is asserted to notional working papers under conceptual development, substantive and conceptual descriptions and design details of discrete IMT workgroups and notional timelines and planning considerations, and personal comments, assessments, views and opinions on substance and process relating to the proposed realignment to protect the deliberative process of TFI and FinCEN.  This information reveals the specific types of IMT workgroups and working papers being proposed, rudimentary design concepts and related conversation on coordinating developmental issues and concerns.  This information was also part of an internal discussion among TFI and FinCEN personnel trying to identify conceptual design elements for discrete IMT workgroups which, if disclosed, would foreseeably jeopardize the candid considerations |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 302 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|-------------------------------------------------------|
|       |                              |                        | necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
|       |                              |                        | EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 303 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| **TFI_00005901** TFI_00005902 | Page 1 of a 2-page email string among TFI and FinCEN personnel regarding specific conceptual element of the TFI realignment proposal. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted substance of the emails containing in-depth descriptions and critique of a perceived misunderstandings of the functional contours and capacity of certain analytic elements of TFI components impacting inter-component coordination and collaboration, including the details of specific examples cited and related matters raised to senior leadership for consideration, and personal comments, assessments, views and opinions expressed on these matters.  Redacted the names and email addresses of TFI and FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to descriptions and critique of a perceived misunderstandings of certain analytic elements of TFI components impacting inter-component coordination and collaboration, including specific examples cited and related matters raised to senior leadership for consideration, and personal comments, assessments, views and opinions expressed on these matters to protect the deliberative process of TFI and FinCEN regarding proposed TFI realignment.  This information reveals the sensitive back-and-forth of an examination and critique of a substantive misunderstanding impacting efforts to develop conceptual and strategic elements of the proposed realignment and the personal views and opinions |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | of commentors on these matters.  It was also part of a larger internal discussion among senior TFI and FinCEN personnel regarding strategic integration of certain TFI components that was never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken.<br><br>EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 305 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| **TFI_00006051** TFI_00006052 | Page 1 of a 2-page email string among TFI and FinCEN personnel inviting recipient to a meeting to discuss a specific staffing proposal under development for the proposed TFI realignment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted portions of the title and email text identifying the specific staffing proposal, description of the purpose of the discussion identifying discrete design elements and the nature and context of other action items under consideration and development or needed in advance of the discussion.  Redacted the names and email addresses of TFI and FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to the title  and email text identifying the specific staffing proposal under conceptual development, description of discrete design elements and the nature and context of other proposed action items under consideration and development or needed in advance of the to protect the deliberative process of TFI and FinCEN.  These matters reveal early efforts of a design team to consider and develop particular elements of a staffing proposal that was never implemented.  These efforts were also part of an deliberative and pre-decisional process to within TFI develop conceptual designs for the proposed realignment which, if disclosed, would |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|--------------------------------------------------------|
|       |                              |                        | foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 307 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
| | | | activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| **TFI_00006101** TFI_00006102 | Page 1 of a 2-page email string titled "FW: EXSUMs: Congressional Engagements on TFI Realignment of Assets" circulating nonfinal draft summaries of notes taken during briefings of congressional staff on the TFI realignment proposal by Treasury personnel. | (b)(5) DP (b)(5) CCD (b)(6) (b)(7)(C) | Redacted in part – Redacted substantive portion of the email outlining three topics briefed to Hill staffers revealing details of discrete elements of the proposed realignment. Redacted the names and email addresses of TFI and FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to substantive portion of the email revealing topics briefed to Hill staffers and the details of discrete elements of the proposed realignment that are pre-decisional and deliberative in nature to protect the deliberative process of Treasury. This information created to inform TFI leadership about specific congressional briefings to keep them abreast of necessary congressional outreach. For these reasons, disclosure of the information would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially causing public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken and to protect against premature disclosure of proposed policies before they are actually adopted. EXEMPTION 5 (consultant corollary doctrine). This same information also part of a consultative process between Treasury (TFI/TFFC and FinCEN) and Congress in which Treasury in part, |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
|       |                              |                        | sought advice and recommendations from congressional staff to assist in the planning and development of the realignment proposal to successfully achieve its intended goals.  For these reasons, disclosure of the information would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially causing public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken and to protect against premature disclosure of proposed policies before they are actually adopted. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 309 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00006150 **TFI_00006151** | BLANK PAGE  – Substituted Bates page 6152 below. | n/a | BLANK PAGE |
| **TFI_00006152** TFI_00006153 | Page 1 of a 2-page email among TFI and FinCEN personnel regarding a collaborative effort to design specific elements of the proposed TFI realignment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted a portion of the title identifying a specific staffing concept under consideration and the substantive portion of the email identifying the name of a specific type of organizational unit under consideration, detailing efforts to assess ways to collaborate on specific strategic design elements, descriptions of notional interim assignments and next steps in advance of the next meeting, and internal comments, assessments, views and opinions on substance and collaborative process relating to the proposed realignment. EXEMPTION 5 (deliberative process) is asserted to the title  substantive portion of the email identifying a specific staffing concept and the name of a specific type of organizational unit under consideration, details of preliminary efforts to assess ways to collaborate on specific strategic design elements, descriptions of notional interim assignments and next steps in advance of the next |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 310 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | meeting, and internal comments, assessments, views and opinions on substance and collaborative process relating to the proposed realignment to protect the deliberative process of TFI.  This information reflects a collaborative planning and development process early in the design phase of specific staffing and strategic design concepts that are part of an internal discussion and assessment among senior TFI and FinCEN personnel which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken.<br>EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00006199 TFI_00006200 **TFI_00006201** | Page 3 of a 3-page email string among FinCEN personnel concerning the proposed TFI realignment. | (b)(6) (b)(7)(C) | Redacted in part - Redacted the name, email address and direct phone number of FinCEN personnel. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high- |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|-------------------------------------------------------|
| | | | profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00006250 **TFI_00006251** | Page 2 of a 2-page draft document titled "TFI Realignment Meeting - 13 October" summarizing the discussion of issues and agenda items discussed at a TFI realignment meeting concerning proposed courses of action under consideration for the proposed TFI realignment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in full – Redacted substantive description of timing and logistical concerns and issues with a proposed staffing model discussed at a TFI realignment meeting concerning proposed courses of action under consideration, the nature and tenor of paraphrased statements allegedly made by certain attendees on specific matters under consideration, and the author's impressions, assessments, views and opinions, characterizations of areas of disagreement, understandings of legal authorities, and proposed courses of action regarding various staffing proposals under consideration for the proposed TFI realignment. Redacted the names of TFI and FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to description of timing and logistical concerns and issues with a proposed staffing model, the nature and tenor of paraphrased statements allegedly made by certain attendees on specific |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | matters under consideration, and the author's personal impressions, opinions, characterizations of areas of disagreement, understandings of legal authorities, and proposed courses of action regarding various staffing proposals under consideration for the proposed TFI realignment to protect the deliberative process of FinCEN.  This information reflects the give and take of a collaborative planning and development process in the design phase of specific staffing and strategic design concepts that are part of an internal discussion and assessment among senior TFI and FinCEN personnel that were never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
| | | | Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00006299 TFI_00006300 **TFI_00006301** TFI_00006302 | Page 3 of a 4-page email string among TFI and FinCEN personnel circulating for review and comment a nonfinal draft document concerning a staffing proposed course of action related to the TFI realignment proposal. | (b)(5) AC (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted portions of the title and email text identifying the subject of a specific staffing proposal under consideration as part of the proposed TFI realignment, descriptions of specific text edits to the nonfinal draft document and reviewer comments, concerns and questions regarding certain draft text, and identification and details of questions posed to counsel for legal determination.  Redacted the names and email addresses of TFI and FinCEN personnel.  EXEMPTION 5 (privileged attorney-client communications) is asserted to reviewer comments identifying and detailing questions posed to counsel for legal determination that are part of a |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | specific request for legal advice.  The details of these matters are part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature matters encompassed by the privilege and would impair the ability of Treasury and FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency.<br>EXEMPTION 5 (deliberative process) is asserted to portions of the title and email text identifying the subject of a specific staffing proposal under consideration, specific text edits to the nonfinal draft document and reviewer comments, concerns and questions regarding certain draft text, and identification and details of questions posed to counsel for legal determination.to protect the deliberative process of TFI and FinCEN regarding proposed TFI realignment.  This information reflects the deliberative give and take of an internal review and comment process and reveal detailed elements of a staffing proposal never implemented.  All of these matters were part of an internal, pre-decisional discussion among senior TFI personnel regarding the contours of a staffing proposal which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 316 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| TFI_00006350 **TFI_00006351** | Page 2 of a 2-page nonfinal draft document circulated for review and comment announcing a specific staffing proposal on letterhead of the Office of Intelligence & Analysis, Department of the Treasury. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in full – Redacted substance of page 2 of the nonfinal draft document describing in detail specific design elements of the staffing proposal. Redacted the names and email addresses of TFI personnel. EXEMPTION 5 (deliberative process) is asserted to the content of page 2 describing in detail substantive design elements of the staffing proposal to protect the deliberative process of TFI and FinCEN regarding proposed TFI realignment. This iteration of the nonfinal draft document is a "clean" version incorporating text edits from certain FinCEN reviewers and underwent additional review and editing.  This information reflects the deliberative give and take of an internal review and comment process and reveal detailed elements of a staffing proposal never implemented.  All of these matters were part of an internal, pre-decisional discussion among senior TFI personnel regarding the contours of a staffing proposal which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 318 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00006400 **TFI_00006401** TFI_00006402 TFI_00006403 | Page 2 of a 4-page email string titled "RE: Update" among TFI and FinCEN personnel reporting on FinCEN employee inquiries regarding a specific staffing proposal preliminary to further development of the proposal to support certain realignment objectives. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted substantive portions of a response to specific questions posed by Mr. El-Hindi revealing the subject, nature, scope and substantive details of a specific staffing proposal and personal comment, concerns, and opinions on the design and development of the staffing proposal.  Redacted the names and email addresses |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 319 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
| | | | of TFI and FinCEN personnel and Mr. El-Hindi's email address. EXEMPTION 5 (deliberative process) is asserted to substantive portions of a response to Mr. El-Hindi's questions revealing the subject, nature, scope and substantive details of a specific staffing proposal and personal comment, concerns, and opinions on the design and development of the staffing proposal to protect the deliberative process of TFI and FinCEN regarding proposed realignment.  This information reveals key design elements of the staffing proposal and reflects the deliberative give and take of an internal process to gauge employee support and interest in the staffing proposal never implemented.  These matters are part of an internal discussion among TFI and FinCEN personnel on the design and development of the proposal which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
| | | | enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00006449 TFI_00006450 **TFI_00006451** TFI_00006452 | Page 3 of a 4-page meeting notes titled "TFI Executive Steering Group (10/27/16) summarizing discussion of issues and interim progress in the planning and development of discrete elements of the proposed TFI realignment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in full – Redacted descriptions of specific design elements under conceptual and actual development, including select factual matters identified as transitional hallmarks of the realignment planning and transition reflecting incremental progress on developmental aspects of the realignment; descriptions of issues of concern for evaluation and ongoing consideration by the ESG; listing and timeline of short-term objectives, |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | next-steps/due outs, and proposed interim measures to address build-out gaps in the development and working arrangements of specific elements of the realignment.  Redacted the names and email addresses of TFI and FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to internal pre-decisional and deliberative discussion of specific design elements under conceptual and actual development, select transitional hallmarks in realignment planning and transition, issues of concern for ongoing evaluation,  and listing and timeline of short-term objectives, next-steps/due outs, and proposed interim  measures to address build-out gaps in the development and working arrangements of specific elements of the realignment to protect the deliberative process of the TFI.  These descriptions reflect incremental progress on developmental aspects of the realignment and reveal the deliberative process contours of the ESG process, planning, and objectives.  These matters are part of a sensitive internal discussion among TFI leadership to evaluate and monitor progress on specific realignment design elements that were never implemented which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 322 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|--------------------------------------------------------|
| | | | confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| TFI_00006500<br>**TFI_00006501**<br>TFI_00006502<br>TFI_00006503<br>TFI_00006504 | Page 2 of a 5-page email string titled "FW: Signed Approps memos" among Treasury and FinCEN personnel discussing final edits to a draft response to congressional correspondence. | (b)(5) DP<br>(b)(6)<br>(b)(7)(C) | Redacted in part – Redacted substantive descriptions of specific edits proposed and/or made to a nonfinal draft response to congressional correspondence regarding the TFI realignment, editorial comments, and personal assessments, views and opinions on substance and internal process relating the review of the draft document. Redacted the names and email addresses of TFI personnel.<br>EXEMPTION 5 (deliberative process) is asserted substantive discussion of specific edits proposed and/or made to a draft response to congressional correspondence regarding the TFI realignment proposal and internal comments, assessments, views and opinions on substance and process relating the proposed realignment are pre-decisional and deliberative in nature to protect the deliberative process of Treasury and FinCEN regarding proposed TFI realignment.  These matters are part of an internal discussion among Treasury and FinCEN personnel which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken.<br>EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 324 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| **TFI_00006551** TFI_00006552 | Page 1 of a 2-page email string titled "RE; FOR REVIEW BY COB TUESDAY, MARCH 21, 2017 – TFI Executive Steering Group (ESG) draft charter (1-pager)" among TFI and FinCEN personnel forwarding a nonfinal | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted specific directions for review of the draft charter, personal reactions, views and opinions on the review process relating the proposed realignment.  Redacted the names and email addresses of TFI and FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 325 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | draft ESG charter for review and comment. | | to specific directions for review of the draft charter revealing targeted messaging to particular recipients concerning internal review process, and personal reactions, views and opinions on the review process to protect the deliberative process of TFI and FinCEN regarding proposed TFI realignment.  This information reflects the deliberative back-and-forth of internal review and comment process in drafting a response and part of an internal discussion among TFI and FinCEN personnel which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 326 of 359

TFI REALIGNMENT VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00006600 **TFI_00006601** | Page 2 of a 2-page email string titled "RE: Developing an initial rollout plan on Adam's realignment effort" among FinCEN personnel regarding discussion of a roll out plan for the TFI realignment proposal. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted a FinCEN manager's descriptions of the manager's personal assumptions of based on Acting Under Secretary Szubin's presentation of his realignment initiative, initial thoughts, assessments, and opinions on proposed initial steps and prioritization and proposed courses of action concerning the roll out of the realignment.  Redacted the names and email addresses of FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to personal assumptions, initial thoughts, assessments, and opinions on proposed initial steps and prioritization and proposed courses of action concerning the roll out of the realignment to protect the deliberative process of TFI and FinCEN regarding proposed TFI realignment. This information reflects the personal views of one |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 327 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|-------------------------------------------------------|
|       |                              |                        | individual framing out notional ideas for consideration and development by FinCEN managerial colleagues and part of an internal discussion among TFI and FinCEN personnel concerning the roll out of the realignment initiative which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 328 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|-------------------------------------------------------|
| | | | through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00006650 **TFI_00006651** TFI_00006652 | Page 2 of a 3-page email string among FinCEN personnel discussing preparations for an upcoming ESG meeting and a question concerning a description of specific conceptual design element presented in a nonfinal draft document to be used as guide in realignment planning. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the title and substantive description of a specific conceptual design element of the proposed realignment, in-depth explanation and analysis and related background information needed to correct an inaccuracy in the nonfinal draft description, and personal characterizations, assessments, and opinions regarding these matters.  Redacted the names, email addresses and phone number of FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to title and substantive description of a specific conceptual design element of the proposed realignment, explanation, analysis and related background information to correct an inaccuracy in a draft description of the design element, and personal assessments and opinions regarding these matters to protect the deliberative process of TFI and FinCEN regarding proposed TFI realignment. This information reveals details of a specific design element under consideration, efforts to clarify an inaccuracy in a draft description of it in |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|-------------------------------------------------------|
|       |                              |                        | the course of an internal review and comment process, as well as the personal views of one individual on these matters.  These matters are part of an internal discussion among senior TFI and FinCEN personnel attempting to develop a document depicting design elements to guide realignment planning which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial |

Case 1:17-cv-01524-APM    Document 75-2    Filed 03/31/23    Page 330 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| **TFI_00006701** TFI_00006702 TFI_00006703 | Page 1 of a 3-page email string among Treasury and FinCEN personnel regarding a collaborative effort to design specific elements of the proposed TFI realignment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted a portion of the title of the email string identifying a specific conceptual element of the TFI realignment proposal, descriptions of other conceptual design elements, including the names of specific organizational units under development, and staffing and logistical matters, the title of a specific draft paper guiding discussions of the realignment design that reveals the name of a specific unit under development, notional proposed courses of action for consideration, and personal comments, characterizations, impressions, assessments, critique, views and opinions on the purpose, design and merits of a proposed collaborative process for developing conceptual elements of the proposed realignment. Redacted the names and email addresses of TFI and FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to information identifying and describing specific |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
|  |  |  | conceptual design elements, including the names of specific organizational units under development, and staffing and logistical matters, notional proposed courses of action, and personal comments, characterizations, impressions, assessments, critique, views and opinions on the purpose, design and merits of a proposed collaborative process for developing conceptual elements of the proposed realignment to protect the deliberative process of Treasury.  This information reflects rudimentary discussions of members of a design team trying to flesh-out design concepts under a proposed framework for the realignment of certain TFI components and reveals nonfinal developmental design information and the personal views of a single commenter on the early collaborative efforts of the design team. These matters are part of an internal discussion among senior TFI and FinCEN personnel concerning the conceptual design, planning and development of the realignment initiative which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00006749 TFI_00006750 **TFI_00006751** TFI_00006752 | Page 3 of a 4-page email string titled "RE: TFI Realignment Questions" among FinCEN personnel discussing questions raised by a FinCEN manager regarding the TFI realignment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted substantive descriptions of a specific conceptual element under consideration for the realignment initiative, contextual information for which guidance is sought, notional responses to the questions posed revealing additional details of realignment design |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | elements and proposed courses of action, and the personal perceptions, assessments, characterizations of regarding FinCEN managerial support of the proposed the conceptual element. Redacted the name and direct phone number of FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to information identifying and describing specific conceptual elements under consideration, contextual information for which guidance is sought, notional responses to the questions posed and proposed courses of action to address expressed concerns, and the personal perceptions, assessments, characterizations of FinCEN managerial support for the proposed the conceptual element under consideration to protect the deliberative process of FinCEN.  This information reflects a sensitive discussion between a senior manager and Deputy Director El-Hindi expressing concerns about a specific proposed design element of the realignment initiative and reveals personal viewpoints, as well as characterizations of managerial support for the idea.  These matters as also part of a broader internal discussion among TFI leadership concerning the conceptual design, planning and development of the realignment initiative that was never implemented, except for minor structural changes within the TFI front office.  Release of this information would foreseeably jeopardize the candid considerations necessary for good decision |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 334 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|-----------------------|------------------------------------------------------|
|  |  |  | making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 335 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | personnel to unwarranted invasion of their personal privacy. |
| TFI_00006798 TFI_00006799 TFI_00006800 **TFI_00006801** TFI_00006802 TFI_00006803 | Page 4 of a 6-page email string" circulating a nonfinal draft document incorporating FinCEN edits. | (b)(5) DP | Redacted in full – Redacted details and descriptions of the subject and nature of an inquiry preliminary to further consideration of a staffing proposal to support certain realignment objectives, proposed substantive edits to the nonfinal draft document and explanatory comments, analysis and critique for the recommended revisions. EXEMPTION 5 (deliberative process) is asserted to details and descriptions of an inquiry preliminary to further consideration of a staffing proposal, proposed substantive edits to the nonfinal draft document and explanatory comments, analysis and critique for the recommended revisions to protect the deliberative process of Treasury and FinCEN regarding proposed TFI realignment.  This information reflects the back-and-forth of a deliberative review and comment process in the development of a proposed inquiry preliminary to further consideration of a staffing proposal to support certain realignment objectives and reveal the subject ad nature of the preliminary inquiry. These matters are also part of a broader internal discussion among TFI leadership concerning the conceptual design, planning and development of the realignment initiative that was never implemented, except for minor structural changes within the TFI front office.  Release of this information would foreseeably jeopardize the |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 336 of 359

TFI REALIGNMENT VAUGHN INDEX   LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|-----------------------|------------------------------------------------------|
| | | | candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken |
| **TFI_00006851** TFI_00006852 TFI_00006853 TFI_00006854 TFI_00006855 | Page 1 of a 5-page email string titled "Fwd: Senate Appropriations Follow-up Questions FINAL" among FinCEN personnel circulating for review a proposed "final" draft response to a congressional inquiry on the proposed TFI realignment prior to sending it to OMB for additional review and consideration. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted portions of the email discussion revealing the substance of reviewer comments, critique, characterizations, and opinions challenging a substantive edit to the nonfinal draft response regarding a specific staffing proposal.  Redacted the names, email addresses, and direct phone number of FinCEN personnel.  Redacted the names and email addresses of TFI and FinCEN personnel and Bob Mahaffie's (Treasury Budget Director) email address. EXEMPTION 5 (deliberative process) is asserted to reviewer comments, critique, characterizations, and opinions challenging a substantive edit to the nonfinal draft response regarding a specific staffing proposal to protect the deliberative process of TFI and FinCEN.  This information reflects the back-and-forth of a deliberative review and comment process among reviewers trying to craft a response to a congressional inquiry and reveals the nature and substance of debate, as well as the details of a proposed design element of staffing proposal never implemented. These matters are also part of a broader internal discussion among |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | TFI leadership concerning the conceptual design, planning and development of the realignment initiative that was never implemented, except for minor structural changes within the TFI front office.  Release of this information would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. <br><br> EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00006900 **TFI_00006901** TFI_00006902 | Page 2 of a 3-page email string among FinCEN personnel sharing comments and proposed edits on a nonfinal draft memorandum of agreement circulated for review. | (b)(5) AC (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part - Redacted details and description of nonfinal draft memorandum of agreement delineating the contours of a staffing proposal under consideration and legal review, selected legal authorities cited which are the subject of a request for legal advice, and reviewer comments, assessments, opinions, recommendations, concerning the edits to draft provisions in the memorandum.  Redacted the names and email addresses of FinCEN personnel. EXEMPTION 5 (privileged attorney-client communications) is asserted to title of the draft memorandum of agreement and substantive details of a staffing proposal and selected legal authorities under legal review.  These matters are part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature matters encompassed by the privilege and would impair the ability of Treasury and FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | EXEMPTION 5 (deliberative process) is asserted to the title of the draft memorandum of agreement, substantive details of a staffing proposal under consideration and internal reviewer comments, assessments, opinions, recommendations, concerning the edits to draft provisions in the memorandum to protect the deliberative process of FinCEN.  This information reflects the back-and-forth of a deliberative review and comment process among reviewers trying to craft a formative agreement and reveals the nature and substance of debate, as well as the details of a proposed design element of staffing proposal never implemented. These matters are also part of a broader internal discussion among TFI leadership concerning the conceptual design, planning and development of the realignment initiative that was never implemented, except for minor structural changes within the TFI front office.  Release of this information would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| **TFI_00006951** TFI_00006952 | Page 1 of a 2-page email string titled "RE: FinCEN and TFI realignment - OMB" among FinCEN personnel.  This page contains email conversation between a FinCEN employee and Richard Delmar, Counsel to the Office of the Inspector General (OIG) for the | (b)(6) (b)(7)(C) | Redacted in part - Redacted the names and email addresses of FinCEN personnel and Mr. Delmar's email address and direct phone number. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 341 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|--------------------------------------------------------|
| | Treasury Department concerning the proposed TFI realignment. | | enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These exemptions are also asserted to the direct contact information of OIG counsel whose duties and responsibilities include receiving and investigating complaints or information concerning the possible existence of an activity constituting a violation of law, rules, or regulations, or mismanagement, gross waste of funds, abuse of authority or a substantial and specific danger to the public health and safety. These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| **TFI_00007001**<br>TFI_00007002<br>TFI_00007003<br>TFI_00007004<br>TFI_00007005<br>TFI_00007006<br>TFI_00007007 | Page 1 of a 7-page email string titled "FW: RESPONSE: TFI/FinCEN OMB 1-pager" among FinCEN personnel. This page contains an email from FinCEN employee May Edwards to Richard Delmar, OIG investigators forwarding certain nonfinal draft documents and historical email communications related to the TFI realignment proposal. | (b)(5) DP<br>(b)(6)<br>(b)(7)(C) | Redacted in part – Redacted personal views, assessments, and opinions concerning distinctions of certain types of work that were the subject of debate in the development of the conceptual design of certain realignment proposals and substantive description of those types of work that were under consideration.  Redacted the names and email addresses of FinCEN and OIG personnel and Mr. Delmar's email address.  EXEMPTION 5 (deliberative process) is asserted to the personal views, assessment, and opinions concerning debated distinctions of certain types of work relevant to the conceptual design of certain realignment proposals and substantive description of those types of work that were under consideration to protect the deliberative process of TFI and FinCEN.  This information reveals particular aspects of conceptual design considered in proposed in the realignment which were never implemented, and the back-and-forth pre-decisional and deliberative discussion of an examination and critique of a substantive misunderstanding impacting efforts to develop the design concept, as well as this personal views and opinions of commentors.  These matters are also part of a broader internal discussion among TFI leadership concerning the conceptual design, planning and development of the realignment initiative that was never implemented, except for minor structural changes within the TFI front office.  Release of this information would |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 343 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|-------|------------------------------|------------------------|------------------------------------------------------|
| | | | foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These exemptions are also asserted to the identity of OIG personnel and the direct contact information of OIG counsel whose duties and responsibilities include receiving and investigating complaints or information concerning the possible existence of an activity constituting a violation of law, rules, or regulations, or mismanagement, gross waste of funds, abuse of authority or a substantial and specific danger to the public health and safety. These persons maintain a substantial privacy |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 344 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00007051 | Page 1 of a 1-page email titled "FYSA" from a FinCEN employee to Richard Delmar and an OIG investigator forwarding certain historical email messages related to the TFI realignment. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part - Redacted the titles of nonfinal draft documents forwarded as attachments to the email, all of reveal conceptual elements and issues under consideration as part of the TFI realignment proposal.  Redacted the names and email addresses of a FinCEN employee and OIG investigator and Mr. Delmar's email address. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | their foreign counterparts and foreign governments.  These exemptions are also asserted to the identity of OIG personnel and the direct contact information of OIG counsel whose duties and responsibilities include receiving and investigating complaints or information concerning the possible existence of an activity constituting a violation of law, rules, or regulations, or mismanagement, gross waste of funds, abuse of authority or a substantial and specific danger to the public health and safety. These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here.  Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00007100 **TFI_00007101** TFI_00007102 | Page 2 of a 3-page email string among FinCEN personnel circulating for review and comment revisions to a nonfinal draft inquiry preliminary to further consideration and development of a staffing proposal. This page contains a | (b)(5) AC (b)(5) DP | Redacted in full – Redacted substantive details and description of specific design elements for which organizational and legal guidance was sought and contextual information including specific legal authorities at issue, and personal comments, assessments, characterizations and opinions of the |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 346 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | portion of a list of outstanding issues and concerns needed to be resolved before development of a staffing proposal. | | drafter regarding these matters. EXEMPTION 5 (privileged attorney-client communications) is asserted to information identifying and contextualizing specific matters for which legal advice was sought.  This information was part of a privileged attorney-client communication which, if disclosed, would reveal the subject and nature matters encompassed by the privilege and would impair the ability of FinCEN employees to fully inform their counsel when seeking legal advice, resulting in unsound legal advice and advocacy on behalf of the agency. EXEMPTION 5 (deliberative process) is asserted to substantive details and description of specific design elements for which organizational guidance was sought and related contextual information at issue, and personal comments, assessments, characterizations and opinions of the drafter regarding these matters to protect the deliberative process of TFI and FinCEN.  This information reveals proposed design elements of the realignment which were never implemented, and these matters were the subject of internal debate and pre-decisional and deliberative discussion about a staffing proposal which was never undertaken and which, if disclosed, would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 347 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |
| TFI_00007150 **TFI_00007151** TFI_00007152 TFI_00007153 | Page 2 of a 4-page email string among TFI and FinCEN personnel circulating for review and comment a new iteration of revisions to a nonfinal draft inquiry preliminary to further consideration and development of a staffing proposal. | (b)(5) DP (b)(6) (b)(7)(C) | Redacted in part – Redacted the titles of the email string and an attachment identifying the subject and course of action concerning a staffing proposal under consideration and development for the TFI realignment proposal, and editorial comments and personal impressions regarding aspects of coordinated review of the staffing proposal. Redacted the names and email addresses of TFI and FinCEN personnel. EXEMPTION 5 (deliberative process) is asserted to the titles of the email and an attachment identifying a specific proposed course of action concerning a staffing proposal under consideration and development for the staffing proposal, editorial comments and personal impressions regarding aspects of coordinated review to protect the deliberative process of TFI and FinCEN regarding proposed realignment.  This information reflects deliberative and pre-decisional efforts to evaluate elements of a staffing models under consideration that were never implemented.  These matters were also part of a broader internal discussion among TFI leadership concerning the conceptual design, planning and development of the realignment initiative that was never implemented, except for minor structural changes within the TFI front office.  Release of this information would foreseeably jeopardize the |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 348 of 359

TFI REALIGNMENT VAUGHN INDEX  LEOPOLD ET AL V TREASURY 17-CV-1524 (D.D.C.)

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
| | | | could reasonably be expected to expose these personnel to unwarranted invasion of their personal privacy. |
| TFI_00007199 TFI_00007200 **TFI_00007201** | Page 3 of a 3-page email string titled "TFI Realignment Briefing Paper (final for Hill prep this morning)" among FinCEN personnel circulating a final draft document incorporating additional edits received. | (b)(6) (b)(7)(C) | Redacted in part - Redacted the names and email addresses of FinCEN personnel. EXEMPTION 6 and 7C (privacy interests) is asserted to protect from disclosure the identities of personnel who occupy sensitive national security positions with access to classified information, including financial intelligence and law enforcement sensitive information, whose duties and responsibilities include formulating and coordinating economic and trade sanctions programs and counter terrorist financing and anti-money laundering efforts of the Treasury Department with U.S. law enforcement agencies, their foreign counterparts and foreign governments.  These persons maintain a substantial privacy interest because they are associated with sensitive and potentially high-profile efforts into terrorist financing and financial crimes through their work that could subject them to undue public scrutiny or harassment, including through the efforts of hostile foreign actors and targeted espionage.  There is no public interest that outweighs the privacy interests identified here. Disclosure of the information would not reveal anything informative about the operations or activities of the federal government but instead could reasonably be expected to expose these |

| Bates | Description (Doc Type/Title) | Exemption(s) Asserted | Description of Redacted Information and Justification |
|---|---|---|---|
|  |  |  | personnel to unwarranted invasion of their personal privacy. |

# EXHIBIT L

| FinCEN_000001 | Page 1 of 4-page email exchange between Treasury and FinCEN officials discussing consultations with OMB and response options to Hill inquiries on TFI realignment (August 27, 2016) | b(5) DP<br>b(6)<br>b(7)(C) | Redacted in part<br><br>EXEMPTION 5 (deliberative process) is asserted to portions describing intra-agency and interagency policy and protocol discussions between Treasury, FinCEN and OMB officials on TFI realignment.  Disclosure would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken.<br><br>EXEMPTIONS 6 and 7C – Not challenged. |
| FinCEN_000051 | Page 40 of 56-page Employee request to Treasury's Office of the Inspector General for formal investigation (March 30, 2017) | b(5) DP<br>b(6)<br>b(7)(C) | Redacted in full<br><br>EXEMPTION 5 (deliberative process) is asserted to portions describing preliminary findings and discussion among Treasury officials concerning an employee complaint to the Treasury OIG, including the select background information evaluated.  Disclosure would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 353 of 359

OSC Referred Records Vaughn Index   Leopold et al v Treasury 17-cv-1524 (D.D.C.)

| | | | EXEMPTIONS 6 and 7C – Not challenged. |
|---|---|---|---|
| FinCEN_000101 | Page 17 of 37-page Employee complaint to Treasury's Office of the Inspector General (June 28, 2017) | b(5) DP<br>b(6)<br>b(7)(C) | Redacted in part<br><br>EXEMPTION 5 (deliberative process) is asserted to portions describing preliminary findings and discussions among Treasury officials concerning an employee complaint to the Treasury OIG, including the select background information evaluated.  Disclosure would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken.<br><br>EXEMPTIONS 6 and 7C – Not challenged. |
| FinCEN_000151 | Page 2 of 2-page email exchange between Treasury and FinCEN officials discussing consultations with OMB and response options to Hill inquiries on TFI realignment (August 27, 2016)<br><br>EXACT DUPLICATE OF THE INFORMATION CONTAINED IN THE EMAIL STRING ON BATES PAGE FinCEN_000001 (ABOVE). | b(5) DP<br>b(6)<br>b(7)(C) | Redacted in part<br><br>THE EXEMPTIONS AND JUSTICIFICATIONS ASSERTED TO WITHHOLD THE INFORMATION ON BATES PAGE FinCEN_000001 ARE INCORPORATED BY REFERENCE HERE. |

| | | | |
|---|---|---|---|
| FinCEN_000201 | Page 1 of 1-page email exchange between FinCEN official about discussions with Congress (October 26, 2016) | b(5) DP<br>b(6)<br>b(7)(C) | Redacted in part<br><br>EXEMPTION 5 (deliberative process) is asserted to portions describing intra-agency policy discussions between FinCEN officials about discussions with Congress, including the personal views, opinions, commentary, and characterizations of the author that do not represent official Treasury policy or any final decision.  Disclosure would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken.<br><br>EXEMPTIONS 6 and 7C – Not challenged. |
| FinCEN_000251 | Page 3 of 3-page email exchange between a Treasury employee and Treasury's Office of the Inspector General about details of the employee's complaint (September 1, 2016) | b(6)<br>b(7)(C) | EXEMPTIONS 6 and 7C – Not challenged. |
| FinCEN_000301 | Page of 57 of 57-page summary package of a discussion between Treasury and Hill staff held on July 26, 2016, with this page including list of attendees, their contact information and some comments made during the discussion. | b(5) DP<br>b(6)<br>b(7)(C) | Redacted in full<br><br>EXEMPTION 5 (deliberative process) is asserted to portions describing the author's thoughts and impressions of certain interactions with Hill staff contained in a summary of a meeting between |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 355 of 359

OSC Referred Records Vaughn Index   Leopold et al v Treasury 17-cv-1524 (D.D.C.)

| | | | |
|---|---|---|---|
| | | | Treasury and Hill staff.  These view do not represent official Treasury policy or any final decision.  Disclosure would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions during investigations.<br><br>EXEMPTIONS 6 and 7(C) – Not challenged. |
| FinCEN_000351 | Page 1 of 4-page interview transcripts from Treasury's Office of the Inspector General audit of Treasury's Office of Intelligence and Analysis. | b(5) DP<br>b(6)<br>b(7)(C) | Redacted in full<br><br>EXEMPTION 5 (deliberative process) is asserted to portions describing a set of interview questions and answers that were part of preliminary findings of investigations concerning an employee complaint to the Treasury OIG.  Disclosure would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions during investigations.<br><br>EXEMPTIONS 6 and 7(C) – Not challenged. |
| FinCEN_000401 | Page 9 of 12-page FinCEN's Office of Security Report of Inquiry (September 26, 2016) | b(5) DP<br>b(6)<br>b(7)(C) | Redacted in full<br><br>EXEMPTION 5 (deliberative process) is asserted to portions describing preliminary findings and discussion among FinCEN officials concerning a security incident.  Disclosure would foreseeably jeopardize the candid considerations necessary for |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 356 of 359

OSC Referred Records Vaughn Index   Leopold et al v Treasury 17-cv-1524 (D.D.C.)

| | | | |
|---|---|---|---|
| | | | good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken.<br><br>EXEMPTIONS 6 and 7C – Not challenged. |
| FinCEN_000451 | Page 2 of 5-page proposed detailee agreement (February 17, 2017) | b(5) DP<br>b(6)<br>b(7)(C) | Redacted in full<br><br>EXEMPTION 5 (deliberative process) is asserted to portions describing a draft detailee agreement that was not finalized or otherwise entered into. Disclosure would foreseeably jeopardize the candid considerations necessary for personnel decision making in the Government by potentially discouraging discussions on these matters.<br><br>EXEMPTIONS 6 and 7C – Not challenged. |
| FinCEN_000501 | Page 2 of 3-page email exchange between Treasury, FinCEN and congressional staff on a proposed detailee agreement (February 17, 2017) | b(5) DP<br>b(6)<br>b(7)(C) | Redacted in part<br><br>EXEMPTION 5 (deliberative process) is asserted to portions describing preliminary discussions within FinCEN about a possible detailee agreement for a detail that did not occur, including the personal views, opinions, commentary, and characterizations of the author that do not represent official Treasury policy or any final decision.  Disclosure would foreseeably jeopardize the candid considerations necessary for good |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 357 of 359

OSC Referred Records Vaughn Index   Leopold et al v Treasury 17-cv-1524 (D.D.C.)

| | | | |
|---|---|---|---|
| | | | decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken.<br><br>EXEMPTIONS 6 and 7C – Not challenged. |
| FinCEN_000551 | Page 4 of 6-page email exchange between FinCEN officials on a Rosfinmonitoring request concerning the status of a test set of specific confidential investigative exchanges of law enforcement information related to a proposed bilateral project investigating terrorist financing through a particular terrorist organization. (March 9, 2017) | b(5) DP<br>b(6)<br>b(7)(C)<br>b(7)(E) | Redacted in part<br><br>EXEMPTION 5 (deliberative process) is asserted to portions describing an internal policy discussion and the author's personal comments, observations, assessments and opinions concerning the status and merits of a test set of investigative requests that do not represent official Treasury policy or any final decision. This commentary was part of a pre-decisional and deliberative internal evaluative discussion concerning the status and merits of specific pending and potential nexus to past investigative exchanges with foreign FIUs and counterparts. This information is withheld to protect FinCEN's deliberative process because disclosure would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken. |

Case 1:17-cv-01524-APM   Document 75-2   Filed 03/31/23   Page 358 of 359

OSC Referred Records Vaughn Index   Leopold et al v Treasury 17-cv-1524 (D.D.C.)

| | | | |
|---|---|---|---|
| | | | EXEMPTIONS 6, 7C and 7E – Not challenged. |
| FinCEN_000601 | Page 1 of 1-page email exchange between FinCEN officials regarding a proposed Office of Intelligence and Analysis (OIA)/FinCEN detailee agreement and an upcoming discussion on the defining vision/mission/metrics for the agreement (September 21, 2016 – October 28, 2016) | b(5) DP<br>b(6)<br>b(7)(C) | Redacted in part<br><br>EXEMPTION 5 (deliberative process) is asserted to portions describing the discussion of the terms of a possible OIA/FinCEN detail arrangement that was never finalized or otherwise entered into and include the personal views, opinions, commentary, and characterizations of the author that do not represent official Treasury policy or any final decision.  Disclosure would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken.<br><br>EXEMPTIONS 6 and 7C – Not challenged. |
| FinCEN_000651 | Page 11 of 11-page Memorandum of Understanding on information sharing between FinCEN and an Intelligence Community component (September 21, 2009) | b(6)<br>b(7)(C)<br>b(7)(E) | EXEMPTIONS 6,7C and 7E – Not challenged. |
| FinCEN_000701 | Page 3 of 3-page email exchange between FinCEN officials on the investigation on the Office of Intelligence and Analysis – | b(5) DP<br>b(6)<br>b(7)(C) | Redacted in part |

| | | | |
|---|---|---|---|
| | Intelligence Community Public Key Infrastructure (OIA IC PKI) (October 13, 2017) | b(7)(E) | EXEMPTION 5 (deliberative process) is asserted to portions describing relevant factors used in making preliminary findings and discussion among FinCEN officials concerning an employee complaint to the Treasury OIG.  Disclosure would foreseeably jeopardize the candid considerations necessary for good decision making in the Government by potentially discouraging frank discussions on matters of policy between or among subordinates and superiors and could cause public confusion by revealing reasons and rationales that were not in fact the grounds for the action ultimately taken.<br><br>EXEMPTIONS 6,7C and 7E – Not challenged. |
| | | | |