**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **JASON LEOPOLD, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**U.S. DEPARTMENT OF THE TREASURY, et al.,**<br><br>**Defendants.** | ) | **Case No. 17-cv-01524 (APM)** |

**MEMORANDUM OPINION AND ORDER**

**I.**

In late May 2017, Plaintiffs Jason Leopold and Buzzfeed, Inc. submitted multiple Freedom of Information Act (FOIA) requests to three agencies—the Department of Treasury, the Office of the Director of National Intelligence (ODNI), and the Office of Special Counsel (OSC) (collectively, "Defendants")—seeking information about a request made by Russia's Federal Financial Monitoring Service to Treasury for certain information about U.S. persons. On July 28, 2017, after no agency had produced documents, Plaintiffs filed this suit. In the ensuing years, the agencies released some information and asserted exemptions as to other materials, but the parties ultimately were able to resolve all disclosure-related disputes. What remains is Plaintiffs' Petition for Attorneys' Fees and Costs, ECF No. 86 [hereinafter Pls.' Mot.].

As explained below, that motion is granted in part and denied in part. The court will award Plaintiffs $26,285.81.[1]

[1] The court regrets the length of time it has taken to issue this decision.

**II.**

FOIA grants courts discretion to award attorney's fees and costs for successful requests. 5 U.S.C. § 552(a)(4)(E)(i). Whether to grant such an award involves a two-part inquiry. *See Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981). First, a requester is "eligible" for a fee award if they have "substantially prevailed." *Id.*; *see also* 5 U.S.C. § 522(a)(4)(E)(i). A requester "substantially prevail[s]" if they have "obtained relief" through either (1) "a judicial order, or an enforceable written agreement or consent decree," or (2) "a voluntary or unilateral change in position by the agency, if the [requester's] claim is not insubstantial." 5 U.S.C. § 522(a)(4)(E)(ii). Only the second of these criteria—known as the "catalyst theory"—is applicable here. *See Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 95 (D.C. Cir. 2020) (per curiam).

Under that theory, the relevant question is whether "the institution and prosecution of the litigation caused the agency to release the documents obtained." *Id.* at 97 (cleaned up). Establishing causation requires more than a sequential showing of the mere filing of a complaint and the subsequent release of records. *See id.* Rather, the requester bears the burden of demonstrating "that it is more probable than not that the government would not have performed the desired act absent the lawsuit." *Id.* (quoting *Pub. Citizen Health Rsch. Grp. v. Young*, 909 F.2d 546, 550 (D.C. Cir. 1990)).

Second, if the requester is eligible for fees, they also must establish entitlement to an award. That inquiry requires consideration of four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *Morley v. CIA*, 810 F.3d 841, 842 (D.C. Cir. 2016) (internal quotation marks and citation omitted). "No one

factor is dispositive," except that "the court will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure." *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008).

**III.**

Plaintiffs seek a total award of $52,454.80. Pls.' Reply in Supp. of Pls.' Mot., ECF No. 89 [hereinafter Pls.' Reply], at 20. Defendants challenge both Plaintiffs' eligibility and entitlement to fees, as well as the reasonableness of their request. The court addresses these contested issues in that order.

**A.**

The court considers Plaintiffs' success as to each FOIA request separately to distill what, if any, of their counsel's legal work caused the agency to produce records. *See Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1496 (D.C. Cir. 1984) (stating that the "substantially prevailed" inquiry "is largely a question of causation"). The court groups the requests by the relevant agency.

*Treasury*. Plaintiffs directed three requests to Treasury. Decl. of Ryan Law, ECF No. 75-2 [hereinafter Law Decl.], ¶¶ 5–7. The first sought drafts and a final version of certain Attorney General guidelines. *Id.* ¶ 5. Treasury withheld all drafts under the deliberative-process privilege and, because no final guidelines were adopted, Plaintiffs received no records, an outcome they would not contest. *Id.*; *see* Pls.' Cross-Mot. for Summ. J., ECF No. 76, Pls.' Mem. in Support of their Cross-Mot. for Summ. J. and Opp'n to Defs.' Mot. for Summ. J., ECF No. 76-1 [hereinafter Pls.' SJ Opp'n] (not contesting withholdings). As to that request, Plaintiffs are not eligible for fees.

The second request demanded emails from various Treasury officials. Law Decl. ¶ 6. Treasury produced 2,140 redacted pages. *Id.* Among them were 18 pages of communications and related documents concerning a request from Russia's Federal Financial Monitoring Service,

which the agency withheld under Exemption 5 pursuant to the consultant corollary to the deliberative-process privilege. *Id.* ¶¶ 31–33. This withholding was the only topic of summary judgment briefing and, after Plaintiffs filed their opposition brief, Defendants reversed course and released those records. *See* Pls.' SJ Opp'n; Joint Status Reports, ECF Nos. 79–80. The third request asked for information regarding an office realignment at Treasury. Law Decl. ¶ 7. The agency released 7,215 partially redacted pages, and Plaintiffs did not contest these withholdings. *Id.*; *see* Pls.' SJ Opp'n.

Notably, the productions for the second and third requests were distilled from approximately 1.35 million potentially responsive records, which the agency early on winnowed to just over 15,000 records deemed more likely to be responsive. Joint Status Reports, ECF Nos. 26, 30–31, 41 (noting 10,000 more documents to review consisting of over 46,000 pages). Over the course of two years, Treasury identified thousands of pages of responsive records, reviewed those for possible disclosure, and produced them on a rolling basis, concluding in March 2021. *See, e.g.,* Joint Status Reports, ECF Nos. 33–35, 38–39, 41–43, 45–51. Plaintiffs never lodged a complaint with the court about the pace of processing.

Plaintiffs offer two theories as to why they substantially prevailed as to FOIA requests two and three to Treasury. "First, the lawsuit caused or accelerated Treasury's production," and "[s]econd, the lawsuit caused Treasury to abandon its invocation of the consultant corollary doctrine." Pls.' Mot. at 6–7. The court agrees as to the second but not the first.

As support that this action caused the "sudden acceleration" of production,[2] Plaintiffs point out that (1) Treasury did not satisfy the statutory deadline to make a determination, (2) there was

[2] The D.C. Circuit has not affirmatively held that a showing of a "sudden acceleration" of production can establish that a FOIA requester has substantially prevailed. *See Grand Canyon Tr.*, 947 F.3d at 97–98 ("We need not decide whether a 'sudden acceleration' of production can, of itself, represent a 'change in position' within the meaning of the statute."). Nevertheless, courts in this District have done so. *See, e.g., First Look Media Works, Inc. v. U.S. Agency*

little, if any, pre-suit processing, and (3) only after they filed suit did consultations begin about their requests. *See id.* at 6; Pls.' Reply at 1–3. Even accepting these facts as true, they do not establish that this suit caused Treasury to suddenly accelerate its response to the requests. *See Weisberg*, 745 F.2d at 1496 ("[T]he mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation.").

This is not a case where "a significant delay by an agency in complying with FOIA may provide the inference that the agency forgot about, or sought to ignore, a FOIA requester's request." *Am. Wild Horse Campaign v. U.S. Bureau of Land Mgmt.*, No. 22-cv-3061 (CRC), 2024 WL 3967256, at *3 (D.D.C. Aug. 26, 2024) (internal quotation marks omitted). Rather, Plaintiffs filed suit shortly after FOIA permits, and the agency promptly responded thereafter. Plaintiffs brought this action roughly 30 days after time expired for Treasury to issue determinations for the three requests. Treasury then set about working with Plaintiffs to define the scope of searches and, as searches were completed, it began compiling and reviewing thousands of pages of responsive records. *See, e.g.,* Joint Status Reports, ECF Nos. 24–26. The review and production process took years. Notably, Plaintiffs challenged only a fraction of the withholdings made within thousands of released pages. These are not facts that reflect an agency shirking its FOIA obligations, only to be awakened and motivated to act by Plaintiff's lawsuit. The agency's diligence is evident. The court cannot conclude that Treasury more probably than not suddenly accelerated its response because of the lawsuit.

The court reaches a different conclusion as to Treasury relenting on its Exemption 5 withholdings based on the consultant corollary. That pivot constituted "a voluntary or unilateral change in position by the agency." 5 U.S.C § 552(a)(4)(E)(ii). Defendants do not disagree.

---

*for Glob. Media*, No. 20-cv-3499 (TJK), 2024 WL 4262773, at *3–4 (D.D.C. Sep. 23, 2024). Defendants do not protest the theory itself, only its application, *see* Defs.' Opp'n at 6–7, so the court considers Plaintiffs' arguments.

Instead, they attempt to diminish its significance, arguing that Treasury's "decision to lift a very small number of redactions to a small subset of the responsive records . . . does not mean that Plaintiffs have proven that they 'substantially prevailed.'" Defs.' Opp'n at 8. But there can be no dispute that Plaintiffs substantially prevailed at least as to this portion of their requests to Treasury. Defendants' argument, however, warrants consideration in determining what proportion of the fees sought are attributable to this success. *See infra* Section III.C.

*OSC*. The court has little trouble finding that Plaintiffs substantially prevailed with respect to their request to OSC. Plaintiffs sought records related to whistleblower retaliation at Treasury's Financial Crimes Enforcement Network. Compl., ECF No. 1, Ex. E, ECF No. 1-5. About a month after receiving their request, OSC informed Plaintiffs that it had performed a search but found no responsive records. *Id.* Plaintiffs administratively appealed, and OSC's General Counsel affirmed the response. *Id.* ("OSC searched the relevant sources for requested material. . . . After careful consideration, I have determined that the search was reasonably calculated to locate requested information. Accordingly, I affirm OSC's response and deny your appeal."). Only *after* Plaintiffs filed suit did OSC conduct a supplemental search that turned up records. Defs.' Opp'n to Pls.' Mot., ECF No. 88 [hereinafter Defs.' Opp'n], Ex. C, ECF No. 88-3 [hereinafter Ex. C]. At first, OSC pointed only to three publicly available records and withheld all others "[d]ue to the pendency of [a] law enforcement proceeding." *See id.* Then, about ten months later, on August 15, 2018, after the proceeding came to an end in June 2018, OSC produced over 400 pages, the vast majority of which were withheld in part, and withheld 34 pages in full. *See* Defs.' Opp'n, Ex. D, ECF No. 88-4 [hereinafter Ex. D]; Joint Status Report, ECF No. 31. OSC also referred over 800 pages to Treasury, Ex. D., which eventually released nearly 775 pages in redacted form, Law Decl. ¶ 9. Plaintiffs contested none of the withholdings.

Based on this timeline, it is more probable than not that OSC produced records due to this litigation. *See Grand Canyon Tr.*, 947 F.3d at 97. OSC did not perform an additional search and disclose it had found responsive records until after Plaintiffs filed suit. And OSC and Treasury produced hundreds of pages of records that OSC's first search did not uncover. Defendants offer no reason to believe that OSC would have revisited its initial position had Plaintiff not filed suit. Plaintiffs thus have demonstrated a "causal nexus" between the litigation and "the agency's surrender of . . . information." *Cox v. U.S. Dep't of Just.*, 601 F.2d 1, 6 (D.C. Cir. 1979), *abrogated on other grounds by Benavides v. Bureau of Prisons*, 993 F.2d 257, 258–59 (D.C. Cir. 1993).

Defendants contest this finding. They assert that "[t]he bare fact that the Special Counsel performed a supplemental search, regardless of whether it yielded records Plaintiffs would not have obtained, . . . does not mean Plaintiffs substantially prevailed." Defs.' Opp'n at 5–6. But that argument misses the point. It is not the "bare fact" of a supplemental search that establishes Plaintiffs as having substantially prevailed, but their success in obtaining records that the agency originally withheld.

Defendants also try a different tack. They note that the supplemental search turned up records largely relating to an ongoing law enforcement investigation, which OSC at first withheld and released almost a year later only after the investigation ended. Defs.' Opp'n at 6; Ex. C. They argue that "[t]his plainly lawful conduct and good-faith processing of Plaintiffs' FOIA request does not reflect the type of intransigent behavior that prompted Congress to codify the 'catalyst' theory." *Id.* Defendants maintain that the fee request "lacks force" because, "even if [OSC] had discovered responsive records prior to the filing of the Complaint, such records would never have been produced any earlier than the time at which they were produced," i.e., after the investigation ended. *Id.* The eligibility inquiry, however, requires no showing of "intransigent behavior." And

it is not the timing of the disclosure that satisfies the catalyst theory in this case, but the fact that disclosure likely would not have occurred at all had Plaintiffs not brought this action. Plaintiffs therefore substantially prevailed on their FOIA request to OSC.

*ODNI*. Plaintiffs offer little evidence to support eligibility for a fee award for their request to ODNI for investigation reports. *See* Compl., ECF No. 1, Ex. D, ECF No. 1-4. They rely on the same acceleration theory as with Treasury, noting that ODNI produced no records before they filed suit and completed doing so a few months later. Pls.' Mot. at 8. But Plaintiffs acknowledge that ODNI began taking steps to meet its FOIA obligations *before* Plaintiffs filed suit. Within a month of receiving the request, ODNI commenced a search for records. *Id.*; Defs.' Opp'n, Ex. A, ECF No. 88-1. It then produced records about four months later, on November 30, 2017, Defs.' Opp'n, Ex. B, ECF No. 88-2, and Plaintiffs did not contest any withholdings. On these facts, Plaintiffs did not substantially prevail with respect to the ODNI request.

**B.**

With their eligibility now established as to certain requests, the court turns to Plaintiffs' entitlement to fees for those requests. This inquiry turns on four factors: "(1) the benefit to the public if any, derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis of law." *Church of Scientology*, 653 F.2d at 590. Defendants do not contest factors one through three. Defs.' Opp'n at 8–9. They only dispute the fourth. *Id.* Their argument as to reasonableness is two-fold: (1) the agencies' "conduct before and after the applicable twenty-day deadlines [under FOIA] represented a timely and concerted effort to process the FOIA requests as quickly as possible," and (2) Treasury had a "colorable basis" to withhold information under the consultant corollary, and the D.C. Circuit only recently clarified the

applicable law. *Id.* at 10–12 (citing *Am. Oversight v. U.S. Dep't of Health & Hum. Servs.*, 101 F.4th 909 (D.C. Cir. 2024)).

The agency's first contention is largely mooted by the court's finding that Plaintiff's suit did not cause the sudden acceleration of production. That said, Defendants do not offer any reason why OSC's initial search turned up no records. The court cannot credit the reasonableness of that seeming misfire without an explanation from the agency.

As to their second argument, Defendants have not shown that their withholdings based on the consultant corollary "had a reasonable basis in law." *Tax Analysts v. U.S. Dep't of Just.*, 965 F.2d 1092, 1096 (D.C. Cir. 1992). Defendants reference a recent decision by the D.C. Circuit that settled whether the consultant corollary applies if the consultant has some personal stake in the matter—it does not. *See Am. Oversight*, 101 F.4th at 916–17. Defendants, however, have not shown that Treasury's position was rooted in any uncertainty in the case law. In fact, neither their summary judgment brief nor their declaration referenced any legal ambiguity in the corollary's application to the "consultative relationship between [the Russian government agency] and Treasury." Defs.' Mot. for Summ. J., ECF No. 75, Defs.' Mem. in Supp. of Defs.' Mot. for Summ. J., ECF No 75-1 [hereinafter Defs.' SJ Mem.], at 8–9; Law Decl. ¶¶ 31–33. And they do not now offer any declaration that explains the legal basis of the withholdings. Defendants thus have not established that these withholdings were based on a reasonable interpretation of the law.

Accordingly, Plaintiffs have shown both eligibility and entitlement to fees as to both the OSC request and consultant corollary component of their request to Treasury.

**C.**

Now the reasonableness of Plaintiffs' fee request. This inquiry is complicated by the fact that Plaintiffs' counsel's time entries are somewhat inscrutable. *See* Pls.' Mot., Decl. of Matthew

Topic, ECF No. 86-2 [hereinafter Topic Decl. I], Ex. 1. They clearly describe work done on briefing the consultant corollary issue and helpfully segregate the time spent on settlement efforts and the fee petition, *see id.* at 6–11, but they otherwise do not distinguish among the various FOIA requests and the work attributable to each. It is therefore difficult to discern the time spent by counsel on those requests the court has deemed eligible for compensation. To fill the gaps, the court has carefully reviewed the over three dozen Joint Status Reports that the parties submitted over the course of six years.

Counsel's work and the corresponding fee request can be broken down into five categories: (1) the summary judgment opposition brief ($14,793.20), Defs.' Opp'n at 13–14; (2) other case work ($16,362.90)[3]; (3) settlement efforts ($5,266.50), Topic Decl. I, Ex 1, at 10; (4) the fee petition ($6,270.50), *id.* at 11; and (5) the fee petition reply brief ($9,706.40), Pls.' Reply, Second Decl. of Matthew Topic, ECF No. 89-1 [hereinafter Topic Decl. II], Ex. 1. Defendants lodge various objections to these fee petition components.

*Summary Judgment Opposition.* Defendants start by urging exclusion of $14,793.20 in fees sought for preparing Plaintiffs' three-page opposition to Defendants' summary judgment motion. Defs.' Opp'n at 13–14. Defendants' motion addressed four categories of Exemption 5 withholdings, *see* Defs.' SJ Mem. at 6, but Plaintiffs took issue with only 18 pages Treasury shielded under the consultant corollary, *see generally* Pls.' SJ Opp'n. This work took 25.5 hours of attorney time split largely between a senior partner and a junior attorney. Pls.' Reply at 11. Plaintiffs defend the fee amount, arguing that Defendants' invocation of the consultant corollary presented a complex issue that required extensive legal research; the junior lawyer did most of that work, culminating in a nearly nine-page research memorandum; and they should not be penalized

[3] The court calculated this sum by reducing the total fees sought ($52,454.80), Pls.' Reply at 20, by the amounts requested for the other four categories and the $55.30 that Plaintiffs themselves subtracted, *id.* at 1 n.1.

for the brevity of their filing because "it became apparent that Defendants' arguments could easily be dispensed with only after Plaintiffs' counsel conduct[ed] significant legal research." Pls.' Reply at 11–12.

The court is not persuaded. The opposition brief is not only just three *pages* long, but it contains only three substantive *paragraphs*, the last of which argues that Exemption 5 does not "include[] any consultant corollary doctrine at all" so as to preserve the issue for appeal. Pls.' SJ Opp'n at 1–3. The crux of Plaintiffs' response thus consisted of a mere two paragraphs. The court agrees that Plaintiffs' brevity should not be penalized, but the fact it took over 25 hours of attorney time to achieve such conciseness is not reasonable. Nor can the purported complexity of the issue justify that amount of time. Even if there were some uncertainty in the law, Plaintiffs ultimately dismissed it as irrelevant and therefore did not address any legal uncertainty. *See id.* ("And while 'the legal standard for self-interest under the consultant corollary is hotly debated' . . . Treasury cites no authority applying the doctrine to circumstances anything like those here." (citation omitted)). Spending over 25 hours to prepare a three-paragraph response is plainly excessive. The court will cut the fees sought for summary judgment briefing by 30%.

*Other Case Work.* Defendants assert a hodgepodge of challenges to Plaintiffs' counsel's billing entries for other, non-summary judgment case work as "vague and/or of uncertain relevance to this case, or relate[d] to work that was duplicative of other work performed or was otherwise unnecessary." Defs.' Opp'n at 17. Among the contested billing entries are "internal correspondence with the client or with fellow counsel," reviewing of court orders, and other minor administrative tasks. *Id.* at 18–20. Defendants also argue that Plaintiffs should be awarded no fees for work performed after July 17, 2023, the date on which Treasury released information previously withheld pursuant to the consultant corollary. Plaintiffs describe their post-July 17

work as "analyzing the reprocessed production and associated revised *Vaughn* index, and communicating internally and with clients about whether they were adequate." Pls.' Reply at 13.

Instead of flyspecking the time entries in the manner suggested, the court reduces the fee award for other case work to reflect Plaintiffs' fee eligibility for those efforts. The Joint Status Reports establish that any work related to the ODNI request was complete within six months of filing suit. Joint Status Report, ECF No. 25 (reporting that ODNI had completed processing and release of records by December 18, 2017). The same is true of the initial, post-litigation OSC response, *id.*, and OSC then released records totaling approximately 400 pages eight months later, Joint Status Report, ECF No. 33. It sent an additional 800 pages to Treasury for review. Law Decl. ¶ 9. A large percentage of the other case work therefore was related to the three requests sent to Treasury, and as to those requests Plaintiffs substantially prevailed only as to pages withheld based on consultant corollary, *see supra* Section III.A., the work for which largely consisted of responding to Defendants' summary judgment brief. So, the bulk of the other case work related to the two wholly unchallenged Treasury requests and the largely uncontested portion of the third. Plaintiffs substantially prevailed on none of these. Reflecting this reality, the court will award fees for only 30% of the other case work category. That is a rough cut—an overestimate, if anything—of the time spent on the OSC request, the Treasury-reviewed records subject to the OSC request, and any non-summary judgment work done on consultant-corollary records. In short, 30% reflects the portion of the other case work that caused the release of records.

*Settlement.* Defendants also contest compensation for 9.5 hours spent attempting to settle the fee dispute. Defs.' Opp'n at 16–17; Pls.' Reply at 14. According to Defendants, because those negotiations ultimately were not successful, Plaintiffs cannot recover for that time. Defs.' Opp'n at 16–17. But courts in this District regularly award fees for unsuccessful fee-dispute negotiations,

so long as the plaintiff eventually achieves some success through litigation. *See, e.g.*, *Am. Wild Horse Campaign v. Bureau of Land Mgmt.*, No. 22-cv-2972-RDM-MAU, 2025 WL 2092263, at *9 (D.D.C. July 25, 2025); *Los Padres ForestWatch v. U.S. Forest Serv.*, 775 F. Supp. 3d 353, 374 (D.D.C. 2025); *Coffey v. Bureau of Land Mgmt.*, 316 F. Supp. 3d 168, 172 (D.D.C. 2018); *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 52 (D.D.C. 2016). The D.C. Circuit has endorsed this practice, albeit in an unpublished decision. *See Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 735 F. App'x 733, 736 (D.C. Cir. 2018) (citing with approval *Elec. Priv. Info. Ctr.*, 218 F. Supp. 3d at 52). This court will follow that approach, as well. Commensurate with other deductions, however, it will reduce the fees sought for settlement by 50%[4] to reflect the overall degree of success in the fee litigation.

*Fee-on-fees Award.* Finally, Defendants challenge Plaintiffs' fees-on-fees request as excessive. Defs.' Opp'n at 20–22. Plaintiffs seek $6,270.50 for their petition and an additional $9,706.40 for their reply brief. Pls.' Mot. at 12; Topic Decl. II, Ex. 1. The court reduces each amount by 50% consistent with Plaintiffs' overall success on their fee petition. *See Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 n.10 (1990) ("Because *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), requires the district court to consider the relationship between the amount of the fee awarded and the results obtained, fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation.").

**IV.**

For the foregoing reasons, Plaintiffs' fee petition is granted in part and denied in part. The court awards Plaintiffs fees and costs as follows:

---

[4] The court reached this percentage by adding the amounts awarded for the summary judgment opposition and other case work and dividing it by the total fees sought for both categories, i.e., ($14,793.20 x .7) + ($16,362.90 x .3)/$30,866.70 = approximately 50%.

1. Summary judgment opposition: $14,793.20 x .7 = $10,355.24

2. Other case work: $16,362.90 x .3 = $4,908.87

3. Settlement: $5,266.50 x .5 = $2,633.25

4. Fee petition: $6,270.50 x .5 = $3,135.25

5. Fee petition reply brief: $9,706.40 x .5 = $4,853.20

Total fee award: $25,885.81

Costs: $400

Total award: $26,285.81

Dated: August 19, 2026

Amit P. Mehta
United States District Judge